# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION<br>214 Massachusetts Ave. N.E.<br>Washington, D.C. 20002<br><br>MIKE HOWELL<br>214 Massachusetts Ave. N.E.<br>Washington, D.C. 20002<br><br>            *Plaintiffs,*<br>v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Ave. N.E.<br>Washington, D.C. 20530<br><br>            *Defendant.* | Case No.  24-cv-645 |

## AMENDED COMPLAINT AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs THE HERITAGE FOUNDATION and MIKE HOWELL (collectively "Plaintiffs") for their complaint against Defendant DEPARTMENT OF JUSTICE ("DOJ") allege on knowledge as to Plaintiffs, and on information and belief as to all other matters, follows:

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C § 552, to compel the production of certain records relied upon by Special Counsel Robert K. Hur's *Report on the Investigation Into Unauthorized Removal, Retention, and Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph. R. Biden, Jr.* (Feb. 2024) ("Report") (Ex. 1). *See* Plaintiffs' FOIA Request, FOIA-2024-01098 (Feb. 9, 2024) ("Request" or

1

"Plaintiffs' FOIA Request") (Ex. 2).  Specifically, the Request seeks all records relied upon by Special Counsel Hur to write particular passages of the Report.  The Report was, and continues to be, the subject of widespread media and high-level governmental attention.   A good deal of this interest focused and focuses on the Report's discussion of President Biden's mental faculties and memory.  There also is considerable and vigorous debate in the press, amongst Members of Congress, and between the Legislative and Executive Branches concerning the Report.  Again, a good deal of this debate focused and continues to focus on issues surrounding President Biden's mental faculties and memory.  The release of the Report almost immediately generated intense Congressional interest and oversight.  Indeed, on February 27, 2024, House Oversight and Accountability Committee Chairman James Comer and House Judiciary Committee Chairman Jim Jordan subpoenaed Attorney General Merrick Garland for records related to Special Counsel Hur's investigation.  *See* Letter from Rep. James Comer, Chairman, H. Comm. on Oversight & Accountability, et al., to Attorney Gen. Merrick B. Garland, U.S. Dep't of Justice (Feb. 27, 2024) (Ex. 3).  This subpoena issued after the Attorney General failed to finally comply with a prior voluntary request.  *See* Appendix B.  Special Counsel Hur testified about the Report before the House Judiciary Committee on March 12, 2024. Only hours before this hearing, the Department released a heavily redacted version of the Special Counsel's interview of President Biden.  *See* Transcript of Special Counsel Robert K. Hur's interview of President Biden (Feb. 2024) (Ex. 4).

## **PARTIES**

2.       Plaintiff, The Heritage Foundation is a Washington, D.C.-based nonpartisan public policy organization with a national and international reputation whose mission is to "formulate and promote public policies based on the principles of free enterprise, limited

2

government, individual freedom, traditional American values, and a strong national defense." Heritage Foundation, *About Heritage*, https://www.heritage.org/about-heritage/mission (last visited Mar. 13, 2024).   Heritage is a not-for-profit section 501(c)(3) organization which engages in substantial dissemination of information to the public.   Heritage operates a national news outlet, *The Daily Signal*.

3.      Plaintiff Mike Howell leads The Heritage Foundation's Oversight Project and is an author for *The Daily Signal*.  The Oversight Project is an initiative aimed at obtaining information via FOIA requests and other means in order to best inform the public and Congress for the purposes of Congressional oversight.  "The requests and analyses of information are informed by Heritage's deep policy expertise.  By its nature, the Oversight Project is primarily engaged in disseminating information to the public."  Oversight Project, *found at* https://www.heritage.org/oversight (last visited Mar. 13, 2024); Oversight Project (@OversightPR), X (last visited Mar. 13, 2024), https://twitter.com/OversightPR.  Staff for the Oversight Project routinely appear on television, radio, print, and other forms of media to provide expert commentary on salient issues in the national debate.

4.      Defendant DOJ is a federal agency of the United States within the meaning of 5 U.S.C. § 552(f)(1) whose mission statement is to "uphold the rule of law, to keep our country safe, and to protect civil rights."  About DOJ; Our Mission, *found at* https://www.justice.gov/about#:~:text=The%20mission%20of%20the%20Department,and%20to %20protect%20civil%20rights (last visited Mar. 13, 2024).

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because this action is brought in the District of Columbia and 28 U.S.C. § 1331 because the

resolution of disputes under FOIA presents a federal question.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because

Defendant DOJ's principal place of business is in the District of Columbia.

### PLAINTIFFS' FOIA REQUEST

7.      Plaintiffs submitted the Request on February 9, 2024.

8.      The Request sought the records relied upon by Special Counsel Hur in drafting

passages in the Report relating to President Joseph R. Biden's memory and mental faculties.

*Id*. at 2–7.

9.      Specifically, the Request sought all records relied upon for the highlighted

passages from the Report:

**Passage 1:**

Given the intelligence and military officials present and the topics discussed at the meetings Mr. Biden recounted for Zwonitzer, Mr. Biden should have realized that his notes did or were likely to contain classified information. But taken as a whole, the evidence will likely leave jurors with reasonable doubts about whether Mr. Biden knew he was sharing classified information with Zwonitzer and intended to do so. For these jurors, Mr. Biden's apparent lapses and failures in February and April

---

[947] *See id.*
[948] Zwonitzer 7/31/23 Tr. at 83.

247

2017 will likely appear consistent with the diminished faculties and faulty memory he showed in Zwonitzer's interview recordings and in our interview of him.[949] Therefore, we conclude that the evidence does not establish that Mr. Biden willfully disclosed national defense information to Zwonitzer.

**Passage 2:**

Third, as discussed to some extent above, Mr. Biden will likely present himself to the jury, as he did during his interview with our office, as a sympathetic, well-meaning, elderly man with a poor memory. While he is and must be accountable for his actions—he is, after all, the President of the United States—based on our direct

219

observations of him, Mr. Biden is someone for whom many jurors will want to search for reasonable doubt. It would be difficult to convince a jury they should convict him—by then a former president who will be at least well into his eighties—of a serious felony that requires a mental state of willfulness.

**Passage 3:**

In his interview with our office, Mr. Biden's memory was worse. He did not remember when he was vice president, forgetting on the first day of the interview when his term ended ("if it was 2013 – when did I stop being Vice President?"), and forgetting on the second day of the interview when his term began ("in 2009, am I still Vice President?").[839] He did not remember, even within several years, when his son Beau died.[840] And his memory appeared hazy when describing the Afghanistan debate that was once so important to him. Among other things, he mistakenly said he "had a real difference" of opinion with General Karl Eikenberry, when, in fact, Eikenberry was an ally whom Mr. Biden cited approvingly in his Thanksgiving memo to President Obama.[841]

In a case where the government must prove that Mr. Biden knew he had possession of the classified Afghanistan documents after the vice presidency and chose to keep those documents, knowing he was violating the law, we expect that at trial, his attorneys would emphasize these limitations in his recall.

We also expect many jurors to be struck by the place where the Afghanistan documents were ultimately found in Mr. Biden's Delaware home: in a badly damaged box in the garage, near a collapsed dog crate, a dog bed, a Zappos box, an empty bucket, a broken lamp wrapped with duct tape, potting soil, and synthetic firewood.[842]

---

[839] Biden 10/8/23 Tr. at 146; 10/9/23 Tr. at 45.
[840] Biden 10/8/23 Tr. at 82-83.
[841] Biden 10/9/23 Tr. at 17; Recovered document D20.
[842] *See* Chapter Six.

208

**Passage 4:**

After all, the Afghanistan documents and the 2009 troop surge played no role in *Promise Me, Dad*, the book Mr. Biden wrote with Zwonitzer in early 2017.[836] There is no reason to believe Mr. Biden intended to discuss the 2009 Afghanistan troop debate in his book, which, as explained in Chapter Five, covered his experiences in 2014 and 2015. In dozens of hours of recorded conversations with Zwonitzer in 2016 and 2017, when Mr. Biden talked about a vast array of topics, the Afghanistan documents never came up again.[837] This may suggest that after February 16, 2017, the documents were simply not on Mr. Biden's mind.

Mr. Biden's memory also appeared to have significant limitations—both at the time he spoke to Zwonitzer in 2017, as evidenced by their recorded conversations, and today, as evidenced by his recorded interview with our office. Mr. Biden's recorded conversations with Zwonitzer from 2017 are often painfully slow, with Mr. Biden struggling to remember events and straining at times to read and relay his own notebook entries.[838]

---

[836] *See generally* Biden, PROMISE ME, DAD; Chapter Five.
[837] *See generally* FBI Serials 315, 335.
[838] *See generally id.*

207

**Passage 5:**

We have also considered that, at trial, Mr. Biden would likely present himself to a jury, as he did during our interview of him, as a sympathetic, well-meaning, elderly man with a poor memory. Based on our direct interactions with and observations of him, he is someone for whom many jurors will want to identify reasonable doubt. It would be difficult to convince a jury that they should convict him—by then a former president well into his eighties—of a serious felony that requires a mental state of willfulness.

We conclude the evidence is not sufficient to convict, and we decline to recommend prosecution of Mr. Biden for his retention of the classified Afghanistan documents.

\* \* \*

*Notebooks containing classified information.* FBI agents recovered from unlocked drawers in the office and basement den of Mr. Biden's Delaware home a set

6

9

**Passage 6:**

Several defenses are likely to create reasonable doubt as to such charges. For example, Mr. Biden could have found the classified Afghanistan documents at his Virginia home in 2017 and then forgotten about them soon after. This could convince some reasonable jurors that he did not retain them willfully. When Mr. Biden told his ghostwriter about finding "all the classified stuff downstairs," his tone was matter-of-fact. For a person who had viewed classified documents nearly every day

4

for eight years as vice president, including regularly in his home, finding classified documents at home less than a month after leaving office could have been an unremarkable and forgettable event. Notably, the classified Afghanistan documents did not come up again in Mr. Biden's dozens of hours of recorded conversations with the ghostwriter, or in his book. And the place where the Afghanistan documents were eventually found in Mr. Biden's Delaware garage—in a badly damaged box surrounded by household detritus—suggests the documents might have been forgotten.

In addition, Mr. Biden's memory was significantly limited, both during his recorded interviews with the ghostwriter in 2017, and in his interview with our office in 2023. And his cooperation with our investigation, including by reporting to the government that the Afghanistan documents were in his Delaware garage, will likely convince some jurors that he made an innocent mistake, rather than acting willfully—that is, with intent to break the law—as the statute requires.

*Id.* at 2–7.

10.    The Request sought a fee waiver based on Heritage's status as a not-for-profit and the fact that a purpose of the Request was to allow Heritage to gather information on a matter of public interest for (among other things) use by authors of its publication, *The Daily Signal*, which is a major news outlet. *Id*. at 10.

11.    The Request also sought production of records in partial responses as soon as they became available. *Id*. at 9.

### THE REQUEST FOR EXPEDITED PROCESSING

12.    Plaintiffs filed an Expedited Processing Application on February 22, 2024, seeking expedited processing pursuant to 28 C.F.R. § 16.5(e)(1)(iv), because the Report, and at a more granular level, its statements about President Biden's mental faculties and memory, are "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence." *See* Expedited Processing Application at 1 (Ex. 5) ("EP App." or "Application"); *see also* 28 C.F.R. § 16.5(e)(2) ("A request for expedited processing may be made at any time."). The factual and legal basis for the Application was explained in a four-page submission.

13.    The Application attached two appendices totaling 1,803 pages that included an oversight request from three House Committee Chairman and media reports discussing and debating the Report's conclusion that President Biden has "diminished facilities and faulty memory." Report at 248. These articles extensively covered their conclusions and their implications as to whether the President is fit to lead the country, including discussions as to whether the 25th Amendment should be invoked. The foregoing coverage was "widespread and exceptional" and surfaces "questions about the Government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).

11

14. The Department granted expedited processing for six other FOIA Requests filed by Plaintiffs seeking different discrete categories for records related to the Report. (Exs. 6– 11).

## **DEFENDANT'S CONSTRUCTIVE DENIAL**

15. According to DOJ's FOIA Tracking System, DOJ received the request on February 9, 2024, and assigned the Request the tracking number FOIA-2024-01098.

16. Defendant transmitted a letter to Mike Howell on February 29, 2024, addressing the Request. *See* Letter from Douglas R. Hubbard to Mike Howell (Feb. 29, 2024) (Ex. 12) ("Administrative Letter" or "Admin. Letter").

17. The Administrative Letter began by setting forth DOJ's administrative construction of the Request: "Upon review of the statements detailed in your request, all of which reference the interview of President Joseph Biden as conducted by Special Counsel Hur, I have interpreted your request as seeking a copy of the transcript of that interview." Admin. Letter at 1.

18. This construction is erroneous. It defies the English language to read "[a]ll Records relied upon in making the following statements" as simply a shorthand reference for a transcript. Request at 1. This reading is profoundly atextual as it presumes the answer to the question of what constitutes an adequate search—namely that an adequate search would conclude that the set of "records relied upon" was *solely* the transcript. To take one obvious possibility, passages as to President Biden's "mental faculties" and "memory" may well be based in part on contemporaneous notes by Special Counsel Hur and his staff as to appearance and demeanor. DOJ's atextual construction is contrary to law. A "FOIA requester is the 'master' of the FOIA request," (*People for Am. Way Found. v. DOJ*, 451 F.Supp.2d 6, 12

(D.D.C. 2006)), and therefore, the agency must "adher[e] to the full scope or the precise language of the plaintiff's request." *Charles v. Off. of Armed Forces Med. Exam'r*, 730 F.Supp.2d 205 (D.D.C. 2010) (internal citations omitted).

19.    Proceeding from the foregoing fatally flawed premise, DOJ informed Plaintiffs that "[in] so much as your request of February 9, 2024, is partially seeking the same records as your request of February 12, 2024, I am closing the administrative tracking number (FOIA-2024-01098) associated with this request.  Please reference FOIA-2024-01112 in any future correspondence on this matter."  Admin. Letter at 1.  Pointedly, the Administrative Letter only administratively closed the *tracking number* FOIA-2024-01098.  It did not purport to administratively close *the Request*.  Nor did it purport to consolidate or otherwise aggregate the Request and the FOIA Request initially assigned the tracking number FOIA-2024-01112 as a duplicate or otherwise.  *Cf.* 28 C.F.R. § 16.5(d) ("**Aggregating requests.**  For the purposes of satisfying unusual circumstances under the FOIA, components may aggregate requests in cases where it reasonably appears that multiple requests, submitted either by a requester or by a group of requesters acting in concert, constitute a single request that would otherwise involve unusual circumstances.  Components shall not aggregate multiple requests that involve unrelated matters."); Letter from Douglas Hibbard to Mike Howell, at 1 (Feb. 13, 2024) (Ex. 13) ("Insomuch as your request for all images collected as part of the investigation of Special Counsel Hur (FOIA-2024-01121) entirely encompasses the records you have requested in FOIA-2024-01113, I have administratively closed FOIA-2024-01113 as a duplicative request.  To be clear, the records you have requested in FOIA-2024-01113 will be processed in response to FOIA-2024-01121.").  Thus, the only action taken was an administrative one—closing a request tracking number and placing two requests under the same tracking number.  Any other reading

would do violence to the text of the Administrative Letter itself.  The instruction "[p]lease reference FOIA-2024-01112 in any future correspondence on *this matter*" clearly has as its referent *the Request*.  Admin. Letter at 1 (emphasis added).

20.     The Administrative Letter was not an "adverse determination" under Department Regulations.  *See* 28 C.F.R. § 16.6(d) ("Adverse determinations, or denials of requests, include decisions that:  the requested record is exempt, in whole or in part; the request does not reasonably describe the records sought; the information requested is not a record subject to the FOIA; the requested record does not exist, cannot be located, or has been destroyed; or the requested record is not readily reproducible in the form or format sought by the requester.  Adverse determinations also include denials involving fees or fee waiver matters or denials of requests for expedited processing.").

21.     The Administrative Letter did not pass on Plaintiffs' Application for Expedited Processing of the Request.  It also did not in any way indicate the Department's grant of expedition in FOIA-2024-01112 would apply to the Request.

22.     The Administrative Letter was not a determination under FOIA.  *See, e.g.*, *Machado Amadis v. U.S. Dept' of State*, 971 F.3d 364, 372–73 (D.C. Cir. 2020); *Khine v. DHS*, 943 F.3d 959, 966–67 (D.C. Cir. 2019).

23.     Plaintiffs have not received any other communications since February 29, 2024.

24.     Ten calendar days from February 22, 2024, is March 3, 2024.

25.     Plaintiffs filed their Complaint on March 6, 2024.

26.     Twenty working days from February 9, 2024, is March 11, 2024

**FIRST CLAIM FOR RELIEF**
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records**

27.    Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

28.    FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."   Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

29.    Plaintiffs properly requested records within the possession, custody, and control of Defendant.

30.    Defendant is subject to FOIA and therefore must make reasonable efforts to search for requested records.

31.    Defendant has failed to promptly review agency records for the purpose of locating and collecting those records that are responsive to Plaintiffs' FOIA Request.

32.    Defendant's failure to conduct searches for responsive records violates FOIA and DOJ regulations.

33.    Plaintiffs have a statutory right to the information they seek.

34.    Defendant is in violation of FOIA.

35.    Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA. Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news. Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

36.    Plaintiffs have no adequate remedy at law.

37.    Plaintiffs have constructively exhausted their administrative remedies.

**SECOND CLAIM FOR RELIEF**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Responsive Records**

38.    Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

39.    FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."   Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

40.    Plaintiffs properly requested records within the possession, custody, or control of Defendant.

41.    Defendant is subject to FOIA, and therefore must release to a FOIA requester any non-exempt records and provide a lawful reason for withholding any records.

42.    Defendant is wrongfully withholding non-exempt records requested by Heritage by failing to produce any records responsive to Plaintiffs' FOIA Request.

43.    Defendant is wrongfully withholding non-exempt-agency records requested by Plaintiffs by failing to segregate exempt information in otherwise non-exempt records responsive to Plaintiffs' FOIA Request.

44.    Defendant's failure to provide all non-exempt responsive records violates FOIA and DOJ regulations.

45.    Plaintiffs have a statutory right to the information they seek.

46.    Defendant is in violation of FOIA.

47.    Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.   Plaintiffs are being denied information to which they are statutorily entitled and that is

important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.   Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

48.    Plaintiffs have no adequate remedy at law.

49.    Plaintiffs have constructively exhausted their administrative remedies.

**THIRD CLAIM FOR RELIEF**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Denial of Fee Waiver**

50.    Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

51.    FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

52.    Plaintiffs properly requested records within the possession, custody, or control of Defendant.

53.    Defendant has constructively denied Plaintiffs' application for a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) & (iii) and 28 C.F.R. § 16.10(k).

54.    The Request does not have a commercial purpose because Heritage is a 501(c)(3) nonprofit, Howell acts in his capacity as a Heritage employee, and release of the information sought does not further Plaintiffs' commercial interest.

55.    Plaintiffs are members of the news media as they "gather[] information of potential interest to a segment of the public, use[] . . . [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" via Heritage's major news outlet, *The Daily Signal*.   5 U.S.C. § 552(a)(4)(a)(ii).

17

56.     Disclosure of the information sought by the Request also "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."   5 U.S.C. § 552(a)(4)(A)(iii).

57.     Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the Request.   5 U.S.C. § 552(a)(4)(A)(viii)(I).

58.     Plaintiffs have a statutory right to a fee waiver.

59.     Defendant is in violation of FOIA by denying a fee waiver.

60.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.   Plaintiffs are being denied a fee waiver to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.   Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

61.     Plaintiffs have no adequate remedy at law.

62.     Plaintiffs have constructively exhausted their administrative remedies.

**FOURTH CLAIM FOR RELIEF**
**Violation of FOIA, 5 U.S.C. § 552**
**Statutory Bar Against Charging Fees**

63.     Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

64.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration." Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

65.     Plaintiffs properly requested records within the possession, custody, or control of Defendant.

66.     The Request does not have a commercial purpose because Heritage is a 501(c)(3) nonprofit, Mike Howell acts in his capacity as a Heritage employee, and release of the information sought does not further Plaintiffs' commercial interest.

67.     Plaintiffs are members of the news media as they "gather[] information of potential interest to a segment of the public, use[] . . . [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" via Heritage's major news outlet, *The Daily Signal*.   5 U.S.C. § 552(a)(4)(a)(ii).

68.     Disclosure of the information sought by the Request also "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."   5 U.S.C. § 552(a)(4)(A)(iii).

69.     Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the Request.   5 U.S.C. § 552(a)(4)(A)(viii)(I).

70.     Defendant is currently statutorily barred from charging fees related to Plaintiffs' FOIA Request.   Therefore, Plaintiffs have a statutory right to have their request processed without being charged any fees.

71.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.   Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

72.     Plaintiffs have no adequate remedy at law.  Plaintiffs have constructively exhausted their administrative remedies.

**FIFTH CLAIM FOR RELIEF**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Denial of Expedited Processing**

73.     Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

74.     FOIA requires all doubts to be resolved in favor of disclosure.   "Transparency in government operations is a priority of th[e Biden] . . . Administration."   Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

75.     Plaintiffs properly requested records within the possession, custody, or control of Defendant.

76.     Plaintiffs properly asked that DOJ expedite the processing of Plaintiffs' FOIA Request, based upon Plaintiffs' showing that the Request concerns "[a] matter of widespread and exceptional media interest in which there exist possible questions that affect public confidence in the Government's integrity that affect public confidence."
28 C.F.R. § 16.5(e)(1)(iv).

77.     Defendant refused to expedite Plaintiffs' FOIA Request, contrary to the factual and legal showing Plaintiffs made demonstrating their entitlement to expedition.

78.     Defendant is in violation of FOIA.

79.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled to on an expedited basis and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

80.     Plaintiffs have no adequate remedy at law.

81.     Plaintiffs have exhausted all required administrative remedies with respect to Defendant's failure to make a determination on Plaintiffs' request for expedition.

**WHEREFORE** as a result of the foregoing, Plaintiffs pray that this Court:

A.      Enter a preliminary and permanent injunction compelling Defendant to process Plaintiffs' FOIA Request on an expedited basis;

B.      Order Defendant to conduct a search or searches reasonably calculated to uncover all records responsive to Plaintiffs' FOIA Request;

C.      Order Defendants to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to Plaintiffs' FOIA Request and indexes justifying the withholding of any responsive records withheld in whole or in part under claim of exemption;

D.      Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiffs' FOIA Requests;

E.      Retain jurisdiction over this matter as appropriate;

F.      Award Plaintiffs their costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 522(a)(4)(E); and

G.      Grant such other and further relief as this Court may deem just and proper.

Dated:  March 13, 2024                    Respectfully submitted,

                                          /s/ Samuel Everett Dewey
                                          SAMUEL EVERETT DEWEY
                                          (No. 999979)
                                          Chambers of Samuel Everett Dewey, LLC
                                          Telephone:  (703) 261-4194
                                          Email: samueledewey@sedchambers.com

                                          DANIEL D. MAULER
                                          (No. 977757)
                                          The Heritage Foundation
                                          Telephone: (202) 617-6975
                                          Email: Dan.Mauler@heritage.org

KYLE BROSNAN
(No. 90021475)
The Heritage Foundation
Telephone: (202) 608-6060
Email: Kyle.Brosnan@heritage.org

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone: (606) 275-0978
Email: neal@cornettlegal.com

*Counsel for Plaintiffs*