IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**HERITAGE FOUNDATION**,

**MIKE HOWELL**,

                *Plaintiffs,*

      v.                            Case No. 1:24-cv-00645-DLF

**U.S. DEPARTMENT OF JUSTICE**,

                *Defendant.*

---

## JOINT STATUS REPORT

In accordance with this Court's Minute Order of June 10, 2024, Plaintiffs Heritage Foundation and Mike Howell ("Plaintiffs") and Defendant U.S. Department of Justice ("Defendant" or "DOJ") have conferred regarding the schedule for the remaining issues in this case and whether the approximately 70 hours of potentially responsive audio recordings can be narrowed, and report as follows.

### I.    Background

This case concerns a FOIA request in which Plaintiffs have sought material relating to Special Counsel Robert Hur's *Report on the Investigation Into Unauthorized Removal, Retention, and Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph. R. Biden, Jr.* (Feb. 2024) ("Report" or "Hur Report"), available at https://www.justice.gov/storage/report-from-special-counsel-robert-k-hur-february-2024.pdf.   Plaintiffs seek "the records relied upon by Special Counsel Hur in drafting [certain] passages in the Report relating to President Joseph R. Biden's

memory and mental faculties."   Amended Compl. ¶ 8.

As indicated in the Status Conference held on June 10, 2024, Defendant has concluded its search.   Defendant has identified the following four items as potentially responsive: (1) the two written transcripts of the interviews conducted of President Biden by the Special Counsel; (2) the audio from those two interviews; (3) approximately 70 hours of audio between Mr. Biden and his biographer, Mark Zwonitzer, which were recorded for Mr. Biden's 2017 book; and (4) a 19-page memo referenced in passage 3 of the Amended Complaint ¶ 9, in which then-Vice President Biden wrote to President Obama regarding Afghanistan policy.

## II.   The Parties' Agreement Regarding Records at Issue

The parties have conferred and agree on the following points:

1.      The transcript of Special Counsel Robert K. Hur's interview with President Joseph R. Biden has been produced in redacted form to Plaintiffs in *Judicial Watch et. al. v. DOJ*, 24-cv-700 (TJK).    By separate cover, the Department has designated those materials as responsive to Plaintiffs' FOIA Request in the instant matter and as produced by reference and incorporation.    Plaintiffs do not challenge the redactions in that transcript in this matter. Accordingly, that transcript is no longer before this Court.

2.      Plaintiffs do not seek production of the memorandum regarding Afghanistan. That record is no longer before the Court.

3.      The audio of Special Counsel Hur's interview with President Biden (no. 2 above) is also at issue in three consolidated cases before Judge Kelly, in which summary judgment briefing has already begun.   *Judicial Watch v. DOJ*, 24-cv-700-TJK (D.D.C.).    The parties

request that litigation with respect to this record be stayed in the instant case, pending Judge Kelly's decision and any subsequent appeal.

## III.     Proposals Regarding Remaining Records and Schedule

The parties have been unable to reach an agreement to narrow the approximately 70 hours of potentially responsive audio between Mr. Biden and Mr. Zwonitzer, nor do they agree on the schedule for the remaining issues in the case.   The parties therefore present their separate positions below.

### A.     Defendant's Position

Defendant proposes narrowing the number of potentially responsive audio hours based on the Hur Report itself.   According to the Report, "The interviews began in the spring of 2016 and continued through the summer of 2017."   Report at 100.   The relevant passages in Plaintiffs' FOIA request reference Mr. Zwonitzer's recordings made in 2017.   *See, e.g.*, Amended Compl. ¶ 9.   Accordingly, Defendant proposes to exclude interview sessions from 2016.   Defendant further proposes processing the 2017 interviews that are specifically cited by date and discussed in the report: that is, the interviews that took place on February 16, April 10, April 24, and April 26 of that year.   *See, e.g.,* Report at 75, 103-06, 108-09, 113, 116, 137, 141-42, 150, 201, 205, 236, 242, 245, 343.   Plaintiffs have expressed specific interest in an exchange from the February 16 interview.   Defendant estimates that there are approximately 17 hours of potentially responsive audio for these four interviews.

This approach to narrowing is rational—it is tailored to both Plaintiffs' Complaint and specific citations in the Report—and productive, reducing the potential scope of audio necessary to process in this litigation by nearly 75%.   Defendant has not identified another manner by

which to further narrow the scope of audio to process.   Plaintiffs do not provide any reason why the 70 hours should not be narrowed to the proposed approximate 17 hours of audio, nor do they propose any alternative narrowing to reduce the volume of audio for processing.

Plaintiffs' proposal that Defendant should use what the Hur Report refers to as notes or transcripts made by Mr. Zwonitzer of these audio recordings to "meet and confer" over narrowing is not workable.  *See* Report at 334.   In the main, it is not even a narrowing proposal: it does not reduce the volume of audio to process.   Instead, it is effectively a proposal for discovery, which is exceedingly rare in FOIA cases.  *See, e.g., Cole v. Fed. Emergency Mgmt. Agency*, 340 F.R.D. 485, 487 (D.D.C. 2022).   Moreover—and indicative of their effort to obtain discovery—their proposal for an ambiguous "meet and confer" process is at odds with their stated urgency.   Any "meet and confer" process would take time.   Further, the notes or transcripts created by Zwonitzer are evidence collected in a criminal case.   They are not publicly available or disclosable.   Indeed, they are confidential.   They may contain classified information, private information, and other information inappropriate for disclosure.   They have not been reviewed for accuracy, completeness, classification, or anything else.[1]   Defendant is not at liberty to share their contents with Plaintiffs as a narrowing tool or otherwise.

Defendant's proposal to reduce the audio to process from approximately 70 hours to approximately 17 hours is responsive to the Court's indication at the June 10 Status Conference that Defendant should process any audio at issue for all possible exemptions instead of proceeding first with briefing the issue of whether the audio can be withheld in full.   Defendant

---

[1] The classification review is required prior to potential release of information to the public. Plaintiffs' suggestion that the need to subject the audio to a classification review indicates that the SCO failed to consider issues of classification is meritless.

is still evaluating the time necessary to process even approximately 17 hours of audio on a minute-to-minute basis, but it anticipates it will be considerable.   (The Department does not have experience processing audio at this volume.)   Processing this type of material under the circumstances presents significant complexities.

First, the audio will have to go through a classification review.   A typical FBI classification review—for written material, involving no further consultations with other equity holders in the Executive Branch—takes about 60-90 days.   Here, based on the Report, Defendant anticipates other equity holders would need to be consulted on classification.

Second, the classification review and processing will be further complicated by the fact that audio is at issue, rather than written material.   Audio requires government personnel to listen carefully, and often repeatedly, to parts of the recordings to understand what is contained in them.   The need to coordinate processes for secondary review, quality control, and consultations compound these challenges exponentially.

Third, as referenced, processing requires consultations with equity holders in the Executive Branch.   The Hur Report makes clear that some of the underlying audio involved discussions that implicate other parts of the Executive Branch.   *See, e.g.*, Report at 110 (noting that the February 16, 2017 interview involved discussion involving "a July 7, 2015 National Security Council meeting about Iraq"); *id*. at 105 (noting that the April 24, 2017 interview involved discussion involving "a National Security Council meeting in the Situation Room in November 2014").   Consultations in FOIA are often time-consuming.   Defendant does not yet have an estimate of how many equity holders will need to be consulted, nor do we know how long it will take them to complete their consultations given their resources and FOIA obligations.

5

Due to these complicating factors, Defendant cannot reliably predict at this time how long it would take to process the approximately 70 hours of audio, or even a subset, for all applicable exemptions.   If that is what the Court orders, Defendant can begin processing the audio recordings forthwith and can file a status report one month after the Court issues an order updating the Court on its progress, including a better estimate on the time necessary to process the material.

Given the considerable time likely necessary to undertake the foregoing process, Defendant continues to believe that bifurcated briefing on withholdings would be an efficient and potentially determinative path forward given the nature of the audio at issue.   Accordingly, in addition to offering its narrowing proposal, Defendant asks the Court to reconsider its approach to bifurcation.   If it does, within a week of the Court's order Defendant can commit to issue a response indicating that it is withholding in full the approximately 17 hours of audio under, at a minimum, Exemptions 6 and 7(C).   Defendant proposes to file its opening summary judgment brief defending any withholding in full (assuming Plaintiffs challenge it) one month later, reserving other exemptions.

Defendant understands the Court's preference for all exemptions to be identified before any briefing on withholding.   However, bifurcating processing and briefing to address an exemption or exemptions under which records are withheld in full saves both the Court's and the parties' resources, and courts in this district frequently approve such requests.   *See, e.g., Leopold v. Dep't of Treasury*, No. 16-cv-1827 (Apr. 17, 2017 Minute Order); *Manning v. DOJ*, No. 15-cv-1654-APM (Dec. 15, 2015 Minute Order); *Accuracy in Media v. Dep't of Defense*, No. 14-cv-1589-EGS (June 23, 2015 Minute Order); *see also United We Stand America, Inc. v.*

*IRS*, 359 F.3d 595, 598, 605 (D.C. Cir. 2004) (allowing agency to assert and defend additional withholdings on remand where agency had reserved the right to so in district court filings).

Defendant recognizes that this case is of public interest, but that does not mean that a classification review, processing, and consultations can or should be done at a breakneck pace at the cost of other FOIA obligations and at the risk of making errors.   Plaintiffs' case for extraordinary speed rests on the premise that "this is not a normal case," given an impeachment inquiry and the upcoming election.   But Plaintiffs parrot that reasoning repeatedly—both in the profusion of cases they have filed regarding the Hur Report and in other cases.   *See* Opp'n to Mot. for Two-Week Extension of Time at 7, *Heritage Found. v. U.S. Dep't of Just.*, No. 1:24-cv-958-ACR (June 5, 2024) (referring to a case seeking transcripts of the Special Counsel's interview with Mark Zwonitzer as "perhaps the most urgent of the urgent," and opposing a two-week extension of deadlines on that basis); Joint Status Report at 2, *Heritage Found. v. U.S. Dep't of Just.*, No. 1:24-cv-959-RC (May 28, 2024) (referring to a case seeking communications between the Special Counsel's office and President Biden's attorneys as a "simple but critical matter"); Joint Response at 2, *Heritage Found. v. U.S. Dep't of Just.*, No. 1:24-cv-053-MN (March 25, 2024) (referring to a case seeking records related to the Special Counsel investigation regarding Hunter Biden as "a FOIA case of exceptional importance and urgency").   Defendant's proposal for bifurcation meets the public interest by accelerating judicial consideration of this case.   In contrast, Plaintiffs appear, again, to be trying to jump the queue at the expense of other FOIA requests—including ones they fought to prioritize earlier in time.

Here, the public already has access to the Special Counsel's assessment of the audio as part of the overall case, plus other material released related to the Report.   Moreover, Defendant

is likely to prevail on withholding this audio—highly sensitive, private material collected as evidence in a criminal case that resulted in no charges.   Finally, under Defendant's proposal above, Defendant's opening brief would be filed just weeks from now—an expeditious outcome.

To that end, if the Court does permit Defendant's bifurcated briefing approach, Defendant further respectfully requests that the Court reconsider its order requiring Defendant to separately brief the adequacy of the search by June 24 and instead order that briefing on the adequacy of the search be included in Defendant's opening summary judgment brief defending any withholding in full, proposed to be filed one month after the entry of the Court's order following this Joint Status Report, as is standard in FOIA cases.   Either way, the adequacy of the search will be briefed in short order.   Defendant has had no obligation to confer with Plaintiff on the details of the search.   The search is the agency's to craft and defend at summary judgment.   *See, e.g., Khatchadourian v. Defense Intelligence Agency*, 453 F. Supp. 3d 54, 68 (D.D.C. ) (upholding agency search where, after agency determined plaintiff's search proposals were unworkable, agency pursued an alternative search protocol without plaintiff's involvement); *Schrecker v. DOJ*, 217 F. Supp. 2d 29, 36 (D.D.C. 2002) (upholding agency's search where FBI rejected Plaintiff's proposed search methodology, stating that the "standard for searching for responsive documents is a standard of reasonableness and here the FBI has conducted a reasonable search").

### B.      Plaintiffs' Position

This Court recognized this case is urgent.   *See* Exhibit 1 to the Declaration of Max Taylor Matheu (June 16, 2024) ("Matheu Decl."), at 27:4–12; 28:3–25.   The parties confront a procedural mess.   But all are not damned here; the procedural mess is all the Department's

making.   The Department conducted a search that it had to know Plaintiffs would find

manifestly inadequate based upon what appears to be in reality the Department's hidden

objection to the form of the Request itself.   The Department refused repeated requests from

Plaintiffs to confer about the search in this case and only disclosed this key information upon

request from the Court to an Assistant Branch Director.

     **1.**      As Plaintiffs alluded to at the Status Conference, *see* Matheu Decl. Ex. 1 at

10:10–25, 31:9–20, the Department initially refused to process two similar "relied upon"

requests claiming that a request for records "relied upon" was improper (24-cv-200 (RBW)

(D.D.C) and 24-cv-53 (MN) (D. Del.)).   *See* Matheu Decl. Ex. 2.   *But see Pub. Emps. For

Env't Resp. v. EPA*, 314 F.Supp.3d 68, 75–78 (D.D.C. 2018) (holding such a request is proper).

Plaintiffs indicated that given the exigency of both matters and the discrete, possibly outcome

determinative legal question, they would file a pre-answer motion for partial summary

judgement on this issue in both cases.   *See* Matheu Decl. Ex. 2.   At the 11th hour, the

Department reversed its position and agreed to process the Request in both cases.   *See* Matheu

Decl. Ex. 2 at 1.   It now appears that the Department is processing "relied upon" requests via a

search methodology that is proverbial "guesswork" and is predicated upon a lingering

disagreement with whether Plaintiffs have submitted a valid FOIA Request.   *See* Matheu Decl.

at Ex. 1 at 25:18–25, 26:1–16.   The Department has refused to meet-and-confer about search

methodology absent a Court order or Court-proffered question in every such case.   The

Department proclaims it is under no obligation to consult on a search (technically true), but that

misses the point.   Failing to confer in *this* case on *these* facts has created a morass; the

Department owns this mess.[2]   Had Plaintiffs known the Department's apparent current position, they may well have proceeded differently.   They may well have filed their motions for partial summary judgment and it would be resolved by now either in this case or one of the other two. That the Department seeks to delay search briefing gives away the game.   For example, it may well be that if the Special Counsel and his team were simply asked what they relied upon for the passages at issue, this case would involve a mere hour and half of audio.   Ms. Berman represented to the undersigned that the Department will not, under any circumstances, ask Special Counsel Hur what he relied upon, *see also* Matheu Decl. at Ex. 1 at   25:18–25; 26:1 (Department did not consult Special Counsel Hur on search), but the Department has personally asked the Attorney General about records in the past.   *See e.g.*, *Am. Oversight v. DOJ*, 375 F. Supp. 3d 50, 59 (D.D.C. 2019) (the FBI, "in consultation with the Attorney General . . . consented to a discretionary release of this record" and voluntarily provided Plaintiff with a copy of the single SF-86 page the agency had withheld.").   The Department will not even clarify whether they will consult *any* member of Special Counsel Hur's team—*obvious* custodians in any search.   Why would the Department possibly oppose clarity on search issues that may well resolve messy production related questions?   Whether intentional or not, the Department's current course does nothing to resolve the mess it has created.   And, again intentional or not, the Department's current approach will delay any production well past Novemeber of this year.

    **2.**     Plaintiffs note that the narrowing request they have received is as opaque as it is inconsistent; it does not reflect any consistent search methodology of the sort applied to create an

---

[2]   The Department's position will also generate extensive (perhaps unnecessary) litgation in that plaintiffs will simply move for preliminary injunctions rather then attempt to work the matter out.

administrative record of an important decision.   *See* Hur Report, at 6, 207–08, 219–20, 247–48

(citing key concerns with President Biden' memory for charging decision).   All that Plaintiffs

seek is the specific records the Special Counsel relied upon in making his conclusions.   *See e.g.*,

Hur Report at 219 ("Third, as discussed to some extent above, Mr. Biden will likely present

himself to the jury, as he did during his interview with our office, as a sympathetic, wellmeaning,

elderly man with a poor memory.").   That should not be a difficult endeavor.   Instead of

creating the "administrative record" obviously called for by such a search, the Department has

created a morass.   Accordingly, Plaintiffs (again behind a veil) are pressured to consent; the

Department has boxed them in because expedition is necessary.   Plaintiffs continue to express

interest in topical analysis of the 17 hours.   Processing those 17 hours first makes sense.   But

again, Plaintiffs are operating in information asymmetry.   Perhaps some of those 17 hours can

be carved out by event or topic.   To reiterate for example, Plaintiffs are not interested in obvious

classified material, and Plaintiff will not challenge an Exemption 1 assertion as to any audio.

3.      Notably, the Department changes its tune and now admits (after repeated prompts

from Plaintiffs with citations to the Hur Report) that there *are* "notes" and transcripts" of the

Zwonizter recordings of President Biden.   *See supra* at 4.   Plaintiffs have repeatedly

emphasized they are not asking to see the notes.   Plaintiffs seek no discovery here.   They

merely seek the *Department's use* of the notes as an avenue to provide topical suggestions to

Plaintiffs:   *E.g.* "Are you really interested in what appears to be an hour of details of code-word

troop force discussions regarding Iraq" will receive a prompt and emphatic "No."   But again, the

Department seeks to increase the morass it has created for Plaintiffs and this Court.   The

Department refuses to explain why such a procedure is not workable other than to emphasize

vague burdens to process the notes, and arguments that such a process constitutes discovery. But the Department consults custodians and reviews custodial records every day to process FOIA requests.   What is different here?   This Court should require the Department to provide satsifcatory answers in open Court at another status conference.

      4.      As to review of the audio, Plaintiffs are at a complete loss.   Key portions almost certainly went through classification review; that is the necessary implication of multiple passages of the Hur Report.   *See* Hur Report at 108, 334, 335 (citing portions of the Zwonitzer interviews with Biden and the FBI's review of those tapes necessarily required classification review).   Moreover, by logical construction any exchanges of classified material in the Zwonitzer-Biden materials were discussed in the Hur Report.   Special Counsel Hur's remit was to conduct an exhaustive examination of Preisdent Biden's handling of classified materials; that includes improper disclosure to Mr. Zwonitzer who at no time possed the appropriate clearances. *See* Hur Report ("As discussed in Chapter Twelve, though, he did share classified information with Zwonitzer by reading from classified notebook entries to Zwonitzer nearly verbatim. These entries included entries concerning human intelligence sources, as well as entries that Mr. Biden had previously identified as classified or potentially classified.").   The Department does not directly dispute this fact.   Indeed, read logically, the Department's representations strongly imply that President Biden may have shared a good deal of classified material with Mr. Zwonizter and Special Counsel Hur did not investigate these *specific* disclosures.   Is the Department seriously saying that?   It is simply not credible to represent that *all* audio must go

through review.[3]   Plaintiffs have again pressed this point to the Department, but they have

received no clear answers other then a general and blanket denial that Special Counsel Hur failed

to conduct an exhaustive examination.   Again, this is a morass of the Department's making as

the Department (it appears) will not ask those custodians best positioned to find records—

Special Counsel Hur and his team.   The Court should require clear answers to these questions at

another status conference.

     **5.**     The Department strongly suggests (and declines to clarify) that without even

*listening* to the audio (which elsewhere is very necessary) it intends to withhold the material in

its entirety under exemption 6 and 7(C).   That would be absurd.   The law is clear the

Department must review all material to invoke a categorical withholding in that it must show the

balance always tilts to withold.   *See, e.g.*, *CREW v. DOJ*, 746 F.3d 1082, 1088–89 (D.C. Cir.

2014); *Cabezas v. Fed. Bureau of Prisons*, No. 20-cv-2484 (CJN), 2023 WL 6312349, at *3

(D.D.C. Sept. 28, 2023).   (And that is before one considers whether the audio is *categorically*

"highly sensitive, private material" after publication in President Biden's book as well as

publication in the Hur Report.   Of course it is not).

     **6.**     Plaintiffs submit that the sooner the search issues (and the apparent bait and

switch by the Department) are revolved the better.   Plaintiffs also submit that it is necessary to

come before this Court again to discuss the issues highlighted above where the Department

---

[3]   The Department makes an underhand attack on the Plaintiffs claim of exigency apparently because Plaintiffs (correctly) make it in other cases directly tied to the Hur Report or Robert Hunter Biden.   That Plaintiffs choose to litigate cases where the material is of the utmost urgency to the public is not a vice.   It is what FOIA is designed to encourage.   For the Department to suggest otherwise is alarming.   Plaintiffs reiterate that they are happy to adjust schedules in other important cases to accommodate issues related to the Hur Report and Hunter Biden.   Indeed, Plaintiffs did so in 23-cv-1854 as this Court knows.

simply refuses to provide Plaintiffs explanations.    Again, as Plaintiffs stated at the Status

Conference, they learned more from this Court's colloquy with Ms. Berman than they learned in

months of attempting to engage with the Department.    *See* Ex. 1 at ¶ 25:8–25; ¶¶26–29.

Regrettably, Plaintiffs believe this Court's involvement is necessary to make any progress and

that as this Court is sitting in equity it should exercise its full equitable powers to do so.

Plaintiffs respectfully request another status conference at the Court's earliest possible

convenience.


Dated:  June 16, 2024                                  Respectfully submitted,

                                                       BRIAN M. BOYNTON
                                                       Principal Deputy Assistant Attorney General

                                                       MARCIA BERMAN
                                                       Assistant Branch Director

                                                       */s/ Cameron Silverberg*
                                                       CAMERON SILVERBERG
                                                       Trial Attorney (D.C. Bar No. 1780628)
                                                       United States Department of Justice
                                                       Civil Division, Federal Programs Branch
                                                       Tel.:    (202) 353-9265
                                                       Fax:    (202) 616-8470
                                                       Email: Cameron.D.Silverberg@usdoj.gov

                                                       *Counsel for Defendant*


                                                       /s/ Samuel Everett Dewey
                                                       SAMUEL EVERETT DEWEY
                                                       (No. 999979)
                                                       Chambers of Samuel Everett Dewey, LLC
                                                       Telephone:  (703) 261-4194
                                                       Email:    samueledewey@sedchambers.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone: (202) 617-6975
Email:   Dan.Mauler@heritage.org

KYLE BROSNAN
(No. 90021475)
The Heritage Foundation
Telephone: (202) 608-6060
Email:   Kyle.Brosnan@heritage.org

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone: (606) 275-0978
Email:   neal@cornettlegal.com

MAX TAYLOR MATHEU
(No. 90019809)
Telephone: (727) 249-5254
Email:   maxmatheu@outlook.com

*Counsel for Plaintiffs*