<pre>
 1                    BEFORE THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
 2


 3    HERITAGE FOUNDATION, et al.,    .
                                      .   Case Number 24-cv-645
 4              Plaintiffs,           .
                                      .
 5         vs.                        .
                                      .   Washington, D.C.
 6    U.S. DEPARTMENT OF JUSTICE,     .   June 10, 2024
                                      .   2:01 p.m.
 7              Defendant.            .
      - - - - - - - - - - - - - - - -
 8


 9                    TRANSCRIPT OF STATUS CONFERENCE
                 BEFORE THE HONORABLE DABNEY L. FRIEDRICH
10                    UNITED STATES DISTRICT JUDGE

11    APPEARANCES:

12    For the Plaintiffs:        SAMUEL DEWEY, ESQ.
                                 Chambers of Samuel Everett Dewey, LLC
13                               2200 12th Court North
                                 Apartment 609
14                               Arlington, VA 22201

15                               MAX MATHEU, ESQ.
                                 2525 North George Mason Drive
16                               Arlington, VA 20007

17                               KYLE BROSNAN, ESQ.
                                 495 Eleanor Lane
18                               Arnold, MD 21012

19    For the Defendant:         CAMERON SILVERBERG, ESQ.
                                 U.S. Department of Justice
20                               1100 L Street Northwest
                                 Washington, D.C. 20005
21


22    Official Court Reporter:   SARA A. WICK, RPR, CRR
                                 333 Constitution Avenue Northwest
23                               Room 4704-B
                                 Washington, D.C. 20001
24                               202-354-3284

25    Proceedings recorded by stenotype shorthand.
      Transcript produced by computer-aided transcription.
</pre>

```
 1                    P R O C E E D I N G S

 2         (Call to order of the court.)

 3             COURTROOM DEPUTY:  Your Honor, we are in Civil Action

 4      24-645, Heritage Foundation, et al., versus U.S. Department of

 5      Justice.

 6         If I could have counsel approach the podium and state your

 7      names for the record, starting with counsel for the plaintiff.

 8             MR. DEWEY:  Good afternoon, Your Honor.  Samuel Dewey

 9      for the plaintiffs.  With me are Daniel Mauler, Max Matheu, and

10      Kyle Brosnan.

11             THE COURT:  All right.  Good afternoon.

12             MR. SILVERBERG:  Good afternoon, Your Honor.  Cameron

13      Silverberg for the Department of Justice.  With me is Marcy

14      Berman, also with the DOJ.

15             THE COURT:  Good afternoon to you.

16         So this is a status hearing, and I just want an update on

17      where things stand with the records request.  Perhaps I should

18      hear from the department first.

19             MR. SILVERBERG:  Thank you, Your Honor.

20         We have completed our search in this case, and we have

21      identified four items as potentially responsive.  We are

22      prepared to issue a final response by July 15th.

23         And to give further details on the items we've identified

24      as responsive, they are, first, the two written transcripts of

25      the interviews conducted of President Biden by the special
```

1   counsel.  Those interviews have been processed and provided to

2   plaintiffs in a separate matter.  Second, the audio from those

3   two interviews, which is now being litigated in a separate case

4   before Judge Kelly; third, approximately 70 hours of audio

5   between President Biden and his biographer which were recorded

6   for President Biden's 2017 book; and fourth, a 19-page memo

7   referenced in passage 3 of the complaint in which then Vice

8   President Biden wrote to President Obama regarding Afghanistan

9   policy.

10       Our response would pertain to the third and fourth items,

11   since, as I've mentioned, the president's interview transcripts

12   has been processed and provided to plaintiffs vis-a-vis the

13   special counsel/Biden interview transcripts and the audio for

14   those two interviews is now being litigated.

15       So for our July 15th response, we ask permission from Your

16   Honor to allow us to bifurcate processing and briefing for the

17   70 hours of audio between the president and his biographer so

18   that our July 15th response would indicate whether we intend to

19   withhold in full on the basis of exemptions 6 and 7(c).

20       If we did so and if plaintiffs disagreed with our decision

21   to withhold in full, we would then propose to move to bifurcated

22   briefing on the privacy exemptions, exemptions 6 and 7(c), and

23   would be ready to submit an opening summary judgment brief by

24   September 16th.

25       So that is where things stand in terms of our proposal to

1    the Court and to the plaintiffs.

2        THE COURT:  Okay.  So one more time.  You're saying on

3    the 70 hours of audio, you would release them -- or decide

4    whether you're going to release or withhold in full?

5        MR. SILVERBERG:  We would make the determination as to

6    whether those 70 hours would be withheld in full.  We plan to

7    hopefully listen to enough of the 70 hours so that we can make a

8    determination that they do, in fact, fall -- or whether they do,

9    in fact, fall under the kind of material that would be exempted

10   under FOIA under exemptions 6 and 7(c).

11       We would then on July 15th indicate to opposing counsel in

12   our final response whether we plan to make that withholding in

13   full.  And if the other side disagreed, we could proceed to

14   bifurcated briefing, specifically dealing with whether those

15   exemptions, the privacy exemptions, have been properly asserted.

16       We think this is a better approach than processing for

17   every possible exemption.

18       THE COURT:  But why?  Because as you're going through

19   and determining whether to release it in full -- I mean, to

20   withhold in full -- sorry, I keep say releasing -- you still

21   have to determine whether parts can be segregated.

22       So why not do it all at once?  It seems inefficient.

23       MR. SILVERBERG:  Your Honor, the issue, if we were to

24   process for all applicable exemptions, is that it would likely

25   take an extensive amount of time.  It would likely require

extensive consultations throughout the government.  And what it would amount to for the plaintiffs is, if we did decide to withhold in full on the basis of exemptions 6 and 7(c), is getting a monthly response saying we are withholding in full.

We think it's more efficient for everyone involved if we make an initial -- a determination as to whether these privacy exemptions, which we think may apply, would provide a basis for the government to withhold them in full and then give plaintiffs and us a chance to litigate that before Your Honor.

And if Your Honor decided that the privacy exemptions applied, that would be the end of processing for the 70 hours of audio.

THE COURT:  So the briefing for the second round would begin when?

MR. SILVERBERG:  So, Your Honor, we would propose for the first round a briefing schedule starting in September.  If Your Honor were to decide the privacy exemptions did not apply and that we had to process each of the audio recordings, we don't have a determined fixed date as to when we would complete processing through all of the audio.

We really can't yet speak to the amount of time that would be required, in part because of the number of consultations that will be required, that we anticipate being required, and just any number of applicable exemptions that could be in place.

So without having listened to all 70 hours, we can't yet

1    say what all applicable exemptions might apply, but we think

2    that with this kind of two-sequence approach, we would be in the

3    most -- we would be establishing the most efficient mechanism

4    for both sides and for the Court.

5            THE COURT:  But that means this information would be

6    released at the earliest in 2025.

7            MR. SILVERBERG:  Your Honor, again, I don't know at

8    this point exactly how long it would take to process the audio

9    for all applicable exemptions.  We don't have the requisite

10   information in order for me to be able to give an estimate.  But

11   we think that this approach would be the most efficient way of

12   going about it.

13           THE COURT:  I will hear from Heritage in a moment, but

14   it is your understanding that both sides are in agreement that

15   the only two areas of dispute in this case are the 70 hours of

16   audio between President Biden and his biographer and the 19-page

17   memo, given that the other case is dealing with the written

18   transcripts of the interviews?

19           MR. SILVERBERG:  Your Honor, I will let my friends on

20   the other side speak to --

21           THE COURT:  Or the audio.  Sorry.  You don't know?

22   Okay.

23           MR. SILVERBERG:  My understanding is that they have

24   issues with respect to potentially our search, and we think it

25   is appropriate to litigate that at summary judgment.  The

```
1    question of whether we have conducted an adequate search could

2    be briefed starting as soon as September under our proposal.

3              THE COURT:  Okay.  Let me hear from Heritage.

4    Mr. Dewey?

5              MR. DEWEY:  Certainly, Your Honor.  If I may, Your

6    Honor --

7              THE COURT:  Well, first of all, before you get

8    started, in terms of the different categories of documents, are

9    you seeking in this litigation in this court before me the audio

10   from the interview that's being litigated before Judge Kelly?

11             MR. DEWEY:  As of 11:00 this morning, yes, Your Honor,

12   and I give you that answer because I have had no idea what

13   records the government views as responsive until 11:00 this

14   morning when they informed me that yes, the audio was

15   responsive.  I thought it might be.  I didn't know.

16        And if I may, Your Honor, I think a bit of background might

17   be helpful on that.  This case --

18             THE COURT:  But can you just answer, now that you know

19   that, are you relinquishing that in this case, or are you

20   seeking them in both?

21             MR. DEWEY:  We have no problem relinquishing it in

22   that case.

23             THE COURT:  In this case.

24             MR. DEWEY:  I don't know what the procedure would be,

25   if it would be a stay, if it would be --
```

```
1              THE COURT:  I think you all would have to agree.

2              MR. DEWEY:  I've made an offer to discuss that, Your

3    Honor, immediately upon receipt of that information, but I

4    don't -- I would agree that the first two categories that the

5    government has outlined are not something that would be

6    necessary for Your Honor to decide at this point.

7              THE COURT:  Okay.  It just doesn't make sense to have

8    two judges looking at the same --

9              MR. DEWEY:  I agree, Your Honor, completely.  I just

10   didn't know until 11:00 this morning, and I think I replied

11   within ten minutes saying let's talk about how to put that in

12   the other case.  I would just need something to document that.

13             THE COURT:  Okay.

14             MR. DEWEY:  On the broader point, if I may, Your

15   Honor.

16             THE COURT:  Well, it raises a question, should Judge

17   Kelly have this whole thing?

18             MR. DEWEY:  I raised that with the government -- well,

19   I guess there are a number of, I'll call it, Hur report-related

20   cases, Your Honor --

21             THE COURT:  That were sent -- I think a couple of

22   judges had cases that were sent to him already.

23             MR. DEWEY:  Well, there are actually more than that,

24   Your Honor.  Three cases were transferred in front of Judge

25   Kelly because he has the earliest docket out of any Hur case.
```

1   That was Heritage's case for the audio and a case that now

2   involves 13 different media groups led by CNN, and then Judicial

3   Watch had the earliest captioned case.  There are five now other

4   cases that Heritage has on other discrete aspects of the Hur

5   report.

6       We offered, when the government made its motion to

7   consolidate in the case in front of Judge Kelly, to discuss a

8   broader consolidation.  The government never took us up on that

9   offer.  We made clear we would be happy to discuss with them,

10  work out what is efficient.

11      And that goes to the historical point I wanted to make,

12  Your Honor.  I want to make clear, I understand the attorneys in

13  this room are operating under the directives of the political

14  officials in the department, but in anything touching the Hur

15  report, Your Honor, it has been almost impossible to get any

16  information from the department without a court order.  And

17  that's just been the way these cases have run.

18      And taking that and going into this case, we're seeking the

19  records that Special Counsel Hur relied upon for the passages of

20  his report about the president's memory and how the president

21  would present because of the memory to the jury.

22      Special Counsel Hur has testified that is key to his

23  conclusion -- or was an important part of his conclusion not to

24  charge or recommend charging the president.

25      Attorney General Garland earlier this month said, "I defer

1    to Special Counsel Hur on those conclusions."

2        The White House vehemently contested the inclusion of these

3    passages.  They asked the department to redact them out.  The

4    senior career refused and said they're not in violation of

5    department policy.

6        From when the president spoke on the report to this day,

7    the administration, its proxies, and members of the president's

8    party in Congress have all vigorously contested these

9    conclusions.

10        So it is not only a burning matter of public interest; the

11    fire is fanned by the government because they are repeatedly

12    saying that it is wrong, Special Counsel Hur violated

13    presidential policy, you have close proxies saying it was a

14    political hit shot.  And obviously, no one knows what's in the

15    records.  No one knows the full panoply of what he relied on.

16    That's what we've been trying to get at here.

17        We reached out to the government, I think it was, two days

18    after the case was filed, and that was just on expedition, Your

19    Honor, because we amended to add in the substantive claim.  We

20    tried to engage with Ms. Berman and Ms. Shapiro.

21        The department has taken a position in any Hur-related case

22    that they will not negotiate in any shape or form, even to

23    confer to try to resolve a pre-answer motion.  That has been a

24    blanket position.  I have that in writing from the department,

25    Your Honor.  That has been their position in these cases.

1          That's their prerogative.  But as to the specific issues

2     that the government just outlined, it puts us in a hard position

3     because, for example, I still know nothing about the search.

4     I've been asking about the search repeatedly because there may

5     be a way in engaging with the search to narrow the matters in

6     dispute.  And I haven't had any of the information until this

7     morning.

8          An example of that, Your Honor, is, you know, I did not

9     know the Afghan memo was relied upon.  I understand there may be

10    some high-side material in that memorandum.  I would not contest

11    that.  And I could have told my friend that, and I'm stating

12    that now, but I could have told my friend that a month ago, had

13    I known.

14         And on the issue of the 70 hours, Your Honor, I can tell

15    you right now, portions of -- the Zwonitzer recordings are --

16    President Biden wrote a book, and it was ghost written.  The

17    author who ghost wrote it interviewed him.  Those recordings

18    were integral to Special Counsel Hur's conclusions.  We now know

19    he relied upon them both for memory issues but then also for

20    substantive issues.

21         For example, Your Honor, and I apologize --

22              THE COURT:  So you clearly want the 70 hours of audio.

23              MR. DEWEY:  Absolutely, Your Honor.

24              THE COURT:  Do you also want the memo, the Afghanistan

25    memo?

1          MR. DEWEY:  I would have to talk to my client and talk

2      further with the government.

3          THE COURT:  I'm wondering, if you do narrow the

4      search, whether that doesn't make it easier for them to process

5      this more quickly.

6          MR. DEWEY:  It will not be as expansive as it -- there

7      will be some narrowing, Your Honor.  I can't speak to how much.

8      I can say we're not interested in classified.  It may be that we

9      just accept the response and don't want the record processed.  I

10     don't know.  I have to confirm.  But there will be narrowing.

11         But on the 70 hours, Your Honor, one of the key things in

12     that interview is President Biden telling Mr. Zwonitzer "I just

13     found all the classified materials."  I'm paraphrasing.

14         Again, I did not know what Mr. Hur relied upon.  I can

15     certainly point to examples where there's a verbatim quotation

16     in Special Counsel Hur's report and Special Counsel Hur

17     testified it was integral to his conclusion.

18         So I was surprised to hear about a categorical withholding

19     on privacy and a need to evaluate that, Your Honor, because I

20     should think that information the special counsel made public,

21     quoted in a report, that the corresponding audio certainly would

22     be subject to a different analysis than a musing about his son's

23     death.

24         And I'm happy to have those conversations.  I will have

25     those conversations.  But again, Your Honor, the government has

1    not been willing.  It may be the case where we say okay, you

2    relied upon this record generally, here are the parts we're most

3    interested in, let's process those, the others may go away.  I

4    don't know, because I'm operating completely behind a veil here.

5        And again, another example, Your Honor, as to the timing of

6    this and the proposal to push off search, I raised this morning,

7    and I haven't gotten a response, the precedent in this area says

8    for this type of request -- I'm not going to say always, but

9    Judge Mehta has suggested and said it usually is the case, you

10   have to ask the individual in question and determine essentially

11   what is the administrative record for that conclusion.

12       And I can just tell you, Your Honor, and I understand that

13   there are cases that say this isn't dispositive, but just as a

14   negotiating level, I would be shocked if attorneys as

15   experienced as Special Counsel Hur and his deputy Marc

16   Krickbaum, both former AUSA attorneys, didn't have demeanor

17   notes over the course of five hours of an interview or that

18   there were no 302s compiled by the three FBI agents in the room

19   for demeanor.  That's trial advocacy in law school 101.  You

20   want that contemporaneously recorded.

21       And I raise that just to say I -- you know, we are

22   considerably frustrated in this matter because we want to try to

23   work it out.  We did not move for a preliminary injunction in

24   this matter, even though we thought it clearly would meet the

25   exigency requirements given that it's related to the

1    impeachment, given that it's also in some ways related to the

2    contempt citation that the rules committee is meeting on

3    tomorrow at the attorney general.  We did not because we wanted

4    to work this out.  We really do want to work it out.  We

5    understand there may be some stuff and room to compromise.

6          THE COURT:  Have you filed a PI in any of these cases?

7          MR. DEWEY:  We were basically going to in the tapes

8    case until the government agreed to make a withholding.  We have

9    not in some of the other ones because it's one record that's at

10   issue.  And the government has entered a briefing schedule.  I

11   can tell you, in front of Judge Kelly, there have been,

12   depending on how you count it, two or three rounds of briefing

13   just on the exigency of the briefing schedule.

14          THE COURT:  That is not yet resolved?

15          MR. DEWEY:  That has been resolved, Your Honor.

16          THE COURT:  And what is his briefing schedule?

17          MR. DEWEY:  The government filed their brief on the --

18   I'm going off memory, Your Honor -- the 31st.  Our opp. is due

19   the 21st.  Their opp. is 21 days.  The case is fully submitted

20   July 29th.

21          THE COURT:  And that's on everything?

22          MR. DEWEY:  That's everything that they have withheld

23   the audio under.

24       And I raise that just to say, Your Honor, that we've been

25   trying to get these cases moving.  There have been other cases

1    where it's been one record.  The government has agreed to make a

2    determination.  We're arguing over briefing schedule.

3        The government -- Judge Lamberth entered an order for the

4    government to file an opening brief on Thursday.  The government

5    asked them to move it.  We've opposed.

6        So there's certainly been that dynamic, but we are --

7            THE COURT:  And is Lamberth's the whole case, or is it

8    bifurcated?

9            MR. DEWEY:  Whole case.

10           THE COURT:  And what's being sought in that case?

11           MR. DEWEY:  That case is the audio of Mr. Zwonitzer's

12   interview with the special counsel.

13       And I raise that, Your Honor, just to say, we have been

14   trying to work this out.  We have been trying to move quickly.

15           THE COURT:  Sorry to interrupt again.  So we've got

16   Kelly, Lamberth.  I have one.  Who else has a case?

17           MR. DEWEY:  Judge AliKhan has a case over the images

18   that were taken.  That case, we're negotiating.  There's a lot

19   of data.  We're negotiating or attempting to do so.

20       The final case is -- actually, no.  I apologize, Your

21   Honor.  There are two others.  There is a case in front of Judge

22   Reyes, and that's the transcript of the Zwonitzer interview.

23       And then Judge Contreras has a case that was just filed

24   that is seeking reports of fingerprinting of any documents.

25   It's our understanding that the special counsel fingerprinted

1    the high-side material that was found at President Biden's

2    various residences.

3                THE COURT:  And the briefing schedule before Reyes and

4    Lamberth, is that comparable?

5                MR. DEWEY:  I believe so.  The government is making a

6    determination on the transcript on the 12th.  That transcript, I

7    don't have final word from the government.  I don't know if they

8    will produce the transcript redacted for things like high side

9    or that.  I know Congress has a version of the transcript that

10   was produced to them with some level of redaction.  There have

11   been discussions about just producing that transcript.  The

12   government said the FOIA office needed to go back through.

13       Again, those discussions only happened with the impetus of

14   a JSR being due.

15               THE COURT:  Okay.  So with the transcript, if you were

16   to get that, then maybe the Lamberth case goes away, maybe?

17               MR. DEWEY:  We would still want the audio, Your Honor,

18   but it -- we would still want the audio is the answer to that,

19   because the audio is going to have demeanor evidence, and there

20   were credibility and demeanor findings as to Mr. Zwonitzer, too.

21               THE COURT:  Okay.  But the bottom line is this case is

22   not covered -- it's overlapping with Kelly in one or two

23   respects, but as to the audio between President Biden and the

24   biographer, that's not covered by any other case?

25               MR. DEWEY:  Correct, Your Honor.

```
1              THE COURT:  And nor is this memo?

2              MR. DEWEY:  Correct, Your Honor.

3              THE COURT:  And if I understand, the search is

4    ongoing, so there could be more?  I will ask them to clarify

5    that.

6         Can you just answer that question?  I was confused.  You

7    say these four categories of records.  Is the search complete,

8    or it's ongoing and there could be more?

9              MR. SILVERBERG:  No, the search is complete, Your

10   Honor.

11             THE COURT:  Okay.  So this is the sum total.  But the

12   70 hours, obviously, is -- you can have a seat.  Thank you.

13   Well, I don't know.  Maybe it's not that much larger than some

14   of the other.

15             MR. DEWEY:  It is larger, Your Honor.  President

16   Biden's interview was about 5:15, and I believe Mr. Zwonitzer's

17   is seven or eight.  It is larger.  But as I said --

18             THE COURT:  515, you mean 515 hours?

19             MR. DEWEY:  No, five hours and 15 minutes, Your Honor.

20             THE COURT:  And what was the other one?

21             MR. DEWEY:  My recollection, and I emphasize

22   recollection, is that Mr. Zwonitzer's interview was seven to

23   eight hours.  But I don't believe there was a timing limit on

24   that.

25        And I know 70 is a lot, Your Honor, but that just goes to
```

1    my point.  I would love to be able to work this out with the

2    government.

3          THE COURT:  That's clearly not going to happen.  So

4    given where we are, I guess Heritage needs to make a

5    determination on whether it's going to narrow this to the audio

6    between President Biden and the biographer.

7          The other memo complicates things a little bit, not

8    knowing -- I imagine it raises a lot of national security issues

9    and other issues that might not be raised in the biography,

10   perhaps.  I don't know.

11         So let's assume for a moment that we're just talking

12   about -- I'm not saying that you've forfeited that, but let's

13   just assume that we're talking about the 70 hours of audio.

14         I take it you oppose this bifurcated approach?

15         MR. DEWEY:  Absolutely, Your Honor.  We don't see how

16   you can withhold categorically when the special counsel quoted

17   and testified in a widely watched televised hearing that he

18   relied upon passages of this audio.  I just don't -- and it's

19   not about a sensitive event that would raise a concern on the

20   oral being different from the printed word.  I just don't

21   understand --

22         THE COURT:  Well, probably not quotes, but you're

23   saying even so, it's essentially --

24         MR. DEWEY:  No, there are quotes.  There are

25   portions --

1          THE COURT:  He does quote specifically from the

2   report?

3          MR. DEWEY:  Oh, yes, Your Honor.  The report

4   specifically quotes from the transcript or the audio, I'm not

5   sure which, of these --

6          THE COURT:  So maybe they're talking about the rest of

7   it minus that.  I don't know.

8          MR. DEWEY:  I don't know.  That wouldn't be

9   categorical, then.

10         We just want this case to move quickly.  We do have the

11  concerns we've articulated about the search.  I mean, if the

12  government is going to -- and it is difficult, again, and taking

13  Your Honor's hypothetical that we're not able to negotiate and

14  work this out, I think we would want to think -- briefly think

15  about the position on the 70 hours and think about a briefing

16  schedule off of that that would be fairly expedited.

17         But we would also ask that they be compelled to file a

18  search declaration or tell Your Honor what the search protocol

19  is pretty immediately if the search is over.  Because as I've

20  said, you know, some of your colleagues have -- or Judge Mehta

21  has said in a very well-reasoned opinion, that the search is

22  probably unreasonable if they didn't ask Mr. Hur what he relied

23  upon.

24         And again, I'm not saying I'm saying the search is per se

25  invalid because of speculation, but I am very surprised that two

former U.S. attorneys and three senior FBI agents had no notes

on demeanor that were relied upon in making a demeanor finding

that was important to the nonpros decision of the president and

which Special Counsel Hur vigorously defended under what some

may call a vicious attack by members of the president's party

when he testified.

THE COURT:  So would your position be, if the search

is complete, then why not just go ahead and start briefing on

the search now?

MR. DEWEY:  Yes, Your Honor.

THE COURT:  That would be bifurcated.

MR. DEWEY:  Yes -- well, no, Your Honor.  I'm fine

briefing -- sorry.  I misunderstood Your Honor's question.  If

the search is complete --

THE COURT:  Why can't we start a briefing schedule for

that now simultaneously that they're continuing -- and I haven't

made up my mind on the rest of the issues you raise.

But is there value in briefing that now as opposed to

waiting to hear it all at once, which would be some time in the

future, and you would then have perhaps another search that

needs to be run and then another process of exemptions?

MR. DEWEY:  I apologize for giving Your Honor somewhat

precise and unsatisfying answers in this context, but I think

I'm back to that here.  Our position would be, we may see the

search dec. and say it's fine.  But again, the department won't

1    tell us what they did, even though we've been asking for it for,

2    I believe, over a month.

3        So literally, if the department filed a search dec. in 48

4    hours and I looked at this and got together with my colleagues

5    and we said this is a great search, then there's no need to

6    brief it.  We're not going to unnecessarily challenge things

7    here.  We realize that that is part and parcel of our obligation

8    to move the case along at the expedited rate that we're asking

9    for, that we want to be reasonable, we want to cut down on the

10   timing.

11       So I think -- and I would bifurcate it in that sense.  Let

12   us see a search dec.

13            THE COURT:  All right.  But you don't want the

14   categorical withholding followed by the individual exemptions?

15   You want that briefed together on an expedited basis?

16            MR. DEWEY:  Yeah, we would like everything briefed as

17   quickly as possible.  As I said, Your Honor, there is the

18   impeachment line of authority we previously cited.  That is

19   ongoing.  The House is voting on a contempt citation.  Rules is

20   marking up a rule for vote tomorrow night, I believe.

21       And then independent of that -- I can get Your Honor the

22   citation, but there is a Brennan Center opinion by Judge Kelly

23   that also points out you have exigency when you have a pending

24   legislative event that the information has bearing on.

25       The conclusion that Special Counsel Hur made that, among

1    other -- one of the significant factors for getting to where he

2    did in his analysis was how the president would present

3    certainly has implications for the president's current and

4    future fitness for office.

5        And the legislative -- analogizing to legislative, Judge

6    Kelly's case -- and I believe Your Honor is familiar with it.

7    Your Honor has cited it before.  It was on the census but in a

8    slightly different context because that was on a PI.  But the

9    analogous date is in several states early voting starts on the

10   26th of September.

11       So for all those reasons, our view is we need to move this

12   along as quickly as humanly possible, and that's where we are.

13       While I'm bringing up cases, Your Honor, I did want to, if

14   it would be helpful, give you the citation for the opinion by

15   Judge Mehta I referenced.

16              THE COURT:  Sure.

17              MR. DEWEY:  That's Public Employees for Environmental

18   Responsibility versus EPA, 314 F.Supp.3d 68, and it's a 2018

19   case.

20              THE COURT:  Okay.  So how long would it take you,

21   Mr. Dewey, to decide whether you're going to proceed with both

22   the tapes as well as the memo?

23              MR. DEWEY:  On the memo, probably 24 hours.

24              THE COURT:  Okay.

25              MR. DEWEY:  On the tapes, we certainly want key

1    portions of the tape, which at this point is all of them.  If

2    the government were able to give us some sort of categorization,

3    we might be able to work through it.  But quite frankly, I don't

4    see that happening absent an order from Your Honor to do that.

5         I would be happy to engage in whatever process might limit

6    the number of hours in dispute.

7         THE COURT:  Okay.  All right.  Thank you.

8         Mr. Silverberg, first of all, what is the government's

9    position on this case going to Kelly?

10        MR. SILVERBERG:  Your Honor, I would need to confer

11   more widely with my colleague and within the department --

12        THE COURT:  I'm not seeking to get rid of it.  I'm

13   just curious.  It sounds like, at least according to Heritage,

14   that the government has objected.

15        MS. BERMAN:  Good afternoon, Your Honor.

16        THE COURT:  Good afternoon.

17        MS. BERMAN:  We did specifically only move to

18   consolidate the cases that only sought the Biden/Hur audio tape.

19   We thought that was the quickest way to get those cases

20   together, and we thought there would be opposition to trying to

21   include in that the many, many cases that we do have that are

22   broader and that are not so like perfectly aligned and

23   overlapping.

24        THE COURT:  Okay.  Thank you.

25        All right.  Well, it seems that -- what's your response to

1    Mr. Dewey's point about the special counsel literally quoting

2    from these tapes that are sought, and if so, if that's correct,

3    how can the department possibly consider a categorical

4    withholding?

5            MR. SILVERBERG:  Well, Your Honor, that gets to the

6    merits of this case, which we propose to brief.  It gets into

7    questions which are currently being briefed now about the

8    distinction between audio material and written material.  We all

9    think that this is a subject and series of subjects that should

10   be briefed rather than discussed and determined at a status

11   conference.  We think that any of these issues that involve the

12   merits can be and should be discussed --

13           THE COURT:  I'm not saying you can't raise that

14   argument.  That's fine.  But I'm in agreement with them that

15   this is all going to be done at once on an expedited time frame.

16       So let's move on to the search.  Why can't that briefing

17   begin now if you're not going to turn over your search terms?

18           MR. SILVERBERG:  Well, Your Honor, under our proposal,

19   we would essentially begin briefing now.  We would begin in

20   September in the sense that we would brief --

21           THE COURT:  Now it's June.  So why can't you file a

22   brief in two weeks, three weeks addressing the scope of the

23   search?

24           MR. SILVERBERG:  Your Honor, I'd be happy to go back

25   and discuss internally about the possibility of a briefing that

1    would cover just the search itself.

2              THE COURT:  Okay.

3              MS. BERMAN:  Sorry.

4              THE COURT:  You're welcome to stay up there.

5              MS. BERMAN:  Okay.  Great.  Thank you, Your Honor.

6    I'm sorry for all the up and down.

7              THE COURT:  It's all right.

8              MS. BERMAN:  I just wanted to add that I think the

9    scope of the search and the search that we conducted is very

10   bound up in this case, as it is in every case, with the FOIA

11   request itself, which here is a pretty unusual request where

12   rather than asking for a specific record or all records about a

13   specific subject matter, here the request is for everything that

14   an individual relied upon in making statements.

15       So it's unusual.  We've been struggling with that.  We did

16   not deny outright and move to have briefing on that.

17             THE COURT:  You could have.

18             MS. BERMAN:  We could have, exactly.  Instead, we

19   decided to try to figure out a reasonable way to interpret the

20   request based on the statements in the Hur report itself and the

21   fact that the special counsel testified before Congress and

22   talked about what he relied upon.

23       So we did not think that it was necessary in that situation

24   to ask Special Counsel Hur what he relied upon because we had

25   very good indicia of it just looking at the four corners of the

1    report and his congressional testimony.

2        So this isn't really the kind of search where we would

3    provide search terms or, you know, custodians necessarily.

4            THE COURT:  So there wasn't really a search?  You're

5    just relying on what he has stated himself in his report?

6            MS. BERMAN:  So there was an interpretation of the

7    request, and there was a search in that we looked very carefully

8    at the report.  We looked very carefully at his congressional

9    testimony.

10        The agencies had -- the agency had to identify the 70 hours

11    of tapes.  Those tapes are -- they're actually different

12    records, different files.  So all of that had to be identified.

13    That was not identified in the report, per se.  So that is

14    definitely a part of the search that was conducted.

15        And we would anticipate, you know, briefing all of this

16    together in terms of defending the adequacy of the search.

17            THE COURT:  But I don't see -- what's the downside,

18    given that time is of the essence?

19        We can all agree this is of critical public importance.

20    What's the downside now to briefing the department's position on

21    how it read the request, which it didn't deny, it decided to

22    proceed?  Why can't the Court now start hearing the parties'

23    arguments on that, and in the event I disagree with you, there's

24    still time to supplement that search?

25            MS. BERMAN:  Right.  So, Your Honor, I think this is

1   what we were trying to avoid by not moving to dismiss right off

2   the bat and joining this issue right after the bat.  We were

3   hoping to brief it all together along with the withholdings.

4        THE COURT:  If you all had come together with the

5   plaintiffs and reached an agreement, that would be one thing,

6   but that's not what's happening here.  They want it briefed

7   yesterday.

8        I don't see right now as I sit here a reason to delay

9   briefing on what you just described.  That may well be adequate.

10  You may be exactly right.  But there's no need to delay that.

11  If we delay that until some time this fall, there's not time to

12  run another search before the election happens.

13       Do you agree?

14       MS. BERMAN:  Your Honor, if that's the way you're

15  ruling, we would certainly respect that, and we would ask for a

16  month at least to brief that.

17       THE COURT:  No, I don't -- it sounds like it's a

18  pretty straightforward search, if you will, that it was reliant

19  principally on the report.  It seems -- of the search issues

20  that I've had to rule on, this seems pretty straightforward.

21       MS. BERMAN:  Well, I would just say that nothing in

22  these cases is straightforward, because they're very high-

23  profile cases, and there's a lot of thought that is going into

24  them across the board.

25       THE COURT:  High profile, yes, but not necessarily

1    legally complicated.

2            MS. BERMAN:  Okay.

3            THE COURT:  No, I think the department -- I will give

4    you two weeks to file your brief on the search and two weeks for

5    your response and seven days for the reply.  All right?

6        Now, with respect to the other issues, I just -- if we do

7    this seriatim, we're not going to be in a position to be

8    resolving this case until 2025, and I just -- I don't see how --

9    at some point, they are going to file a PI, and I've denied one

10    in a case involving documents relating to Hunter Biden.  But

11    this is -- as the election gets close, this is an exigent

12    circumstance.

13        So what I'm going to do is I'm going to ask Heritage to

14    make a decision on what it's seeking based on what they've told

15    you, and then I'm going to ask you all to consult.  And I don't

16    expect you all to agree on how this should be briefed.  I'm sure

17    you're going to be apart, and if I need to bring you all back in

18    to talk through this to understand your respective positions, I

19    will, or otherwise, I'll make a decision.

20        But I'm going to ask you all to submit to the Court by this

21    Friday a proposed -- you know, confer with them before then and

22    submit by this Friday a proposal, if not a joint proposal for

23    briefing, the remainder of the case, putting aside the search

24    issue, and a time frame that will be -- it will result in a

25    decision being made by this court before the election.  All

1   right?  I don't see how this can wait until later, given the

2   significance.

3       So I will give you all until the 14th to file a joint

4   status report proposing either a joint briefing schedule or two

5   respective positions that, again, I will have a hearing if

6   there's a need for one, or I will just decide.  All right?

7       Is there anything else that you all want me to think about

8   now at this stage?

9           MR. SILVERBERG:  No.  Thank you, Your Honor.

10          THE COURT:  Anything more for you, Mr. Dewey?

11          MR. DEWEY:  Yes, Your Honor, two things very quickly.

12      Given the time sensitivities and, you know, we are asking

13  the department to move quickly and we have an obligation to be

14  thoughtful and given that there is high side in the memo, we are

15  not going to pursue that.  We're happy to take that out of the

16  case and file the appropriate paperwork.

17      I also just wanted to say by way of background, Your Honor,

18  two things.  I didn't mean to -- when I was commenting on the

19  consolidation, I didn't mean to suggest that the government

20  had -- I completely -- we just made the offer.  That's all I

21  wanted to convey.

22          THE COURT:  And it makes sense.  This is a broader

23  case with other issues that will come up.  In effect now, this

24  is just a case involving the tapes of the biographer; right?

25          MR. DEWEY:  Yes.

1          THE COURT:  Just like Lamberth's is --

2          MR. DEWEY:  I get that, Your Honor.

3      There is one thing I did want to flag on the search.

4          THE COURT:  And you all need to file something for the

5   record that the parties are in agreement that what is at issue

6   in this case are the 70 hours of tapes involving the president

7   and his biographer unless the Court finds the search deficient,

8   in which case --

9          MR. DEWEY:  That's correct, Your Honor.  I think we

10  can certainly memorialize something.  I think we can work that

11  out with the department.

12         THE COURT:  If you all can do that by Friday as well.

13  I just want the record to be clear.

14         MR. DEWEY:  On the search issue, Your Honor, I did

15  want to flag that -- just to be clear on the record, the type of

16  search is somewhat unusual.  As I said, it has been approved in

17  the case I gave Your Honor and cases following it, and there --

18         THE COURT:  I'm not going to decide this --

19         MR. DEWEY:  No, no, Your Honor, this is --

20         THE COURT:  This is the Mehta point, that they should

21  have consulted with Hur?

22         MR. DEWEY:  It's an easy search you have to run, what

23  did you rely upon.

24         THE COURT:  I am making them brief it really quickly,

25  and I will tell them that they need to go back if I agree with

1    you.

2            MR. DEWEY:  I understand that.  I just wanted to

3    highlight, Your Honor, Your Honor has another case, 24-cv-200,

4    where the department refused to process a -- well, I think the

5    SG's office processed it, the rest of the department didn't,

6    relating to is that a proper request, and we were prepared to

7    brief that at that time.  The government said no, we'll run the

8    search.

9        So I just wanted to highlight the concern about --

10            THE COURT:  The inconsistency?

11            MR. DEWEY:  No, no, the concern about the nature of

12    the search.  This goes to the point I was making, Your Honor,

13    that I would have loved to have this conversation, Your Honor, a

14    month and a half ago and say --

15            THE COURT:  Is this the Hunter Biden case?

16            MR. DEWEY:  This is Garland related to Hunter Biden,

17    Your Honor, and there's one in Delaware in front of Judge

18    Noreika related to Weiss, which has the same issue.  We were

19    going to file a pre-answer motion for summary judgment.  We

20    didn't have to.

21        But it is -- I am just emphasizing, Your Honor, we were not

22    trying to hide the ball on that issue at all.  We would have

23    been happy to converse on that.  It's just a frustrating

24    position, because we didn't know what we didn't know.

25            THE COURT:  Okay.  All right.  So just to be clear, it

1  makes sense for the department to lead, right, since you don't

2  know what the search results are on the motion that the search

3  is adequate?

4       MR. DEWEY:  Correct.  If they didn't talk to Special

5  Counsel Hur, I can tell you, we will dispute it.

6       THE COURT:  No, I understand.  So they file the motion

7  on or before June 24th.  You file -- it will work with just an

8  opposition; right?  You file an opposition; they file a reply.

9       MR. DEWEY:  Yeah, we don't need cross-motions here,

10  Your Honor.

11       THE COURT:  Okay.  All right.  So the motion to be

12  filed by the 24th, the opposition by July 8th, and the reply by

13  July 15.

14       In addition, the parties are going to confer and by the

15  14th file a joint status report stating your respective

16  positions on the briefing schedule, and by that time, you are

17  also going to confer and narrow the scope of this case, leaving

18  open the possibility that it could expand, depending upon the

19  Court's ruling and any subsequent search.

20       MR. DEWEY:  Yes, Your Honor.  I think certainly we can

21  work out taking the Afghanistan memo out of the case because of

22  the high side.

23       On the 70 Zwonitzer recordings, again, understanding that

24  my friends, as they said, there's a lot of people involved, I

25  think it would be helpful if there were an order to confer on

1  trying to narrow the amount of tapes in dispute, because I don't

2  think that would happen, just based on experience, absent a

3  court order.  I think that it would be potentially worthwhile.

4     Again, we recognize we're asking for a fast briefing, and

5  we are willing to make accommodations.  We did not realize there

6  were that many hours of tape involved, to be frank.

7        THE COURT:  That there were 70 hours?

8        MR. DEWEY:  Until --

9        THE COURT:  Well, let me hear from the department on

10 whether that's even realistic to do.  I mean, ultimately, it

11 might be helpful to you all to do that.

12    So on the 70 hours of tapes, he's saying they might not be

13 interested in all 70 hours.  Does it make sense, and if not,

14 tell me why not, for the department to confer with them on the

15 nature of the tapes?  What subject matter areas are discussed?

16 I don't know.  Anything you can provide them that might make

17 them narrow this case even further.

18       MR. SILVERBERG:  Your Honor, the difficulty is that we

19 would first have to listen to 70 hours, which will take a

20 significant amount of time.

21       THE COURT:  So you haven't had a chance to do that

22 yet?

23       MR. SILVERBERG:  No, not yet.  We have not processed

24 the underlying records.  This all comes in the context of 16

25 other cases, seven of which have been filed by the plaintiffs.

1    So we are dealing with significant bandwidth issues, and it's

2    the same folks in the government that have to be consulted on

3    all of this.

4        So we don't yet have the information that we can provide in

5    order to narrow on a more specific basis for each individual

6    record that's implicated with these 70 hours.  And they are

7    separate records.

8        THE COURT:  And there's no index or anything of the

9    like that you could use to give them some sense of what might be

10    in there?

11        MR. SILVERBERG:  Your Honor, I would have to go back

12    and confer with the agencies to see if we have any further

13    detail on -- with respect to what is specifically included in

14    each of these records.

15        THE COURT:  Okay.  Well, I would encourage you -- I'm

16    not going to order it, but I would encourage you, to the extent

17    there's something you can share with them, to share that,

18    because you may be able to narrow this case by doing that.  And

19    ultimately, I don't know that you're going to convince me that

20    the briefing's after the fall.

21        So with an eye toward making your work more manageable, it

22    may be in your interest, but I'm not going to order it.  All

23    right?

24        MR. SILVERBERG:  Thank you, Your Honor.

25        THE COURT:  Okay, then.  Anything more for you, for

1    DOJ?

2         MR. SILVERBERG:  Nothing further.  Thank you.

3         THE COURT:  All right.  Thank you, all.

4      (Proceedings adjourned at 2:49 p.m.)

5

6    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

7

8              CERTIFICATE OF OFFICIAL COURT REPORTER

9

10        I, Sara A. Wick, certify that the foregoing is a

11   correct transcript from the record of proceedings in the

12   above-entitled matter.

13

14

15   /s/ Sara A. Wick_____      June 11, 2024_____

16   SIGNATURE OF COURT REPORTER       DATE

17

18

19

20

21

22

23

24

25