**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **HERITAGE FOUNDATION**, & <br> **MIKE HOWELL**, <br><br> *Plaintiffs,* <br><br> v. <br><br> **U.S. DEPARTMENT OF JUSTICE**, <br><br> *Defendant*. | Case No. 1:24-cv-00645 (DLF) |

**REPLY IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT**
(Oral Argument Requested)

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION .......................................................................................................................... 1

FACTUAL UPDATE ..................................................................................................................... 1

    I.   RELEASE OF THE AUDIO RECORDINGS WOULD NOT RESULT IN AN UNWARRANTED INVASION OF PRIVACY. ................................................................ 2

       A.  President Biden & Zwonitzer Have Little, If Any, Privacy Interest Here. ................... 2

       B.  There Is Overwhelming Public Interest in Disclosure of the Audio Recordings. ........ 5

          1.  There is an Overwhelming Public Interest in Allowing the American People to Evaluate for Themselves Special Counsel Hur's Conclusions About the President's "Diminished Faculties and Faulty Memory." ........................................................ 5

          2.  There is an Overwhelming Public Interest in Evaluating Special Counsel Hur's Conclusion that there is Evidence that the President Willfully Retained and Disclosed Classified Information........................................................................... 8

          3.  There is an Overwhelming Public Interest in Whether the Biden-Harris Administration Covered-up the fact that President Biden was Unfit for Office... 12

    II.  RELEASE OF THE TRANSCRIPTS WOULD NOT RESULT IN AN UNWARRANTED INVASION OF PRIVACY. .............................................................. 13

       A.  President Biden & Zwonitzer Have Little, If Any, Privacy Interest Here. ................. 14

       B.  There Is Overwhelming Public Interest in Disclosure of the Transcript. ................... 17

    III.  THE DEPARTMENT HAS WAIVED ATTORNEY WORK PRODUCT PROTECTION OF MATERIAL SUBSTANTIALLY DISCLOSED IN THE HUR REPORT. .............. 19

       A.  The Government Has No Answers for its Inconsistent Redactions in the Hur Report and FOIA Production Casts Doubt on all Redactions. .............................................. 19

B.   Any Opinion Work Product Protection Was Waived by Release of the Hur Report.  19

C.   There Is No Fact Work Product Here. ......................................................................... 20

CONCLUSION ................................................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*N.Y. Times Co. v. NASA*, 920 F.2d 1002 (D.C. Cir. 1990) (en banc)...........................................2, 3

*ACLU v. DOJ*, 655 F.3d 1 (D.C. Cir. 2011) ................................................................................ 16

*Carrrasco v. Campagna*, No. 03-cv-4727 (SBA) (EMC), 2007 WL 81909 (N.D.Cal. Jan. 9, 2007) ......................................................................................................................................................... 21

*Chaney v. Keego Harbor Police Dep't*, No. 21-11662, 2023 WL 113043 (E.D. Mich. Jan. 5, 2023) ......................................................................................................................................................... 21

*Coastal States Gas Corp v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)............................. 20

*CREW v. DOJ*, 746 F.3d 1082 (D.C. Cir. 2014).......................................................................... 16

*CREW v. DOJ*, 854 F.3d 675 (D.C. Cir. 2017) ("*CREW IV*")...................................................... 14

*Dow Jones & Co. v. DOJ*, 880 F.Supp. 145 (S.D.N.Y. 1995)........................................... 4, 10, 11

*Dunkelberger v. DOJ*, 906 F.2d 779 (D.C. Cir. 1990) ................................................................. 8

*Enron Corp. Sav. Plan. v. Hewitt Assocs.*, 258 F.R.D. 149 (S.D. Tex. 2009).............................. 20

*EPIC v. DOJ*, 18 F.4th 712 (D.C. Cir. 2021).......................................................................... 16, 17

*Gargano v. Metro-North*, 222 F.R.D. 38 (D.Conn. 2004)............................................................ 21

*Judicial Watch v. DOJ*, 394 F.Supp.3d 11 (D.D.C. 2019)........................................................... 16

*Judicial Watch v. Nat. Archives and Records Admin.*, 876 F.3d 346 (D.C. Cir. 2017).......... 16, 18

*Judicial Watch, Inc. v. FDA*, 449 F.3d 141 (D.C. Cir. 2006) ...................................................... 15

*Martin v. Office of Special Counsel*, 819 F.2d 1181, 1183 (D.C. Cir. 1987) .............................. 20

*N.Y. Times Co. v. NASA*, 782 F.Supp. 628 (D.D.C. 1991)............................................................. 3

*Nat. Mag. v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995) ................................................. 16

*Pike v. DOJ*, 306 F.Supp.3d 400 (D.D.C. 2016).......................................................................... 3

*Sea-Roy Corp. v. Sun Belt Equipment & Rental Inc.*, 172 F.R.D. 179 (N.D. Cal. 1997)............. 20

*Trump v. United States*, 144 S.Ct. 2312 (2024) ............................................................. 6

*United States v. Williams Companies, Inc.*, 562 F.3d 387 (D.C. Cir. 2009) ............................... 20

**Other Authorities**

Doris Keans Goodwin, *Team of Rivals: The Political Genius of Abraham Lincoln* (2005) .......... 6

Robert K. Hur, *Report of the Special Counsel on the Investigation Into Unauthorized Removal, Retention, & Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph R. Biden, Jr.* at 4, 103–08, 108, 248. (Feb. 5, 2024).................... 1, 2, 4, 5, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, 20

*See* Annie Linsky et al., *How the White House Functioned With a Diminished Biden in Charge* (Dec. 19, 2024) ............................................................................................................ 2

iv

**INTRODUCTION**

As Plaintiffs explained in their Cross Motion for Summary Judgement (ECF No. 34) ("Plaintiffs' Motion" or "Plts. Mot."), despite the best efforts of Defendant's Motion for Summary Judgment (ECF No. 33) ("Defendant's Motion" or "Def. Mot.") to complicate the matter, this is a simple case.  Defendant's Combined Opposition and Reply (ECF No. 45) ("Defendant's Reply" or "Def. Reply") doubles down on the Government's desperate attempt to hide key evidence from the American people that Special Counsel Robert K. Hur relied upon to conclude:  (1) there was a case to answer against President Biden Joseph R. Biden for serious felonies in part because he disclosed classified information to his ghostwriter Mark Zwonitzer; and (2) prosecution of President Biden was not appropriate in large part because of his "diminished faculties and faulty memory."  *See* Robert K. Hur, *Report of the Special Counsel on the Investigation Into Unauthorized Removal, Retention, & Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph R. Biden, Jr.* at 4, 103–08, 108, 248. (Feb. 5, 2024) ("Hur Report"), https://www.justice.gov/sco-hur. But the Government's arguments are squarely foreclosed by well-established law, not to mention common sense.  The Freedom of Information Act ("FOIA") does not permit the withholding of information solely to avoid political embarrassment.  Disclosure is required.

**FACTUAL UPDATE**

Two important factual developments have arisen after Plaintiffs' Motion was filed.

1.      The Government does not dispute that the statement of facts in Defendant's Motion was incomplete and that the Government attempted to gloss over the Government's inexcusable delay in resolving this case.  *See* Plts. Mot. at 16–17.

2.      On December 19, 2024, the *Wall Street Journal* published a lengthy article entitled *How the White House Functioned With a Diminished Biden in Charge*, which recounts in detail compelling evidence that President Biden was impaired and that his staff covered this fact up. *See* Annie Linsky et al., *How the White House Functioned With a Diminished Biden in Charge*

1

(Dec. 19, 2024), https://www.wsj.com/politics/biden-white-house-age-function-diminished-3906a839.

## I.     RELEASE OF THE AUDIO RECORDINGS WOULD NOT RESULT IN AN UNWARRANTED INVASION OF PRIVACY.

The Government's argument that it is entitled to withhold the recordings under Exemptions 6 and 7(C) runs headfirst into both the record and the law.  President Biden and Zwonitzer have little, if any, privacy interest in the audio recording corresponding to *exact quotations from transcripts in the Hur Report*, and the American people have an overwhelming public interest in judging for themselves Special Counsel Hur's determinations:  (1) that there was a case to answer against President Biden in part because he disclosed classified information to Zwonitzer (*see* Hur Report at 4, 103–08, 108); and (2) not to prosecute the President in significant part because of his "diminished faculties and faulty memory."  Hur Report at 248.  The Government has no good answer to that reality.

### A.     President Biden & Zwonitzer Have Little, If Any, Privacy Interest Here.

**1.**     To start, even though the Government cannot bring itself to forthrightly say it, the Government appears to fully concede that President Biden and Zwonitzer have no privacy interests in the lexical aspect of the audio given that it was so critical to Special Counsel Hur's conclusions *that it was quoted in the Hur Report*.  *See* Plts. Mot. at 21.  Accordingly, the Government returns to *N.Y. Times Co. v. NASA*, 920 F.2d 1002 (D.C. Cir. 1990) (en banc), for the proposition "that transcripts and audio are not interchangeable" for privacy purposes.  Def. Reply at 11.  But the Government now concedes here what it conceded in other cases—the facts here are not remotely comparable to the last second death throes of the Challenger astronauts.  *See* Def. Reply at 12; Plts. Mot. at 23 (noting Government's concession in other cases).  The best the Government can muster is to insist that "NASA is not confined to its particularly morbid facts" and that "its basic principle is that the sound of someone's voice and the manner in which they speak can implicate privacy interests that go beyond a written transcript."  Def. Reply at 12.  But Plaintiffs do not dispute (and never have disputed) that there is a separate privacy interest in the lexical from the

2

non-lexical and therefore that President Biden and Zwonitzer have *some* privacy interest in the audio. *See* Plts. Mot. at 22–23. The point is the privacy interests at issue in this case are minimal when the Government has already revealed the *substance* of conversations going directly to how then Vice-President Biden conducted his official duties, and the public is familiar with how both men speak. *See* Plts. Mot. at 19 ("Special Counsel Hur found the specific passages at issue so critical to the issues of improper disclosure of classified information (*see* Weinsheimer Decl. at ¶ 19 bullets 4–6) and how the President handled records that could contain classified material (*see id.* at bullets 1–3) *that he quoted them in the Hur Report. See id.* at ¶ 19."); *See* Def. Reply at 13 (public familiar with how both men speak). The privacy interests in this case simply are not remotely comparable to those in *NASA*.

Perhaps recognizing this fact, the Government shifts gears and makes explicit its previously implicit legal argument that the broader *context* of the conversation—not the actual recording—is all that matters. "Privacy interests turn on what individuals intend to disclose about themselves" (Def. Reply at 12) and therefore "[i]t is immaterial that the particular snippets of audio at issue concern only document retention and foreign policy issues, as opposed to more sensitive subjects." *Id.* All that really matters is the context, "home recordings that were made in private and not meant to be disseminated to the world." Def. Reply at 13; *see also* Def. Mot. at 18.

But (ironically) this new legal twist is foreclosed by the *en banc* opinion in *NASA*. Context has only marginal relevance; what matters is what is on the audio itself. *See* Plts. Mot. at 22; *N.Y. Times Co.*, 920 F.2d at 1005. The Government must show that the *specific* non-lexical information *at issue here* is somehow *independently* private and personal (notwithstanding the lexical disclosure) in the nature of the death throes of the Challenger astronauts (*see N.Y. Times Co. v. NASA*, 782 F.Supp. 628, 633 (D.D.C. 1991)) or "voice inflection" that would identify an undercover source to those with every motive to harm that source. *See Pike v. DOJ*, 306 F.Supp.3d 400, 412 (D.D.C. 2016). The Government's shift in argument to "context" all but concedes it cannot do this.

As Plaintiffs have already explained, whatever minimal privacy interests President Biden and Zwonitzer have in the audio "are far more comparable to the privacy interests at stake in *Dow Jones & Co. v. DOJ*, 880 F.Supp. 145, 152–53 (S.D.N.Y. 1995). *See* Plts. Mot. at 23. As then-Judge Sotomayor put it, "the Foster family's privacy interest in the Note is weaker than the deceased Challenger astronauts' families' interest in the audiotape, and because the public interest in disclosure of the Note is stronger than it was in the audiotape." *Dow Jones & Co. v. DOJ*, 880 F.Supp. 145, 153 (S.D.N.Y. 1995), *vacated as moot in part*, 907 F.Supp. 79. Tellingly, the Government does not even address, let alone distinguish, Justice Sotomayor's opinion.[1]

**2.** Moving on, the Government feigns blindness to the obvious, that President Biden engaged in a cold political calculation when his Administration took the *official act* of disclosing the Hur Report and the redacted transcripts of President Biden and Zwonitzer's interviews, but refused to disclose the audio of the interviews with Special Counsel Hur or the audio here. That official act plainly vitiates the President's privacy interests. The Government does not directly dispute that reasoning, but instead attacks Plaintiffs' authority as inapposite because "when an individual discloses some information about their involvement with a law enforcement investigation, they nonetheless retain a privacy interest in the confidentiality of other, nondisclosed information." Def. Reply at 13. To be sure, the cases relied upon by Plaintiffs do not directly speak to the specific facts at issue; there has never been a case in which FOIA was so clearly abused as a sword and a shield. But the legal principle in that authority is clear. One cannot make a disclosure and then complain about subsequent releases that flow from that disclosure. *See* Plts. Mot. at 21–22. Call it a case of first impression or call it application of existing law to new facts, but it cannot be the case that the President can use his absolute official power to release or withhold material under FOIA only to release information he believes politically and personally helpful to him and withhold that which is not. That rule does not undermine "FOIA's pro-

---

[1] Justice Sotomayor's opinion in *Dow Jones* also shows that the Government is dead wrong when it asserts that if there is minimal privacy interest in material then there must also be limited public interest in the material. *See* Def. Reply at 12 n. 5. That is emphatically not the case. *See Dow Jones*, 880 F.Supp. at 152–53.

disclosure purpose" (*contra* Def. Reply at 13) precisely because such a naked self-serving application of law is absent from the normal discretionary disclosure which draws the line based on the public interest; not the political and personal legal exposure of the President.

> **B.    There Is Overwhelming Public Interest in Disclosure of the Audio Recordings.**
>
> **1.    There is an Overwhelming Public Interest in Allowing the American People to Evaluate for Themselves Special Counsel Hur's Conclusions About the President's "Diminished Faculties and Faulty Memory."**

1.    The Government does not really dispute that there is a manifest public interest in evaluating Special Counsel Hur's decision not to prosecute the President (in substantial part) because of his "diminished faculties and faulty memory." Hur Report at 248. Nor Could it. *See* Plts. Mot. at 24–25. And the Government also does not appear to dispute that the audio at issue here served both as direct evidence of the fact President Biden's poor memory (Plts. Mot. at 7–8), or "as a critical comparative reference point for assessing President Biden's 'diminished faculties and faulty memory.'" *Id.* at 8 (quoting Hur Report at 248). Instead, the Government rests entirely on arguing that in light of prior disclosures any further disclosure will be cumulative: "Given these materials, the public can readily assess the basis for Mr. Hur's decisions, and the public interest in further disclosures is minimal." Def. Reply at 14. Plaintiffs have already explained why that argument is badly flawed on its own terms (Plts. Mot. at 24–29) and the Government has not successfully countered.

2.    But as Plaintiffs' Motion also explained, the Government's argument was doubly flawed because it focused entirely on Special Counsel Hur's "determination regarding the President's memory." Def. Mot at 19. *See* Plts. Mot.at 27–29; Def. Mot at 19. The Government could not be bothered to address the already compelling public interest in disclosure had rocket fuel poured on it by the fact that President Biden and the rest of the "White House itself (and through its numerous proxies and political allies) have vigorously attacked that 'determination' as to the President's 'diminished faculties and faulty memory' since before the Hur Report was made

5

public." Plts. Mot. at 28.[2]  Contrary to the Government's view, the American People cannot rest on Special Counsel Hur's "analysis" (Def. Reply at 14) of the audio and must hear the audio itself precisely because "President Biden has stated in dramatic fashion that Special Counsel Hur is wrong." Plts. Mot. at 28.  As Plaintiffs' Motion put it:  "How can resolving that controversy, which is emphatically about Special Counsel Hur's Report and the functioning of the Government, possibly not be of overwhelmingly public interest when the White House and its allies fan the controversy at every turn?" *Id.*

The Government's answer in Reply?  This massively reported dispute does not matter.  There is no increased public interest whatsoever because President Biden is merely an "uncharged individual" who is "challeng[ing] a finding in a law enforcement report" and he is "free to defend" himself as "presumed innocent" and was "never charged or convicted." Def Reply at 9.  That is (at best) willfully blind to the context here.

President Biden is the living breathing embodiment of the unitary executive.  *See Trump v. United States*, 144 S.Ct. 2312, 2329 (2024).  He was Special Counsel Hur's bosses' boss.  He had absolute and unreviewable power to fire or control Special Counsel Hur at any time.  President Biden stated Special Counsel Hur was wrong not as some "individual" from a stoop in S.W. D.C., but from the White House podium in the West Wing, with the Seal of the President of the United States before him, the Flags of his Office and the Nation behind him and surrounded by the full might of his power.  He spoke not as an "uncharged individual" but as "the President of the United States, clothed with immense power." Doris Keans Goodwin, *Team of Rivals: The Political Genius of Abraham Lincoln* 687 (2005).  As President he flatly contradicted his subordinate's subordinate.  It does not get higher and more official than that.  So too Vice President Harris and the rest of the Biden Administration who all said Special Counsel Hur was wrong from their official perch.  That was the position of Vice President Harris as candidate (*see* Plts. Mot. at

---

[2]  This was no mere omission.  The Government knew full well from other matters that Plaintiffs would advance this submission.  Its failure to speak to the issue directly and forthrightly speaks volumes.  Plts. Mot. at 28.

15) and it remains the position of the President and his Administration even now despite the *widespread* evidence to the contrary. *See* Plts. Mot. at 13–14. *Of course*, on that record the American People are entitled to an (undisputed) key piece of "evidence" underlying Special Counsel Hur's conclusion that the President should not be charged in significant part because of his "diminished faculties and faulty memory" even though there was a case to answer. If the American people do not have a compelling interest in the underlying evidence into an investigation of the sitting President of the United States for serious felonies when the entire apparatus of Government is at loggerheads with itself then FOIA is a dead letter.

3.    Perhaps recognizing the absurdity of the foregoing argument, the Government shifts gears and disputes the utility of the records at issue here, arguing that "[t]he audio at issue constitutes approximately six and a half minutes of the Biden-Zwonitzer recordings—a tiny portion of the dozens of hours of audio that the SCO obtained from Zwonitzer" and thus it is "unclear why or how these snippets of audio would 'resolve' a purported 'dispute' about a prosecutor's subjective assessment regarding how a witness would present at trial." Def. Reply at 15. This argument is misleading to start. There is nothing "purported" or "subjective" here. There is a direct clash between Special Counsel Hur and President Biden and his Administration.

As to the merits, the Government misses the point. The public interest is not in "resolving" the dispute in some definitive manner—it is letting the American People evaluate Special Counsel Hur's work for themselves and judge the conflict between Special Counsel Hur on the one hand and President Biden and his Administration on the other. FOIA is agnostic on the conclusions the American People draw or if they draw any conclusions at all. All that matters is if the information sought is highly probative evidence in evaluating Special Counsel Hur's conclusion concerning President Biden's "diminished faculties and faulty memory" (Hur Report at 248) and resolving the conflict between Special Counsel Hur and President Biden and his Administration on that point. After all, FOIA Plaintiffs operate behind the veil and thus are never required to prove unquestionable utility of records line by line, let alone prove how the public will react to a

disclosure.[3]  Properly framed, there is no dispute that the audio here is highly probative of that issue.  After all, Special Counsel Hur relied on the audio in issue here as both direct and comparative evidence of President Biden's "diminished faculties and faulty memory."  Hur Report at 248.  *See*  First Declaration of Bradley Weinsheimer at ¶ 8 (Aug. 21, 2024) (ECF No. 27) ("First Weinsheimer Declaration" or "1st Weinsheimer Decl."); Plts. Mot. at 7–8.  Indeed, the specific audio in question was so critical to Special Counsel Hur's overall analysis *that the corresponding text was quoted in full in the Hur Report*.  *See* Second Declaration of Bradley Weinsheimer Decl. at ¶ 26 (Nov. 13, 2024) (ECF No. 33-2) ("Second Weinsheimer Declaration" or "2d Weinsheimer Decl.") ("The Hur Report discusses various portions of the Biden-Zwonitzer recordings that SCO deemed legally relevant, analyzed the evidentiary implications of those recordings, and discussed their effect on SCO's decision making with respect to whether SCO would recommend criminal charges.").[4]

      **2.** **There is an Overwhelming Public Interest in Evaluating Special Counsel Hur's Conclusion that there is Evidence that the President Willfully Retained and Disclosed Classified Information.**

      **1.** "[T]he Hur Report was unequivocal that President Biden shared classified information with Zwonitzer." Plts. Mot. at 25 (citing Hur Report 103–06, 108).  Plaintiffs' Motion sets forth in detail President Biden's vehement denial that he shared classified information with Zwonitzer as well as Special Counsel Hur's Congressional testimony that President Biden's denial was (putting it politely) "inconsistent with the findings based on the evidence in my report."  Third Declaration of Samuel Everett Dewey at Ex. 5 at 30 (Nov. 27, 2024) (ECF No. 36) ("3d Dewey

---

[3]  The Government's only cited authority, *Dunkelberger v. DOJ*, does not remotely support its argument.  *See* Def. Reply at 15 (citing *Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990)).  All the cited portion requires is that the "asserted *interest*" is "defined with sufficient specificity to enable a court to determine the nature of the public interest that it is required to balance against the privacy interests Exemption 7(C) was intended to protect."  *Id.* (emphasis added).

[4]  To the extent that the Government argues that the audio at issue here *is* relevant to Special Counsel Hur's conclusion, but the audio in issue here is too small a sample from which to draw any conclusions it suffers from an evidentiary failure.  Only the Government knows what is on the audio and its declarant tellingly provides no support for such an argument; indeed, his only statement is to the contrary.  *See* 2d Weinsheimer Decl. at ¶ 26.

Decl."); *see* Plts. Mot. 4, 10–11.  The public interest in evaluating Special Counsel Hur's conclusion and allowing the American People to judge the dispute between Special Counsel Hur and President Biden for themselves is as obvious as it is compelling.  Defendant's Reply has no good answer for this argument.

2.    To start, the Government appears to rehash yet again its "cumulative" argument. According to the Government, allowing the American People to judge for themselves a dispute between Special Counsel Hur and the sitting President (acting with all the power and might of his Office) regarding a key finding in Special Counsel Hur's felony investigation of that sitting President is not a public interest (or is simply cumulative).  Def. Reply at 9, 14–15.  Again, preposterous.  *See supra* at 6–7.

3.    Moving on, the Government argues that "Plaintiffs provide no clear explanation for what further light the recordings would shed on these determinations."  Def. Reply at 15.  But that is just not right.  Special Counsel Hur found the specific passages at issue so critical to his analysis of how President Biden's handling and improper disclosure of classified information *that he quoted them in the Hur Report*.  *See* 2d Weinsheimer Decl. at 19, 26.

To the extent the Government's argument is more nuanced and is that there is little interest in the non-lexical aspect of the admittedly critically important lexical text, that again misses the point.  Special Counsel Hur's determination that President Biden disclosed classified information to Zwonitzer turned primarily on the best available evidence, *i.e.*, the audio; *that* was the material that "had significant evidentiary value."  2d Weinsheimer Decl. at ¶14 (quoting Hur Report at 334).  Cursory examination of the passages of the Hur Report at issue confirm this point.  Take the most damning and most examined passage where Biden stated he "just found all the classified stuff downstairs."  *See* Hur Report at 3–4 (summarizing significance of this evidence); 108 (section heading by the same name).  The Hur Report clearly cites to the audio recording as the primary authority for this point, "*Zwonitzer recording Carved_000556*; Carved_000556 Tr. at 5-6; ZWONITZERTR_ 0079 (emphasis added); FBI Serials 315, 335; Evidence items 1B79, 1B81." Hur Report at 111 n. 468 (emphasis added).  The Hur Report also specifically discusses its

conclusion—necessarily from the audio—that President Biden spoke "in a matter-of-fact tone." Hur Report at 110; *id.* at 206 ("Mr. Biden's tone was remarkably casual").[5] The *audio* was directly relied upon by Special Counsel Hur for his finding that President Biden disclosed classified information to Zwonitzer and therefore it is the best evidence of Special Counsel Hur's analysis.

That is all that matters. Without the audio evidence the American People cannot fully evaluate whether Special Hur or President Biden are correct. Again, the American People cannot simply take Special Counsel Hur's analysis at face value because the President himself has told them it is wrong. That is all Plaintiffs need to show. Contrary to the Government's insinuations, the law no more requires Plaintiffs to predict what inference the American people will draw from President Biden's "matter-of-fact tone" in recounting that he "just found all the classified stuff downstairs" (Hur Report at 110) then *Dow Jones* was required to predict the American People's response to the "missing pieces" and "'look' of the handwriting" of the Vince Foster suicide note. *Dow Jones*, 880 F.Supp. at 152. The directional importance and relevance to the raging dispute is all that matters. And again, that makes sense, FOIA is directionally agnostic and only the Government knows what is on the tapes.

---

[5] So too as to the other audio passages in issue. *See* Weinsheimer Decl. at ¶ 16 (quoting passage in issue with cross references to Hur Report); *see also* Hur Report at 65 n. 236 ("Zwonitzer recording Carved_000246 (emphasis added); Carved 000246 Tr. at 3–5; FBI Serials 315, 335; Notebook entries 1B58-50-51, 56-60." (emphasis added)); Hur Report at 76 n. 294, 237 n. 918 (Zwonitzer recording 170424_0091 (emphasis added); 170424_0091 Tr. at 28–30: Evidence item 1B80 (emphasis added)); Hur Report at 77 n. 296 ("Zwonitzer recording Carved_000599 (emphasis added); Carved_000599 Tr. at 3-4; FBI Serials 315, 335." (emphasis added)); Hur Report at 104 n. 431 ("Zwonitzer recording Carved_000556; Carved_000556 Tr. at 4; Notebook entry 1B57-0062-65; FBI Serials 315, 335; Evidence items 1B79, 1B81" and making specific reference to reliance on the audio recording "Mr. Biden's precise words are difficult to discern. This quotation is our best attempt to do so." (emphasis added)); Hur Report at 245 n. 928 ("Zwonitzer recording Carved_000556; Carved_000556 Tr. at 4; Notebook entry 1B57-0062-65; FBI Serials 315, 335; Evidence item 1B79; Evidence item 1B81" (emphasis added)); Hur Report at 106 n. 440 ("Zwonitzer recording 170424_0091; 170424_0091 Tr. at 4–22; Notebook entry 1B670063-65; Evidence items 1B79, 1B81" (emphasis added))  Hur Report at 225 n. 874 ("Zwonitzer recording 170424_0091; 170424_0091 Tr. at 13–14; Evidence item 1B80" (emphasis added)).

10

**4.**      Continuing on, the Government ignores the fact that this interest comes with a kicker. "[I]n at least one key instance, the Special Counsel was not entirely sure what President Biden said." *See* Plts. Mot. at 26.   But according to the Government the American People have no interest in "judg[ing] the matter for themselves" and Plaintiffs have no interest in having their retained expert "explore audio enhancement to provide clarity on this issue." *See* Def. Reply at 16 (quoting Plts Mot. at 26).   The Government does not explain this *ipse dixit*, instead it faults Plaintiffs for failing to explain "why undisclosed experts would be better able to determine the wording than the SCO's investigative team" as well as "how this would advance any of Plaintiffs' asserted public interests." *Id.*  Yet again the Government has the burden exactly backwards.

The general interest is obvious.  The Government concedes the audio has substantial significance to two key conclusions in the Hur Report that are directly disputed by the President and no one is quite sure exactly what it says.  *See* Weinsheimer Decl. at ¶¶16, 26; Hur Report at 104 n. 431.   That alone entitles the American People to hear the audio and form their own conclusion, just as the American People were entitled to see the actual Vince Foster suicide note to form their own conclusions about the "missing pieces."   *Dow Jones*, 880 F.Supp. at 152; *see also* Plts. Mot. at 30 n. 6 (discussing dispute significant of "missing pieces).

As to Plaintiffs' putative failure to explain "why undisclosed experts would be better able to determine the wording than the SCO's investigative team," the Government ignores the record. To start, Plaintiffs' audio expert *is* disclosed, his report was publicly filed many months ago. *See* Declaration of Jerry Hatchet at ¶ 6, *Judicial Watch et al. v. DOJ*, No. 24-cv-700 (TJK) (D.D.C. filed June 21, 2024) (ECF No. 40-4).  That report explains how an audio expert can assist in making "'indiscernible words' discernable."  Moving on, there is nothing in the record about how the Special Counsel's Office attempted to decipher the words in question other than that they made a guess.  Tellingly, the Government does not submit a declaration that the Special Counsel tried expert audio enhancement and failed.  The only facts in the record are that expert enhancement may be useful, and Plaintiffs have a retained expert ready to do just that.

11

**3.     There is an Overwhelming Public Interest in Whether the Biden-Harris Administration Covered-up the fact that President Biden was Unfit for Office.**

To start, the Government does not seem to dispute that the public would have a substantial interest in evidence that revealed that Vice President Harris and others covered up for President Biden's mental decline. *Compare* Plts. Mot. at 26–27 *with* Def. Reply at 15–16. Rather, the Government asserts that the factual nexus to the audio at issue here is lacking because it is simply "nonsensical" to think that "the recordings could somehow reveal something about Vice-President Harris or other senior officials—despite them not being part of the recordings, and despite no evidence that they ever listened to them." Def. Reply at 16. But that misses the point.

The audio here is a critical piece of evidence that supports Special Counsel Hur's conclusion that the President has "diminished faculties and faulty memory" in two different ways. Hur Report at 248. First, the Biden-Zwonitzer recording serves as direct evidence that seven years ago "Biden's memory also appeared to have significant limitations . . . as evidenced by their recorded conversations." Special Counsel Hur specifically recounted that, "Mr. Biden's recorded conversations with Zwonitzer from 2017 are often painfully slow, with Mr. Biden struggling to remember events and straining at times to read and relay his own notebook entries." Hur Report at 207. But second, and more critically, Special Counsel Hur "testified he also relied upon President Biden's and Zwonitzer's conversations from February and April of 2017 (at issue here) as a critical comparative reference point for assessing President Biden's "diminished faculties and faulty memory." Plts. Mot. at 8 (quoting Hur Report at 248).

If Special Counsel Hur is correct and President Biden showed clear evidence of impairment outside of carefully scripted public appearances seven years ago, and that impairment continued, Vice President Harris and other senior Administration officials would have undoubtedly encountered President Biden's "diminished faculties and faulty memory" (Hur Report at 248)

12

every day in office.  That is not "sheer speculation" but fact.  *Contra* Def. Reply at 16.[6] Accordingly, if Special Counsel Hur was correct, senior Administration officials undoubtedly engaged in a coverup when they savaged Special Counsel Hur's conclusion that President Biden had "diminished faculties and faulty memory" (Hur Report at 248) as "inaccurate and inappropriate" and "clearly, politically motivated, gratuitous."  *See* 3d Dewey Decl. at Ex. 7 at 2. And if Special Counsel Hur was wrong then he erred, and the senior administration officials were justified in attacking him and defending President Biden.  Thus, the only question that matters here is whether Special Counsel Hur was correct in his assessment.  Whether Vice President Harris or others listened to the Biden-Zwonitzer tapes is simply irrelevant.  If President Biden had "diminished faculties and faulty memory" in 2017 (Hur Report at 248) *they would have encountered it every day from January 20, 2021 to present*.[7]  Necessarily then, the American People "are entitled to decide for themselves who is right by listening to the recordings."  Plts. Mot. at 27.

## II.   RELEASE OF THE TRANSCRIPTS WOULD NOT RESULT IN AN UNWARRANTED INVASION OF PRIVACY.

President Biden and Zwonitzer have a vastly diminished privacy interest in the transcripts because not only the fact of the Special Counsel's investigation, but many of its details—including relative to the transcripts—are already public.  Conversely, the American people have an overwhelming public interest in judging for themselves whether Special Counsel Hur was correct in concluding:  (1) that there was a case to answer against President Biden in part because he disclosed classified information to Zwonitzer (*see* Hur Report at 4, 103–08, 108); and (2) not to

---

[6]  Indeed, the Vice President and other seniormost Administration officials are duty bound to ensure the President *is* competent for Office and therefore are presumably particularly attention to whether the President exhibits diminished faculties and faulty memory."  Plts. Mot. at 8 (quoting Hur Report at 248).

[7]  There is no little irony in the Government's suggestion that there is no public interest here because Vice President Harris and others may have attacked Special Counsel Hur without bothering to reviewing the evidence.

recommend prosecuting the President (in substantial part) because of his "diminished faculties and faulty memory." Hur Report at 248.

### A.    President Biden & Zwonitzer Have Little, If Any, Privacy Interest Here.

1.    Defendant's Reply starts by doubling down on its mischaracterization of the relevant record. Again, the Government describes the transcripts at issue here as reflecting "the contents of private, sensitive home recordings of individuals who were never charged in the underlying law enforcement investigation" and asserts much of the content in the transcripts would be "sensitive and personal." Def. Reply at 3, 4. But as Plaintiffs have explained, that is wrong. The conversations between President Biden and Zwonitzer were from start to finish a *commercial endeavor*; not some private home diary or sensitive family film. *See* Plts. Mot. at 18–19. And transcription was limited to "evidence" the Special Counsel's Office "deemed significant in its evaluation of whether to recommend charges." 2d Weinsheimer Decl. at ¶ 29; *id.* at ¶ 15 (transcripts "contained information that was potentially relevant to SCO's evaluation of whether to recommend criminal charges"); *id.* at ¶ 30 ("SCO engaged a court-reporter service to transcribe only these selected portions of the conversations because they reflected the portions of the interviews that SCO deemed to be of particular investigative interest"). Most of the audio was not transcribed. Thus, the transcripts necessarily excluded purely private material such as how the President dealt with Beau Biden's suffering. Indeed, even under the Government's telling, the contents of the transcripts are almost entirely focused on President Biden's official or political conduct. *See* Weinsheimer Decl. at ¶ 16.[8]

The Government's next rejoinder—that "Plaintiffs are mistaken to presume that the SCO's winnowing of material meant that the transcripts only include items that SCO ultimately

---

[8] For the first time in Defendant's Reply the Government presses the point that third-party privacy interests are implicated. *See* Def. Mot. at 5. But even in reply, the Government provides no further information of the sort necessary to allow Plaintiffs and this Court to evaluate those withholdings. Accordingly, this Court should hold that argument waived or direct further justifications for the withholding. *See, e.g., CREW v. DOJ*, 854 F.3d 675, 679–80 (D.C. Cir. 2017) ("*CREW IV*")

determined were material to the investigation," because the transcripts included "a range of sensitive material that did not concern the retention of classified documents"—is more misdirection. Def. Reply at 5. The Government tellingly does not cite to record evidence to support this proposition, and its logic is deeply flawed. Evidence plainly can be "material to the investigation" and not *factually* concern "the retention of classified documents." *Id.* After all, evidence of President Biden's "diminished faculties and faulty memory" (Hur Report at 248) are undoubtedly relevant to the investigation, regardless of its context. And information that does not itself speak directly to facts concerning "the retention of classified documents,", may nonetheless be critical to the investigation because it provides crucial context for those facts.

2.      Moving on, the Government asserts it does not matter that the Biden-Zwonitzer audio recordings were from start to finish an immensely profitable commercial endeavor because "Plaintiffs provide no support for their suggestion that compensation for a book somehow lessens the privacy interest in independent source material that is not publicly disseminated." Def. Reply at 6. Again, the Government misses the point. Plaintiffs do not dispute that there is a privacy interest in undisclosed "independent source material" for a book. Rather they take issue with the Government claiming the privacy interest is at its zenith because the material here is akin to the most private sort of information found in a diary. The commercial material here is not remotely comparable. *See* Plts. Mot. at 18–19. And it is hornbook law that the *context* concerning information matters when assessing a privacy interest; not all privacy interests are the same. *See,*

---

(agency cannot assert Exemptions seriatim in litigation); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (A *Vaughn* index and its accompanying declaration must "provide[] a relatively detailed justification, identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply."). In fact, Plaintiffs would not even necessarily challenge such holdings were they identified with requisite specificity.

*e.g.*, *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011).  That distinction matters in weighing the privacy interest.

**3.**    Finally, The Government argues it is irrelevant that the public is aware not only of President Biden and Zwonitzer's involvement in the investigation, but also of the core operative facts in the Hur Report and Special Counsel Hur's testimony because the specific facts in the transcript are unknown.  *See* Def. Mot. at 4–5.  In the Government's view there is *no* diminution of privacy interests by the prior substantial disclosures.  *Id.*  That is not correct.

Under controlling law, the prior disclosure not only of the fact of the investigation, but the content of the investigation matters and unquestionably diminishes the extant privacy interests (although they still exist and are cognizable).  *See, e.g.*, *CREW v. DOJ*, 746 F.3d 1082, 1092 (D.C. Cir. 2014) ("We made that clear in *Kimberlin,* noting that, although a prosecutor who had publicly acknowledged he was the subject of a disciplinary investigation retained little privacy interest in keeping the fact of the investigation secret, he 'did not, merely by acknowledging the investigation and making a vague reference to its conclusion, waive *all* his interest in keeping the contents of the [disciplinary] file confidential.' (quoting *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998) (emphasis added)) ("*CREW III*"); *Nat. Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) ("redaction of Perot's name from any responsive documents in the TECS files that involve *the subject matter* of those disclosures . . . would not serve any useful purpose in protecting his privacy).  President Biden and Zwonitzer's near universal notoriety as concerns the Hur Report also diminishes their interests.  *See Judicial Watch v. DOJ*, 394 F.Supp.3d 11, 116–17 (D.D.C. 2019) ("Just the same, Steele's FBI-related notoriety certainly weakens his privacy interests.").

The Government's assertion that *Judicial Watch v. Nat. Archives and Records Admin.*, 876 F.3d 346 (D.C. Cir. 2017), and *EPIC v. DOJ*, 18 F.4th 712 (D.C. Cir. 2021) precludes this argument is wrong.  In *Judicial Watch*, the D.C. Circuit allowed the Government to withhold a draft indictment accusing Hillary Clinton of various crimes because the contents of the draft indictment—"*a staff-proposed formal government accusation of criminal conduct*"—were never adopted by the Independent Counsel let alone released to the public.  876 F.3d at 349–350

16

(emphasis added). In that circumstance, publicizing the decades-old draft indictment would have obviously impaired Mrs. Clinton's privacy interests by "produc[ing] the unwarranted result of placing Mrs. Clinton in the position of having to defend her conduct in the public forum outside of the procedural protections normally afforded the accused in a criminal proceeding." *Id.* at 350. Here, by contrast, the public is already aware of the alleged crimes that spawned the investigation of President Biden and Zwonitzer as well as much the content of that investigation.

In *EPIC*, the D.C. Circuit allowed the Government to withhold "the names and personally identifiable information of individuals investigated but not charged by the Special Counsel" (18 F.4th at 716) with making "false statements" (*id.* at 720) because disclosure of the records at issue would have revealed "additional facts about individuals that are not disclosed or even intimated elsewhere in the report." *Id.* at 720. That is not remotely the case here. The public is well aware of both of what President Biden and Zwonitzer were investigated for and the details of that investigation.

**B.      There Is Overwhelming Public Interest in Disclosure of the Transcript.**

As Plaintiffs' Motion explains, there is an overwhelming public interest in allowing the public to review key evidence that the Government concedes Special Counsel Hur expressly relied upon in determining: (1) there was a case to answer against President Biden in part because he disclosed classified information to Zwonitzer (*see* Hur Report at 4, 103–08, 108); and (2) to recommend against prosecuting the President in substantial part because of his "diminished faculties and faulty memory." Hur Report at 248; s*ee* Plts. Mot. at 33–34. The Government's responses do not persuade.

**1.**      To start, the Government seeks to walk back its prior concessions that the transcripts were key to Special Counsel Hur's decisions. *See* Def. Reply at 7. Specifically, the Government claims that the Second Weinsheimer Declaration merely identifies the transcripts as evidence that was considered but was not ultimately relevant to the charging decision. *Id.* But that is simply incorrect, the Second Weinsheimer Declaration is clear the only portions of the audio transcribed were those "deemed significant in [the Special Counsel's] evaluation of whether to

17

recommend charges." 2d Weinsheimer Decl. at ¶ 29; *id.* at¶¶ 15, 30. And in any event, the First Weinsheimer Declaration is crystal clear that Special Counsel Hur relied upon the transcripts in determining that President Biden had "diminished faculties and faulty memory." Hur Report at 248. *See* 1st Weinsheimer Decl. at ¶ 8; Hur Report at 248.

**2.** Next, the Government simply rehashes its arguments that the disclosures here would be cumulative. *See* Def. Reply at 6. Plaintiffs have already explained why that argument is dead wrong (s*ee* Plts. Mot. at 33) and the Government does not respond to that explanation other than to ignore the ongoing public dispute between Special Counsel Hur on the one hand and President Biden and his Administration on the other over whether Special Counsel Hur's conclusions were correct. That is of course egregiously wrong. *See supra* at 6–7.[9]

3. Finally, the Government repeats its erroneous argument that the public interests are somehow speculative adding that Plaintiffs "concede that it is unclear how the transcripts would actually aid the public in such a judgment." Def. Reply at 7. Not so. Plaintiffs have been clear that the transcripts will "aid the public" in determining whether Special Counsel Hur or President Biden were correct because the transcripts were key pieces of evidence relied upon by Special Counsel Hur. *See* Plts. Mot. 33–34. That is all that FOIA requires. *See supra* at 10. And Plaintiffs' supposed concession was merely an illustration that the Government is dead wrong when it asserts Plaintiffs must show that the records in issue would in fact show a defined set of facts.

---

[9] The Government attempts to save its reliance on *Judicial Watch* (*contra* Plts. Mot. at 29 n.5) by asserting that "the most salient distinction between *Judicial Watch* and this case is one that weighs in the Department's favor: a draft indictment is far more probative of a prosecutor's decision-making than the material at issue in this case." Def. Reply at 10. But that is just wrong. "a staff-proposed formal government accusation of criminal conduct" is just that and "definition contains unproven allegations that were never adopted by the Independent Counsel much less by a grand jury." *Judicial Watch*, 876 F.3d at 349–350. It says little to nothing about the Independent Counsel's decision-making. By contrast, the transcript here was directly relied upon by Special Counsel Hur in making the conclusion in issue in this case.

**III.    THE DEPARTMENT HAS WAIVED ATTORNEY WORK PRODUCT PROTECTION OF MATERIAL SUBSTANTIALLY DISCLOSED IN THE HUR REPORT.**

    **A.    The Government Has No Answers for its Inconsistent Redactions in the Hur Report and FOIA Production Casts Doubt on all Redactions.**

The Government does not respond to Plaintiffs' assertion that the redactions in its production are greater than the redactions in the public Hur Report.  *See* Plts. Mot. at 35.  That inconsistent application of the attorney work product protection calls into question all application of the same.  The Government should not be awarded summary judgment until it provides greater explanation of how this inconsistent application came to be and reviews all withholdings pursuant to the attorney work product protection.

    **B.    Any Opinion Work Product Protection Was Waived by Release of the Hur Report.**

    **1.**    The Government completely misses the point as to the question of waiver.  Under the Government's theory, the "opinion" it seeks to protect is the "winnowing" of information based on what the Special Counsel deemed important.  *See* 2d Weinsheimer Decl. at ¶ 22.  And that makes sense; it cannot possibly assert that the specific words are Special Counsel Hur's opinion, they come from a factual transcript.  In that situation, the applicable test is not as the Government would have it an "exact match of the records" based on a word-by-word comparison.  Def. Reply at 17 (citation omitted).  That would be an apples-to-oranges comparison.  Rather, the apples-to-apples comparator is whether what Special Counsel Hur thought important.  And that has unquestionably been revealed.  *See* Plts. Mot at 36.

    **2.**    Despite the Government's argument to the contrary, any application of the *Williams Companies* factors leads to the conclusion that the Special Counsel waived any opinion work product protection by releasing the Hur Report and explaining his decision in his Congressional testimony.  Those factors are:

> "(1) 'the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege'; (2) the party had no reasonable basis for believing that the disclosed materials would be kept confidential by the [third party]; and (3) waiver of the

privilege in these circumstances would not trench on any policy elements now inherent in this privilege."

*United States v. Williams Companies, Inc.*, 562 F.3d 387, 394 (D.C. Cir. 2009) (quoting *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1372 (D.C. Cir. 1984)).

The Government attempts to skirt around the first factor by arguing that having the interviews transcribed is "perfectly consistent with the purpose of the work-product doctrine[.]". Def. Reply at 18. While that is correct, it is beside the point. The Government is seeking to withhold the records in this litigation after releasing the same information to the public in the Hur Report and in the Special Counsel's congressional testimony. That does not "protect the adversary trial process" when the specifics have already been released. *Coastal States Gas Corp v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980). The second factor also cuts against the Government because while the transcripts remained entirely in its custody, the conclusions of the Hur Report were widely disseminated intentionally. Finally, release of transcripts will not trench upon any policy elements inherent to the attorney work product protection because Special Counsel Hur has already released his Report and publicly defended it before Congress.

### C.    There Is No Fact Work Product Here.

As Plaintiffs have already explained a verbatim transcript of a previously existing piece of audio evidence simply is not fact work product. There are *no* cases in this Circuit that support that proposition. *See* Plts. Mot. at 38. (As the Government well knows, *Martin v. Office of Special Counsel* did not involve a verbatim transcript of an existing audio record, but rather witness statements which are two entirely different things. *See Martin v. Office of Special Counsel*, 819 F.2d 1181, 1183, 1187 (D.C. Cir. 1987)). The Government's principle rejoinder is to string cite out of circuit authority. *See* Def. Mot. at 20–21.

These cases are easily distinguishable from the case here. The *Enron* decision considered requests for production of document and mentions transcripts only in passing in a footnote. *See Enron Corp. Sav. Plan. v. Hewitt Assocs.*, 258 F.R.D. 149, 161 n.8 (S.D. Tex. 2009). *Sea-Roy Corp. v. Sun Belt Equipment & Rental Inc.*, 172 F.R.D. 179 (N.D. Cal. 1997), is cited for what

20

appears to be *dicta* in that it held the work product protection would *not* apply to surreptitious recording. *Chaney v. Keego Harbor Police Dep't* and *Wiedeman v. Canal Ins. Co.* are more relevant in that recordings of fact witness interviews were deemed fact work product. *See Chaney v. Keego Harbor Police Dep't*, No. 21-11662, 2023 WL 113043, at *3 (E.D. Mich. Jan. 5, 2023); *Wiedeman v. Canal Ins. Co.*, No. 15-cv-4182 (WSD), 2016 WL 6080908, at *2 (N.D. Ga. Oct. 18, 2016). But neither case went the step further of extending that protection to a recording that predated the dispute by years.

*Gargano v. Metro-North* held verbatim witness statements to be work-product, but the statements were made by Defendant's employees to Defendant's claim agent and again did not involve a previously existing recording. *See Gargano v. Metro-North*, 222 F.R.D. 38, 39 (D.Conn. 2004). There is no waiver there. *Carrrasco v. Campagna* involved non-party witness interviews by Defendant. *See Carrrasco v. Campagna*, No. 03-cv-4727 (SBA) (EMC), 2007 WL 81909, at *3 (N.D.Cal. Jan. 9, 2007). However, the Court held that the work product protections of those interviews were waived by the failure of counsel to object to questioning about the contents of the interview during a deposition. *Id.* Moreover, *Carrasco* was a magistrate judge opinion almost entirely devoid of any analytical reasoning. It should be given no weight.

Indeed, it is hard to see what would not be fact work product under the Government's theory; it simply does not sweep that broadly.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion for partial summary judgment and grant Plaintiffs Motion for Summary Judgement.

Dated:  December 23, 2024

Respectfully submitted,

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email:  samueledewey@sedchambers.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone:  (202) 617-6975
Email:  Dan.Mauler@heritage.org

KYLE BROSNAN
(No. 90021475)
The Heritage Foundation
Telephone:  (202) 608-6060
Email:  Kyle.Brosnan@heritage.org

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone:  (606) 275-0978
Email:  neal@cornettlegal.com

MAX TAYLOR MATHEU
(No. 90019809)
Telephone:  (727) 249-5254
Email:  maxmatheu@outlook.com

*Counsel for Plaintiffs*

22