**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| HERITAGE FOUNDATION,<br><br>MIKE HOWELL,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>   *Defendant*,<br><br>  and<br><br>JOSEPH R. BIDEN, JR.,<br><br>   *Proposed Defendant-*<br>   *Intervenor*. | No. 24-cv-645 (DLF) |

**<u>DECLARATION OF AMY JEFFRESS IN SUPPORT OF</u>**
**<u>MOTION TO INTERVENE BY JOSEPH R. BIDEN, JR.</u>**

I, Amy Jeffress, hereby declare:

1. I am a partner at Hecker Fink LLP.  I represent Proposed Defendant-Intervenor Joseph R. Biden, Jr.  This declaration is based on my personal knowledge and on information that has become available to me in the course of this representation.

2. Plaintiffs Heritage Foundation and Mike Howell (collectively, "Plaintiffs" or the "Heritage Plaintiffs") brought this FOIA action in March 2024, seeking audio recordings and transcripts of private conversations that President Biden had with his writing partner, Mark Zwonitzer, at his home in 2016 and 2017.

3.      For the past two years, the U.S. Department of Justice (the "Department") has opposed disclosure and withheld the requested materials under FOIA Exemptions 5, 6, and 7(C). In court filings, the Department described the conversations between President Biden and his writing partner as "analogous to entries in a personal diary" and explained that the requested disclosures "would constitute a severe invasion of privacy with little to no meaningful or cognizable counterbalancing public interest." ECF No. 33-1 at 1.

4.      The Department recently changed its position. Attorneys for the Department stated in a May 8 filing that the Department "intends to disclose the written transcript and audio recordings at issue in this matter, with redactions," to both Plaintiffs and the House Committee on the Judiciary (the "Committee") on June 15, 2026. ECF No. 50 at 1. The Department's proposed redactions are insufficient to protect the privacy interests of President Biden and third parties.

5.      The Department notified President Biden of its final decision on May 5, 2026. President Biden now seeks to intervene in this action to prevent the Department from disclosing the referenced audio recordings and transcripts to Plaintiffs and the Committee.

## The Materials at Issue

6.      The materials at issue are audio recordings and transcripts of President Biden's conversations with his writing partner in 2016 and 2017. Those conversations covered a range of private and sensitive topics, including family health issues.

7.      The Department obtained the materials in connection with Special Counsel Robert K. Hur's investigation of the possible unauthorized removal and retention of classified documents. The investigation resulted in no criminal charges—against President Biden, members of his staff, or anyone else.

8. I understand that the audio recordings and transcripts were obtained from Zwonitzer's electronic devices that were produced to the Special Counsel's Office ("SCO") pursuant to an agreement between Special Counsel Hur and the White House Counsel's Office, executed on April 26, 2023. *See* Answer & Cross-Claims Ex. A ("Agreement"). The Agreement provides that "[t]he information produced will be accessed, reviewed, and used only by the Executive Branch and only for purposes of advancing the investigation, including but not limited to classification review by the intelligence community and further fact-gathering by the Special Counsel's Office." Although the materials consist of recordings of President Biden's conversations with Zwonitzer, President Biden does not have copies of or access to these recordings.

9. The Agreement provides further that "the Special Counsel's Office will not share any of the information, in any form, outside the Executive Branch, including to the Congress (whether in response to a Congressional subpoena, Congressional request, or otherwise), the Judiciary, or the public without providing the President with advance notice and a sufficient opportunity to challenge such a disclosure."

10. By email on May 12, 2023, attorneys in the White House Counsel's Office and the Special Counsel's Office memorialized their agreement that the production of materials from Zwonitzer to the Special Counsel's office was subject to the Agreement. *See* Answer & Cross-Claims Ex. B.

**The Department's Proposed Disclosure of the Materials**

11. On February 25, 2026, Associate Deputy Attorney General Paul Perkins contacted President Biden through counsel, informing President Biden's counsel that the Department "plan[ned] to produce, in response to [the] FOIA request" at issue in this action "transcripts and

audio recordings between President Biden and Mark Zwonitzer referenced in the Hur Report" by March 6, 2026. Perkins noted that the materials "appear to be covered by an agreement between the former President's attorneys and Special Counsel Hur," which "provides that the Department will give the former President advance notice and the opportunity to object prior to the production of certain materials."

12.    The following day, on February 26, 2026, I was notified of the Department's plan to produce the materials to Plaintiffs.

13.    On March 3, 2026, I discussed the Department's plan to produce the materials with Perkins by phone. Perkins informed me that the Department had reversed its position on withholding and intended to release 117 pages of transcript and the corresponding audio recordings by March 6, the deadline for the next joint status report in this case.

14.    On March 5, 2026, I visited the Department of Justice to review the audio recordings and transcripts the Department planned to produce. The Department of Justice maintained the recordings and transcripts, and I was only allowed to review them at the Department of Justice. The recordings and transcripts that I reviewed on March 5 contained limited redactions, including redactions that appeared to be directed toward national security concerns. The redactions were insufficient to protect President Biden's privacy interests.

15.    Over the next two months, in the hope of resolving this matter without resort to litigation, I engaged with the Department's attorneys to seek redactions necessary to prevent the invasion of President Biden's and others' privacy.

16.    On March 6, 2026, Perkins informed me that the Department would delay production of the materials for one week, until March 13. That same day, the Department filed a joint status report stating that it "ha[d] nearly completed its review of the withholdings from the

written transcript and audio record and hope[d] to complete that process by March 13, 2026." ECF No. 47.

17.     On March 9, 2026, I reviewed the materials again, at the Department of Justice, along with members of President Biden's staff.

18.     Over the course of the following week, I consulted with President Biden and his team regarding his position on the proposed release.

19.     On March 17, 2026, I exchanged messages with and spoke by phone to Perkins, and we agreed to meet again on March 20, 2026, to discuss the matter again in person.

20.     On March 19, 2026, Perkins represented to me that the Department intended to produce the materials in response to a request from Congress.

21.     On March 20, 2026, I met with Perkins and with Peter Winn, Acting Chief Privacy and Civil Liberties Officer at the Department.  We discussed the transcripts at issue, and I proposed redactions to protect the privacy interests of President Biden and of third parties.  Perkins and Winn said that they would conduct another review of the materials in light of the considerations I had raised.  I also asked Perkins to share the congressional request that he had mentioned the previous day.

22.     On March 23, 2026, Perkins emailed me a document, describing it as a request that the Department "received from House Judiciary today."  The request, issued by the Chair of the House Committee on the Judiciary, Representative Jim Jordan, seeks "[a]ll audio recordings of any interviews or conversations between Mark Zwonitzer and President Biden relating to Zwonitzer's ghostwriting work on President Biden's memoirs, *Promise Me, Dad* and *Promises to Keep*."  Its stated purpose is to "advance [the Committee's] oversight of the politicization of the Biden-Garland Department of Justice."

23.     The request is dated March 23, 2026—four days after March 19, the date on which the Department informed me of the request.

24.     Between March 31, 2026, and April 16, 2026, I exchanged emails with Perkins and Winn to follow up on the discussion at our March 20 meeting.

25.     On April 15, 2026, Winn informed me that the Department had made some but not the majority of the redactions that we had proposed, and planned to release the materials on April 21, 2026.  Perkins subsequently stated that it likely would not take more than "5-10 minutes" to review the newly proposed redactions.

26.     I informed Perkins and Winn that I would be representing another client in a criminal trial beginning on April 17, 2026, and asked to review the materials that the Department proposed to release after the conclusion of my trial.  Perkins refused to accommodate this request.

27.     On April 20, 2026, while I was in court for the unrelated trial, a member of my team and a representative of President Biden visited the Department to review the newly proposed redactions.

28.     On April 30, 2026, I informed Perkins and Winn that President Biden was inclined to intervene to seek to prevent the disclosure of his private conversations to Plaintiffs.  I also informed the Department that President Biden may not seek to block disclosure to the Committee if the Department made the recordings and transcripts available to the Committee's members and staff in a closed reading room at the Department, similar to how the materials had been made available for my review, but not provided to Congress in a form that could be published on the Internet.

29.     On May 5, 2026, the Department notified me of its final decision.  Perkins and Winn stated by phone that the Department would not make the requested materials available to

Congress in a closed reading room.  They further informed me that, if President Biden wished to prevent disclosure, he must file a motion to intervene by May 12, 2026; that the Department would produce the materials to Plaintiffs and to Congress on June 15, 2026, absent a court order barring release; and that the Department's decision constitutes final agency action for the purposes of the APA.

30.    The Department memorialized its final decision in a joint status report filed on May 8, 2026, stating: "Defendant intends to disclose the written transcript and audio recordings at issue in this matter, with redactions, to Congress, pursuant to a request from the Chair of the House Judiciary Committee, as well as to Plaintiffs.  President Biden, through counsel, has advised the Department that he intends to seek to intervene to prevent any such disclosures.  The Department does not oppose intervention.  If President Biden does not seek to intervene on or before May 12, the Department will disclose the material shortly thereafter.  Otherwise, the Department will disclose the material on June 15."  ECF No. 50 at 1.

**Discussions with the Parties Regarding President Biden's Proposed Filing**

31.    Prior to filing the accompanying motion to intervene and answer with cross-claims, my team and I conferred with counsel for the Department and the Heritage Plaintiffs regarding the proposed filing.

32.    As noted, the Department informed me of its final decision regarding disclosure of the materials on Tuesday, May 5, 2026.  Attorneys for the Department also confirmed that the Department does not oppose President Biden's motion to intervene.

33.    On Wednesday, May 6, counsel for Plaintiffs called my law firm and left a message with the front desk.  I was not in the office due to health reasons, so my colleague returned the call on Wednesday and had a further call with Plaintiffs' counsel on Thursday, May 7.

34. In addition, I corresponded with Plaintiffs' counsel by email on Thursday, May 7, and Friday, May 8.

35. I offered to discuss President Biden's proposed filing in a call on Monday or Tuesday, when I hoped to be back in the office. Plaintiffs' counsel originally insisted that the call take place prior to the May 8 deadline for the parties (*i.e.*, Plaintiffs and the Department) to file a joint status report. I explained that the substance of the joint status report was for Plaintiffs and the Department to decide but offered to have additional conversations regarding President Biden's anticipated submission prior to filing. Plaintiffs' counsel agreed to a Monday call and provided windows of availability, which we accommodated.

36. The "Plaintiffs' Position" section of the May 8 joint status report contains a number of inaccurate statements. Both before and after the filing of the joint status report, I informed Plaintiffs' counsel that they appeared to have misunderstood key facts.

37. I spoke with Plaintiffs' counsel on Monday, May 11, and informed them that President Biden planned to file a motion to intervene as a defendant and a proposed answer including cross-claims against the Department, seeking to enjoin disclosure of the materials to Plaintiffs or to Congress.

38. Following these discussions, I understand that the Department does not oppose, and the Heritage Plaintiffs do oppose, President Biden's motion to intervene.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2026          */s/ Amy Jeffress*_____
Washington, D.C.                         Amy Jeffress (D.C. Bar No. 449258)

*Counsel for Proposed Defendant-Intervenor*
*Joseph R. Biden, Jr.*

8