**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| HERITAGE FOUNDATION,<br><br>MIKE HOWELL,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>*Defendant*,<br><br>and<br><br>JOSEPH R. BIDEN, JR.,<br><br>*Proposed Defendant-Intervenor*. | No. 24-cv-645 (DLF) |

**PROPOSED DEFENDANT-INTERVENOR'S
ANSWER TO AMENDED COMPLAINT & CROSS-CLAIMS**

Proposed Defendant-Intervenor Joseph R. Biden, Jr., by and through his undersigned counsel, hereby answers the numbered paragraphs of the Amended Complaint of the Heritage Foundation and Mike Howell (collectively, "Plaintiffs"), ECF No. 6, as follows:

1.      The first sentence of this paragraph consists of Plaintiffs' characterization of this lawsuit to which no response is required.  To the extent a response is required, Defendant-Intervenor admits that Plaintiffs brought the referenced FOIA action.  With respect to the second, third, tenth, twelfth, and fifteenth sentences of this paragraph, Defendant-Intervenor respectfully refers the Court to the cited sources, and he denies any allegation inconsistent with those sources. With respect to the ninth, eleventh, thirteenth, and fourteenth sentences of this paragraph,

Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations, except he admits that Special Counsel Hur testified about the Report before Congress on March 12, 2024 and that on that same day, the Department provided to Congress a transcript of President Biden's interview with Special Counsel Hur.  Defendant-Intervenor denies the remaining allegations contained in this paragraph.

2.     Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

3.     Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

4.     Admitted that the Department is a federal agency within the meaning of 5 U.S.C. § 552(f)(1) and that the Department's mission statement "is to uphold the rule of law, to keep our country safe, and to protect civil rights."

5.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor admits the allegations.

6.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor admits the allegations.

7.     Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

8.     Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

9.     Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

10. Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

11. Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

12. Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

13. Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

14. Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

15. Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

16. Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

17. Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

18. This paragraph consists of Plaintiffs' argument and legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the cited sources, and he denies any allegation inconsistent with those sources.

19. Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

20.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the cited sources, and he denies any allegation inconsistent with those sources.

21.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the cited source, and he denies any allegation inconsistent with that source.

22.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the cited sources, and he denies any allegation inconsistent with those sources.

23.     Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

24.     Admitted.

25.     Defendant-Intervenor admits that the docket for this case, No. 24-cv-645, identifies the filing date for Plaintiffs' original complaint as March 6, 2024.  Defendant-Intervenor respectfully refers the Court to the docket, and he denies any allegations inconsistent with that source.

26.     Admitted.

27.     Defendant-Intervenor reasserts his response to the foregoing paragraphs as if fully stated herein.

28.     The first sentence of this paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.  The second sentence of this paragraph purports to quote a memorandum dated

March 15, 2022. Defendant-Intervenor respectfully refers the Court to that memorandum for a complete and accurate statement of its contents, and he denies any allegation inconsistent with that source.

29.     This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

30.     This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor admits that Defendant DOJ is subject to FOIA, respectfully refers the Court to the FOIA statute and applicable case law, and denies any allegation inconsistent with those sources.

31.     This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

32.     This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute, the cited DOJ regulations, and applicable case law, and he denies any allegation inconsistent with those sources.

33.     This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.

34.     This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.

35.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor denies the allegations.

36.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

37.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

38.     Defendant-Intervenor reasserts his response to the foregoing paragraphs as if fully stated herein.

39.     The first sentence of this paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.  The second sentence of this paragraph purports to quote a memorandum dated March 15, 2022.  Defendant-Intervenor respectfully refers the Court to that memorandum for a complete and accurate statement of its contents, and he denies any allegation inconsistent with that source.

40.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

41.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor admits that Defendant DOJ is subject to

FOIA, respectfully refers the Court to the FOIA statute and applicable case law, and denies any allegation inconsistent with those sources.

42.    This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.

43.    This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.

44.    This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute, the cited DOJ regulations, and applicable case law, and he denies any allegation inconsistent with those sources.

45.    This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.

46.    This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.

47.    This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor denies the allegations.

48.    This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

49.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

50.     Defendant-Intervenor reasserts his response to the foregoing paragraphs as if fully stated herein.

51.     The first sentence of this paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.  The second sentence of this paragraph purports to quote a memorandum dated March 15, 2022.  Defendant-Intervenor respectfully refers the Court to that memorandum for a complete and accurate statement of its contents, and he denies any allegation inconsistent with that source.

52.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

53.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

54.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

55.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

56.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor denies the allegations.

57.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

58.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.

59.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.

60.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in the second sentence of this paragraph, and he denies the remaining allegations.

61.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

62. This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

63. Defendant-Intervenor reasserts his response to the foregoing paragraphs as if fully stated herein.

64. The first sentence of this paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources. The second sentence of this paragraph purports to quote a memorandum dated March 15, 2022. Defendant-Intervenor respectfully refers the Court to that memorandum for a complete and accurate statement of its contents, and he denies any allegation inconsistent with that source.

65. This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

66. This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

67. This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

68. This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, Defendant-Intervenor denies the allegations.

69.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

70.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.

71.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor denies the allegations.

72.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

73.     Defendant-Intervenor reasserts his response to the foregoing paragraphs as if fully stated herein.

74.     The first sentence of this paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.  The second sentence of this paragraph purports to quote a memorandum dated March 15, 2022.  Defendant-Intervenor respectfully refers the Court to that memorandum for a complete and accurate statement of its contents, and he denies any allegation inconsistent with that source.

75.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

76.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

77.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

78.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor respectfully refers the Court to the FOIA statute and applicable case law, and he denies any allegation inconsistent with those sources.

79.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor denies the allegations.

80.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

81.     This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant-Intervenor lacks knowledge or information sufficient to form a belief about the truth of the allegations.

The remainder of the Amended Complaint sets forth Plaintiffs' requested relief, to which no response is required.  To the extent a response is required, Defendant-Intervenor denies that Plaintiffs are entitled to the relief that they seek or to any other relief in this action.

Defendant-Intervenor further denies all allegations in the Amended Complaint not expressly admitted or denied.

## DEFENSE

Plaintiffs are not entitled to the requested information because it is exempt from disclosure under FOIA.  *See* 5 U.S.C. § 552(b).

## RESERVATION OF RIGHTS

Proposed Defendant-Intervenor Joseph R. Biden, Jr., respectfully requests and reserves the right to amend, alter, and supplement the defense contained in this Answer as the facts and circumstances giving rise to the Amended Complaint become known to him through the course of the litigation.

## CROSS-CLAIMS

Proposed Defendant-Intervenor Joseph R. Biden, Jr., hereby alleges the following cross-claims against Defendant U.S. Department of Justice:

## JURISDICTION AND VENUE

1.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because the cross-claims arise under the laws of the United States, including the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06, Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the United States Constitution.

2.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (e)(1).

## PARTIES

3.     Upon information and belief, Plaintiff Heritage Foundation is a nonprofit organization established under the laws of the District of Columbia with its principal place of business in Washington, D.C.

4.     Upon information and belief, Plaintiff Mike Howell is an employee of Plaintiff Heritage Foundation.

5.      Defendant  U.S. Department of Justice (the "Department") is a department of the executive branch of the United States government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 552a(a)(1).  The Department has possession of and control over the records at issue.

6.      Proposed Defendant-Intervenor Joseph R. Biden, Jr. was the forty-seventh Vice President of the United States and the forty-sixth President of the United States.

<strong>FACTUAL ALLEGATIONS</strong>

**The Records at Issue, the Special Counsel's Investigation, and the Operative Agreement**

7.      Beginning in the spring of 2016, President Biden met periodically with his writing partner, Mark Zwonitzer, to discuss what would become President Biden's 2017 memoir, *Promise Me, Dad: A Year of Hope, Hardship, and Purpose*.  These were private conversations, often involving sensitive subject matter, that took place in President Biden's home.

8.      Zwonitzer recorded the conversations for his personal use in assisting President Biden with writing his memoir.  President Biden and Zwonitzer both understood that the recordings would be used only for that purpose and would not be disseminated to the public.

9.      In President Biden's conversations with Zwonitzer and, ultimately, in his memoir, he recounted the year of his life that began during the Thanksgiving holiday in 2014.  That year was among the most consequential of President Biden's political life and the most painful of his personal life.  Then-Vice President Biden served the final year of his term in that office and considered a run for the Presidency in 2016.  All the while, President Biden's eldest son, Beau, fought brain cancer and ultimately passed away on May 30, 2015, at the age of forty-six.

10.      In reflecting on these events, President Biden and Zwonitzer discussed a range of sensitive topics, including the role that Beau's battle with cancer played in President Biden's decision whether to run for President in 2016; the many other voices and events that factored into

that difficult, highly personal decision; and the toll that Beau's illness and eventual passing took on President Biden and his tight-knit family.

11.    Years later, in 2020, President Biden ran for and was elected President.

12.    On November 2, 2022, President Biden's personal counsel discovered classified documents within boxes of materials from his Vice Presidency, which were stored at the Penn Biden Center for Diplomacy and Global Engagement in Washington, D.C.   Through counsel, President Biden immediately reported the discovery.   He cooperated fully with the resulting investigation.

13.    On January 12, 2023, Attorney General Merrick Garland appointed Special Counsel Robert K. Hur to investigate the possible unauthorized removal and retention of classified documents by President Biden.   As Attorney General Garland explained, "[t]his appointment underscore[d] for the public the Department's commitment to both independence and accountability in particularly sensitive matters, and to making decisions indisputably guided only by the facts and the law."

14.    In the course of the investigation, the Special Counsel's Office ("SCO") obtained from Zwonitzer materials related to his conversations with President Biden.

15.    The Department obtained these materials subject to an agreement between the White House Counsel's Office and Special Counsel Hur, which provided that "[t]he information produced will be accessed, reviewed, and used only by the Executive Branch and only for purposes of advancing the investigation, including but not limited to classification review by the intelligence community and further fact-gathering by the Special Counsel's Office."   Ex. A ¶ 1 (the "Agreement").

16.     The Agreement also required the Special Counsel's Office to provide President Biden "advance notice and a sufficient opportunity to challenge [any] disclosure" of the materials "outside the Executive Branch, including to the Congress (whether in response to a Congressional subpoena, Congressional request, or otherwise), the Judiciary, or the public." *Id.* ¶ 5.

17.     The SCO used forensic tools to recover deleted audio recordings of Zwonitzer's conversations with President Biden from the external hard drive that Zwonitzer produced.

18.     Special Counsel Hur ultimately concluded that criminal charges against President Biden were unwarranted.

19.     Special Counsel Hur explained his decision in a 345-page report to the Attorney General, in which Hur "conclude[d] that the evidence d[id] not establish Mr. Biden's guilt beyond a reasonable doubt."

20.     Special Counsel Hur also explained that there were "several material distinctions" between the facts that Special Counsel Hur had found with respect to President Biden and the allegations in the indictment charging President Trump with mishandling classified documents. For example, President Trump "not only refused to return [classified] documents for many months" after being given the opportunity to do so to avoid prosecution, "but he also obstructed justice by enlisting others to destroy evidence and then to lie about it." "In contrast," President Biden "turned in classified documents to the National Archives and the Department of Justice, consented to the search of multiple locations including his homes, sat for a voluntary interview, and in other ways cooperated with the investigation."

21.     Special Counsel Hur's report cited limited excerpts of President Biden's conversations with Zwonitzer. All of these excerpts focused on President Biden's notes and other records related to official business as Vice President.

22.    On February 8, 2024, the Department published Special Counsel Hur's report on its website.

23.    In addition to releasing Special Counsel Hur's report to the public, the Department helped facilitate Special Counsel Hur's public testimony before Congress on March 12, 2024, concerning his investigation and decision to decline prosecution.  The day of Special Counsel Hur's congressional testimony, the Department also provided to Congress a transcript of President Biden's five-hour interview with Special Counsel Hur.

**Plaintiffs' FOIA Request and This Litigation**

24.    On February 9, 2024, Plaintiff Mike Howell submitted a FOIA request to the Department, seeking all "records relied upon by Special Counsel Hur in drafting [six particular] passages in the [Hur] Report relating to President Joseph R. Biden's memory and mental faculties." ECF No. 6 ("Am. Compl.") ¶¶ 8-9; ECF No. 6-3 (the "FOIA Request").

25.    Plaintiffs filed this action against the Department, alleging violations of FOIA, on March 6, 2024.  Plaintiffs filed an amended complaint on March 13, 2024.

26.    After Plaintiffs and the Department (collectively, the "Parties") completed partial summary judgment briefing on the adequacy of the Department's search for responsive records, ECF Nos. 21-22, 24-25, Plaintiffs withdrew their challenge to the search's adequacy, ECF No. 28 at 2.

27.    On October 16, 2024, the Department issued a final response to the FOIA Request and released 117 pages of transcripts of conversations between President Biden and Zwonitzer. ECF No. 33-2 ("Weinsheimer Decl.").  These conversations took place on six occasions between October 10, 2016, and April 26, 2017.  The transcripts were heavily redacted pursuant to FOIA Exemptions 5, 6, and 7(C).  5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C).  They were created from audio

17

recordings that the SCO obtained from Zwonitzer pursuant to the Agreement and were prepared by a court reporting service at the direction of the SCO, to facilitate the SCO's review of evidence.

28.   In November 2024, the Parties filed cross-motions for summary judgment on the Department's withholdings.   ECF Nos. 33-34.   The Parties completed briefing on their cross-motions in December 2024.  ECF Nos. 37-38.

29.   In the Department's motion for summary judgment on its withholdings, the Department correctly described the "privacy interests" at stake in these materials as "undoubtedly enormous"—the equivalent of "releasing the pages of an unindicted suspect's diary entries, or the private text messages exchanged on the suspect's phone . . . despite no charges having ever been brought, let alone charges relating to that private content."  ECF No. 33-1 ("Def.'s Mem.") at 18.

30.   Further, given the Department's publication of Special Counsel Hur's report and the "voluminous information" about the Special Counsel investigation already in the public domain—including hours of congressional testimony by Special Counsel Hur and transcripts of President Biden's and Zwonitzer's interviews with Special Counsel Hur—the Department asserted that "release of the transcripts would do little to advance the public's ability to evaluate Special Counsel Hur's decisions." *Id.* at 14-15.

31.   The Department concluded that disclosure of the audio recordings and transcripts would "constitute a severe invasion of privacy with little to no meaningful or cognizable counterbalancing public interest." *Id.* at 1.

32.   The summary judgment briefing involved the Department's withholdings of: (1) transcripts of President Biden and Zwonitzer's conversations that the SCO directed a court reporting service to prepare and (2) the corresponding audio recordings.  By agreement of the Parties, Plaintiffs sought the transcripts in their entirety but sought only the portions of audio

recordings of President Biden and Zwonitzer's conversations that were quoted directly in the Hur Report.  ECF No. 33-3 ¶ 28.

33.     On September 23, 2025, the Court entered a minute order stating: "In light of the public release of other audio from the Special Counsel's investigation and developments in No. 24-cv-700, the parties shall file, on or before September 26, 2025, a joint status report as to the state of production in this case and whether the plaintiffs continue to seek release of the requested records."  Min. Order (Sept. 23, 2025).

34.     On September 26, 2025, the Parties filed a joint status report explaining that the Department had not made additional releases of records and was reviewing its withholdings.  ECF No. 42 at 1, 3.

35.     On September 27, 2025, the Court stayed this action "to give the defendant time to review its withholdings and to give the parties an opportunity to engage in further discussions to settle this case or narrow the remaining legal issues."  Min. Order (Sept. 27, 2025).

36.     For nearly eight months, the Parties have conferred and filed periodic joint status reports.  Neither party has sought to lift the stay or requested any other relief from the Court.

**President Biden's Privacy Interests and the Department's Prior Position**

37.     Every American, including a sitting or former Vice President, has a right to privacy in the personal conversations he has within his own home.  That is particularly true when the Department obtains that information through a criminal investigation.

38.     For President Biden, his son Beau's battle with cancer played a role in the major decisions that President Biden faced during the consequential year that he recounted to Zwonitzer, including the decision whether to run for President in 2016.  As President Biden wrote in *Promise Me, Dad*, "[r]unning for the Democratic nomination was all tied up with Beau. . . . The thought of

19

doing it without him was painful.  But as the days passed, the idea of not running started to feel like letting him down, like letting everybody down."

39.    The Department obtained Zwonitzer's recordings of his private conversations with President Biden as part of the Special Counsel's investigation.  That investigation resulted in no charges against President Biden.

40.    Bradley Weinsheimer, then an Associate Deputy Attorney General for the Department, provided a declaration setting forth the basis for the Department's withholdings in this action.  *See* Weinsheimer Decl.  Weinsheimer served for over twenty years as an Assistant United States Attorney in Washington, D.C.  He also served in the Department's National Security Division and Office of Professional Responsibility.  In 2018, Attorney General Jeff Sessions appointed Weinsheimer to serve as Associate Deputy Attorney General, the highest-ranking career position in the Department.

41.    Weinsheimer's conclusions were based in part on direct conversations with Special Counsel Hur and members of his staff.  *Id.* ¶ 2.

42.    As Weinsheimer explained, "[w]hen no charges are filed, . . . evidence gathered from private individuals that reveals their private conduct can be expected to be kept confidential, especially when that information may be highly personal."  *Id.* ¶ 24.  "For that reason, the Department takes great care to protect its law enforcement files, consistent with the law, even in closed cases, remaining sensitive to the privacy and reputational interests of uncharged parties."  *Id.*  These statements were, and continue to be, accurate.

43.    Weinsheimer also recognized that, in general, "conversations with a writing assistant to aid with drafting a memoir are analogous to an audio version of a personal diary."  *Id.* ¶ 22.  "Moreover, the conversations at issue are unusually sensitive," because "[t]hey were created

20

for the purpose of helping create a memoir that focused on a highly emotional period in President Biden's life." *Id.* These statements were, and continue to be, accurate.

44.    The Department stated in its summary judgment brief that "[t]he privacy interests here are undoubtedly enormous." Def.'s Mem. at 11. This statement was, and continues to be, accurate.

45.    On the other side of the balance, Weinsheimer explained that "release of the recording would do very little (if anything) to advance the public's understanding of Special Counsel Hur's activities due to the substantial amount of information already in the public record." Weinsheimer Decl. ¶ 27; *see, e.g.*, *supra* ¶¶ 22-23. These statements were, and continue to be, accurate.

46.    Accordingly, the Department represented to the Court that disclosure of the materials "would constitute a severe invasion of privacy with little to no meaningful or cognizable counterbalancing public interest." Def.'s Mem. 1. This statement was, and continues to be, accurate.

47.    Put simply, the Department's career attorneys did not view the issues presented in this action as remotely close.

**The Department's About-Face and Present Intent to Disclose the Materials**

48.    The FOIA statute has not changed since the Department set forth its position on withholding in late 2024.

49.    The case law interpreting the relevant FOIA exemptions has not materially changed since the Department set forth its position on withholding in late 2024.

50.    President Trump was inaugurated on January 20, 2025. At no point in the following year did the Department withdraw its summary judgment filings or notify the Court of any change

in its position in this case.  The case was largely dormant until September 2025, when the Court entered a minute order directing the parties to submit a joint filing regarding the case status.

51.     Since briefing on the Parties' summary judgment motions concluded, the balance of interests has only tipped more sharply against disclosure.

52.     President Biden is a private citizen who does not hold, and is not seeking, any government office.

53.     Additionally, more information about Special Counsel Hur's investigation has entered the public record.  For example, on May 19, 2025, the Department released the full audio recording of President Biden's interview with Special Counsel Hur.

54.     On February 25, 2026—after defending the privacy interests underlying Exemptions 6 and 7(C) for approximately two years—the Department's Office of the Deputy Attorney General informed President Biden through counsel that the Department planned to produce certain audio recordings and transcripts, with limited redactions, to Plaintiffs.

55.     The Agreement required the Department to provide such notice to President Biden.

56.     The Department provided no official explanation that reflected the consummation of the Department's decisionmaking for reversing its position in this action.

57.     By phone, an attorney in the Department's Office of the Deputy Attorney General informed counsel for President Biden that the Department had reversed its position on withholding and intended to release 117 pages of transcript and the corresponding audio recordings.

58.     President Biden's counsel and other representatives of the President promptly reviewed the materials at the Department.  In the weeks that followed, President Biden's counsel engaged with the Department's attorneys, with the goal of resolving this matter without resort to litigation.

22

59.     On the evening of March 19, 2026, an attorney in the Department's Office of the Deputy Attorney General called President Biden's counsel and stated that the Department had received a request from Congress and intended to produce the materials to Congress regardless of the outcome of this FOIA action.

60.     The next day, President Biden's counsel asked the Department attorneys to provide the congressional request of which they had notified President Biden's counsel the previous evening.

61.     On March 23, 2026, the Department sent to President Biden's counsel a request from the Chair of the House Committee on the Judiciary, Representative Jim Jordan, for "[a]ll audio recordings of any interviews or conversations between Mark Zwonitzer and President Biden relating to Zwonitzer's ghostwriting work on President Biden's memoirs, *Promise Me, Dad* and *Promises to Keep*." Ex. B at 1.  The stated purpose of the request is "to advance [the Committee's] oversight of the politicization of the Biden-Garland Department of Justice." *Id.*

62.     The request was dated **March 23, 2026**.  March 23 is four days after March 19, the date on which the Department informed President Biden's counsel of its supposed existence.

63.     The Department ultimately refused to make most of the redactions to the materials that President Biden requested.  These redactions were necessary to adequately protect the privacy interests of President Biden and third parties.

64.     On May 5, 2026, the Office of the Deputy Attorney General informed President Biden, through counsel, that the Department had made a final decision to release the materials, with limited redactions, to Plaintiffs and to Congress on June 15.  The Department represented that its decision constitutes final agency action for the purposes of the APA.

65.     On May 8, the Department stated in a joint status report that it "intends to disclose the written transcript and audio recordings at issue in this matter, with redactions" (the "Materials"), to both Plaintiffs and Congress on June 15, 2026.  *See* ECF No. 50 at 1.

66.     To date, President Biden has not received an official explanation that reflects the consummation of the Department's decisionmaking regarding the basis for the Department's reversal of position .  *See supra* ¶ 56.

67.     While President Biden's counsel have exchanged emails with Department attorneys regarding the issues in this action in the course of attempting to negotiate a resolution, those emails do not reflect the consummation of the Department's decisionmaking.  Moreover, their substance cannot be squared with binding Supreme Court and D.C. Circuit precedent.

**The Proposed Disclosure and the Requirements of the Privacy Act**

68.     The Privacy Act prohibits federal agencies from disclosing certain information about an individual to any person, or to another agency, without the individual's written consent, unless specified conditions are met.  5 U.S.C. § 552a.

69.     The Department has stated that it intends to disclose the Materials to Plaintiffs and Congress on June 15.

70.     The Materials constitute a "record" or "record[s]" contained in one or more "system[s] of records" maintained by the Department of Justice, as defined in the Privacy Act, 5 U.S.C. § 552a(a)(4)-(5).  For example, FOIA processing records are maintained in DOJ-004: Freedom of Information Act, Privacy Act, and Mandatory Declassification Review.

71.     The Department may also have maintained the Materials in the following systems of records, among others: DOJ-003: Correspondence Management Systems for the Department of Justice; DOJ-006: Personnel Investigation and Security Clearance Records for the Department of

Justice; FBI-002: FBI Central Records System; and CRM-001: Central Criminal Division Index File and Associated Records.

72.    On information and belief, at all relevant times, the Department maintained the Materials in one or more systems of records.

73.    On information and belief, Department of Justice officials retrieved the Materials from a system or systems of records using one or more personal identifiers.  President Biden's name is one such personal identifier.

74.    In addition, on information and belief, Department of Justice officials generally used personal identifiers to retrieve information about individuals from the relevant systems of records during the period in question.

75.    President Biden has not consented to disclosure of the Materials to Plaintiffs or Congress.

76.    Disclosure of the materials would cause harm to President Biden, including in the form of costs to respond to the disclosure and other financial losses.

<u>COUNT I</u>
**Violation of the Administrative Procedure Act—5 U.S.C. § 706(2)(A)**
**Arbitrary and Capricious**
**Disclosure to Plaintiffs**

77.    Proposed Defendant-Intervenor Joseph R. Biden, Jr., incorporates by reference paragraphs 1 through 76, as if fully restated herein.

78.    The Materials constitute "similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," within the meaning of FOIA Exemption 6, 5 U.S.C. § 552(b)(6), and "records or information compiled for law enforcement purposes" the "production" of which "could reasonably be expected to constitute an unwarranted invasion of

personal privacy," within the meaning of FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), and are therefore exempt from disclosure.

79.    The Department failed to rationally explain the basis for the reversal of its unequivocal position that the Materials are exempt from disclosure under Exemptions 6 and 7(C).

80.    The Department's decision to release the Materials to Plaintiffs is thus arbitrary and capricious.  5 U.S.C. § 706(2)(A).

<u>**COUNT II**</u>
**Violation of the Administrative Procedure Act—5 U.S.C. § 706(2)(A)**
**Abuse of Discretion**
**Disclosure to Plaintiffs**

81.    Proposed Defendant-Intervenor Joseph R. Biden, Jr., incorporates by reference paragraphs 1 through 76, as if fully restated herein.

82.    The Materials constitute "similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," within the meaning of FOIA Exemption 6, 5 U.S.C. § 552(b)(6), and "records or information compiled for law enforcement purposes" the "production" of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy, within the meaning of FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), and are therefore exempt from disclosure.

83.    The Department's reversal of its unequivocal position that the Materials are exempt from disclosure under Exemptions 6 and 7(C) has no rational basis.

84.    The Department's decision to release the Materials to Plaintiffs is thus an abuse of discretion.  5 U.S.C. § 706(2)(A).

**COUNT III**
**Violation of the Administrative Procedure Act—5 U.S.C. § 706(2)(A)**
**Contrary to Law Under FOIA**
**Disclosure to Plaintiffs**

85.    Proposed Defendant-Intervenor Joseph R. Biden, Jr., incorporates by reference paragraphs 1 through 76, as if fully restated herein.

86.    The Materials constitute "similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," within the meaning of FOIA Exemption 6, 5 U.S.C. § 552(b)(6), and "records or information compiled for law enforcement purposes" the "production" of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy, within the meaning of FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), and are therefore exempt from disclosure.

87.    Because Exemptions 6 and 7(C) operate to protect the privacy rights of individuals implicated in requested records, those exemptions generally bar the Department from disclosing records that would result in an unwarranted invasion of individuals' personal privacy without the individuals' consent.

88.    The Department's decision to release the Materials to Plaintiffs violates FOIA, 5 U.S.C. § 552(b)(6), (7)(C), and is thus contrary to law.  *See* 5 U.S.C. § 706(2)(A).

**COUNT IV**
**Violation of the Administrative Procedure Act—5 U.S.C. § 706(2)(A)**
**Contrary to Law Under the Privacy Act, 5 U.S.C. § 552a**
**Disclosure to Plaintiffs**

89.    Proposed Defendant-Intervenor Joseph R. Biden, Jr., incorporates by reference paragraphs 1 through 76, as if fully restated herein.

27

90.     The Department is an "agency" within the meaning of the Privacy Act and maintains one of more relevant "system[s] of records" as defined in the Privacy Act, 5 U.S.C. § 552a(a)(1), (5).

91.     At all relevant times, those "system[s] of records" contained "record[s]," as defined in 5 U.S.C. § 552a(a)(4), that pertain to and are about Proposed Defendant-Intervenor Joseph R. Biden, Jr., including audio recordings and transcripts associated with the investigation of Special Counsel Rob Hur.

92.     The Privacy Act states: "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . ." 5 U.S.C. § 552a(b).  The Act provides a private cause of action "[w]henever any agency . . . fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." 5 U.S.C. § 552a(g)(1)(D).

93.     The Department has stated that it "intends to disclose the written transcript and audio recordings at issue in this matter, with redactions," to both Plaintiffs and Congress on June 15, 2026.  Such disclosures would be willful and intentional.

94.     The proposed disclosure to Plaintiffs described in Paragraph 64 is not covered by any statutory exception or exemption.  In particular, while the statute permits disclosures "required under section 552 of this title," 5 U.S.C. § 552a(b)(2), FOIA does not require disclosure of the Materials.  Nor is there any Privacy Act provision permitting an agency to disclose records to a FOIA litigant or the public on the basis that the agency has already provided, or plans to provide, the same records to Congress.

95.     The proposed disclosure to Plaintiffs is not compatible with the purpose for which the records were collected and is not otherwise a permissible "routine use" of the records under the Privacy Act.  5 U.S.C. § 552a(b)(3).  For instance, while the records were collected for law enforcement purposes, the Department now proposes disclosing them for political purposes.

96.     The proposed disclosure to Plaintiffs would constitute an unwarranted invasion of President Biden's privacy.  President Biden's privacy interest is not outweighed by any public interest in the messages' release.

97.     The Department's willful and intentional disclosure of records pertaining to and about President Biden would adversely affect him, including in the form of costs to respond to the disclosure and other financial losses.

## COUNT IV
### Violation of the Administrative Procedure Act—5 U.S.C. § 706(2)(A)
### Arbitrary and Capricious
### Disclosure to Congress

98.     Proposed Defendant-Intervenor Joseph R. Biden, Jr., incorporates by reference paragraphs 1 through 76, as if fully restated herein.

99.     The content, timing, and context of the Committee's request for the Materials suggest that the Department solicited the request from the Committee to circumvent FOIA's protection of law enforcement materials implicating personal privacy interests and to make an end-run around this pending FOIA litigation.

100.    The Committee's request is a pretextual attempt to disclose records reflecting President Biden's private conversations to the public for the sake of exposure, among other improper purposes.

101.    The Materials long predate the Special Counsel investigation over which the Committee purports to be conducting oversight and could not possibly shed light on the

"politicization of the Biden-Garland Department of Justice"—the stated purpose of the Committee's request.  The Committee's request therefore lacks a legitimate legislative purpose, exceeds the scope of the Committee's investigative powers under Article I of the Constitution, and is invalid and unenforceable.

102.    The Department failed to rationally explain the basis for its decision to voluntarily produce the Materials to the Committee pursuant to an invalid and unenforceable congressional request.

103.    The Department's decision to release the Materials to the Committee is thus arbitrary and capricious.  5 U.S.C. § 706(2)(A).

**COUNT V**
**Violation of the Administrative Procedure Act—5 U.S.C. § 706(2)(A)**
**Abuse of Discretion**
**Disclosure to Congress**

104.    Proposed Defendant-Intervenor Joseph R. Biden, Jr., incorporates by reference paragraphs 1 through 76, as if fully restated herein.

105.    The content, timing, and context of the Committee's request for the Materials suggest that the Department solicited the request from the Committee to circumvent FOIA's protection of materials implicating personal privacy interests and to make an end-run around this pending FOIA litigation.

106.    The Committee's request is a pretextual attempt to disclose records reflecting President Biden's private conversations to the public for the sake of exposure, among other improper purposes.

107.    The Materials long predate the Special Counsel investigation over which the Committee purports to be conducting oversight and could not possibly shed light on the "politicization of the Biden-Garland Department of Justice"—the stated purpose of the

30

Committee's request.  The Committee's request therefore lacks a legitimate legislative purpose, exceeds the scope of the Committee's investigative powers under Article I of the Constitution, and is invalid and unenforceable.

108.    The Department's decision to voluntarily produce the Materials to the Committee pursuant to an invalid and unenforceable congressional request has no rational basis.

109.    The Department's decision to release the Materials to the Committee is thus an abuse of discretion.  5 U.S.C. § 706(2)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, on the basis of the foregoing, Joseph R. Biden, Jr., respectfully requests that the Court:

a)      Declare, pursuant to 28 U.S.C. §§ 2201-2202, that the Materials are exempt from disclosure pursuant to FOIA Exemptions 6 and 7(C);

b)      Declare, pursuant to 28 U.S.C. §§ 2201-2202, that the Committee's request exceeds the bounds of Congress's investigative authority pursuant to Article I of the United States Constitution;

c)      Set aside the Department's decision to disclose the Materials to Plaintiffs as arbitrary and capricious, an abuse of discretion, and contrary to law, in violation of the APA, 5 U.S.C. § 706(2)(A);

d)      Set aside the Department's decision to disclose the Materials to the Committee as arbitrary and capricious and an abuse of discretion, in violation of the APA, 5 U.S.C. § 706(2)(A);

e)      Permanently enjoin the Department and its officers, agents, and employees from disclosing the Materials; and

f)      Grant such other and further relief as may be deemed just and proper.

\*      \*      \*

Dated: May 12, 2026

Respectfully submitted:


 /s/ Amy Jeffress
Amy Jeffress (D.C. Bar No. 449258)
Kaitlin Konkel (D.C. Bar No. 1021109)
Taisa M. Goodnature (D.C. Bar No. 90044537)\*
Jared M. Hirschfield (N.Y. Bar No. 6296933)\*
HECKER FINK LLP
1050 K Street NW, 10th Floor
Washington, D.C. 20001
Tel: (212) 763-0883
ajeffress@heckerfink.com
kkonkel@heckerfink.com
tgoodnature@heckerfink.com
jhirschfield@heckerfink.com

*Counsel for Proposed Defendant-Intervenor
Joseph R. Biden, Jr.*

\*Application for *pro hac vice* admission
forthcoming