**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| HERITAGE FOUNDATION, *et al.*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>   *Defendant*. | No. 24-cv-645 (DLF) |

<u>**MEMORANDUM OPINION**</u>

The Heritage Foundation and Mike Howell (plaintiffs) bring this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq.*, for certain records from Special Counsel Robert K. Hur's investigation of now-former President Joseph R. Biden, Jr.  After the Department of Justice (Department) withheld certain transcripts and audio recordings, the parties filed cross-motions for summary judgment.  *See* Dkts. 33, 34.  The Department recently represented that it intends to disclose those materials, with redactions, to the plaintiffs and the House Judiciary Committee.  Dkt. 50.  Before the Court is Biden's motion to intervene.  Dkt. 51.  For the reasons that follow, the Court will grant in part and deny in part the motion.

## I.  BACKGROUND

In January 2023, Attorney General Merrick Garland appointed Robert K. Hur as a Special Counsel to investigate and prosecute federal crimes arising from the "possible unauthorized removal and retention of classified documents or other records discovered at the Penn Biden Center for Diplomacy and Global Engagement and the Wilmington, Delaware, private residence of President Joseph R. Biden, Jr."  Appointment of Robert K. Hur as Special Counsel, Att'y Gen.

Order No. 5588-2023 (Jan. 12, 2023).  Hur issued his findings, *Report on the Investigation Into Unauthorized Removal, Retention, and Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph. R. Biden, Jr.* (Report), in February 2024.  *See* Hur Report, Dkt. 6-1.  Among other things, the Report mentioned Biden's "diminished faculties and faulty memory," as exhibited in his interview with the Special Counsel's Office and recorded interviews from 2016 and 2017 with Mark Zwonitzer, a biographer who was working on Biden's since-published book, *Promise Me, Dad*.  *Id.* at 248; *see id.* at 3, 244–48.  Hur ultimately declined to prosecute Biden "for his retention of" certain classified documents because, among other things, "the evidence [was] not sufficient to convict" and because "[i]t would be difficult to convince a jury that they should convict [Biden]—by then a former president well into his eighties—of a serious felony that requires a mental state of willfulness."  *Id.* at 6.

In March 2024, the Heritage Foundation and its employee, Mike Howell, filed this FOIA action against the Department seeking "all records relied upon by Special Counsel Hur to write particular passages of the Report."  Compl. ¶ 1, Dkt. 1; *see* Am. Compl. ¶ 1 (same), Dkt. 6.  As relevant here, those passages included lines in which the Report referred to Biden's recorded conversations with Zwonitzer as "painfully slow, with Mr. Biden struggling to remember events and straining at times to read and relay his own notebook entries."  Am. Compl. ¶ 9 (Passage 4).  After narrowing the issues, Dkt. 28, and processing relevant materials, Dkt. 32, the Department withheld the Zwonitzer audio tapes and the majority of the written transcripts.  In November 2024, the Department moved for summary judgment, Def.'s Mot. Summ. J., Dkt. 33, and the plaintiffs cross-moved for summary judgment, Pls.' Mot. Summ. J., Dkt. 34.  The Court stayed proceedings in September 2025 to allow the parties to engage in additional discussions or to settle or narrow

the case, *see* September 27, 2025 Minute Order, after the Department represented that it would re-review its withholdings, Dkt. 42.

The Department no longer seeks to withhold the Zwonitzer materials.  In a May 8, 2026 filing, the Department reported that it "intends to disclose the written transcript and audio recordings at issue in this matter, with redactions, to Congress, pursuant to a request from the Chair of the House Judiciary Committee, as well as to Plaintiffs."  Joint Status Report 1, Dkt. 50.  The Department further stated that, if Biden intervened before May 12, 2026, it would hold off disclosing the material until June 15, 2026.  *Id.*

Biden moved to intervene on May 12, 2026.  Intervenor Mot., Dkt. 51.  He argues that he has a right to intervene because he "has a legally protected interest in preventing the Heritage Plaintiffs from obtaining private conversations recorded in his own home for purely personal use, and this interest would be irrevocably harmed if Plaintiffs prevailed."  Mem. Intervenor Mot. 3, Dkt. 51-1.  Biden's proposed answer to the plaintiffs' amended complaint also asserts cross-claims regarding the Department's production of the Zwonitzer materials to the House Judiciary Committee.  *See* Proposed Answer ¶¶ 98–109, Dkt. 51-3.  The plaintiffs oppose Biden's intervention, *see* Pls.' Opp'n, Dkt. 59; the Department does not, *see* Joint Status Report 1.

## II.    LEGAL STANDARDS

Rule 24 of the Federal Rules of Civil Procedure "outlines two different avenues by which a court can allow an outsider to intervene—intervention of right, and permissive intervention." *EEOC v. Nat'l Child.'s Ctr., Inc.*, 146 F.3d 1042, 1044 (D.C. Cir. 1998).  Rule 24(a) provides for intervention of right when a movant can demonstrate four requirements: "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the

potential intervenor's interest." *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015). Rule 24(b) provides for permissive intervention by a third party who either "is given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).

"In addition to satisfying the four elements of Rule 24—timeliness, interest, impairment of interest, and adequacy of representation—prospective intervenors in this circuit must possess standing under Article III of the Constitution." *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) "To establish standing, a party must demonstrate: (1) an injury in fact that is concrete and particularized as well as actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision." *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 76 (D.C. Cir. 2020) (citation modified). Because a putative intervenor's Article III standing "presents a question going to this [C]ourt's jurisdiction," the Court must address it before evaluating intervention under Rule 24. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003); *see Conf. Grp., LLC v. FCC*, 720 F.3d 957, 962 (D.C. Cir. 2013).

Rule 13 provides that a "pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action." Fed. R. Civ. P. 13(g). "Federal Rule of Civil Procedure 13 does not distinguish between intervenors and other parties with respect to their ability to assert counterclaims or cross-claims." *City of Jersey City v. Consol. Rail Corp.*, 968 F. Supp. 2d 302, 305 (D.D.C. 2013), *aff'd*, No. 13-7175, 2014 WL 1378306 (D.C. Cir. Feb. 19, 2014).

### III.    ANALYSIS

The Court will grant Biden's motion to intervene as to the Department's production of the Zwonitzer materials to the plaintiffs because Biden has a right to protect his privacy interests that no party can adequately represent now that the Department has reversed its position.  But the Court will deny Biden's motion to intervene insofar as he asserts cross-claims relating to the Department's production of the Zwonitzer materials to the House Judiciary Committee because an intervenor may not press issues that have not been presented to the Court by another party.

### A.    Standing

Biden has constitutional standing.  His proposed answer asserts that the Zwonitzer materials, which were recorded in his home in 2016 and 2017, contain discussion of "a range of sensitive topics," Proposed Answer ¶ 10, including details relating to his son's illness and death and his decision to run for President in 2016, *id.* ¶¶ 10, 38.  Non-consensual disclosure of these materials, he says, will violate his rights under the Privacy Act of 1974, 5 U.S.C. § 552a, *id.* ¶¶ 68–76, and "would adversely affect him, including in the form of costs to respond to the disclosure and other financial losses," *id.* ¶ 97.

Of course, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).  To be "concrete," an injury must be "real, and not abstract." *Id.* at 340 (citation modified).  "As a general matter, the [Supreme] Court has explained that history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (citation modified).  "[W]ith respect to the concrete-harm requirement in particular, . . . courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm

traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* (citation modified).

Here, Biden has shown that the production of the Zwonitzer materials will cause concrete harm to his privacy similar to those injuries addressed by the common-law tort of intrusion upon seclusion. *See id.* at 425 ("[I]njuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts . . . include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion."); *All. for Retired Ams. v. Bessent*, 770 F. Supp. 3d 79, 102–03 (D.D.C. 2025) (analogizing Privacy Act violations to tort of intrusion upon seclusion). "At common law, the essential features of intrusion upon seclusion are that the defendant intentionally intruded 'upon the solitude or seclusion of another or his private affairs or concerns' and that such intrusion 'would be highly offensive to a reasonable person.'" *All. for Retired Ams.*, 770 F. Supp. 3d at 102 (quoting Restatement (Second) of Torts § 652B). As the Department's motion for summary judgment argued, Biden's "discussions—recorded by Mr. Zwonitzer for reference in drafting Mr. Biden's memoir—were analogous to entries in a personal diary." Mem. Def.'s Mot. Summ. J. 1, Dkt. 33-1. Such an intrusion into a person's private affairs, including personal thoughts regarding the death of a family member, "would be highly offensive to a reasonable person." *All. for Retired Ams.*, 770 F. Supp. 3d at 102 (quoting Restatement (Second) of Torts § 652B). Moreover, Biden's injury is imminent given that the Department will produce the materials on June 15, 2026, *see* Joint Status Report 1; Proposed Answer ¶ 69, which is less than a month from today.

Having found a harm that is both concrete and imminent, the Court considers whether there exists "a causal connection between the injury and the challenged conduct" and "a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision." *Nat. Res.*

*Def. Council*, 955 F.3d at 76 (citation modified).  The answer to both inquiries is yes.  First, Biden's injury (the invasion of his personal privacy) flows directly from the conduct he challenges (the disclosure of the Zwonitzer materials to the plaintiffs).  Second, if Biden successfully obtains the relief he seeks—an injunction barring the Department from disclosing the Zwonitzer materials to the plaintiffs—there is no question that the imminent injury posed by the invasion of his privacy will be redressed.

In short, Biden "possesses [the] standing under Article III of the Constitution" that is necessary for his motion to intervene.  *Jones*, 348 F.3d at 1017.

**B.    Rule 24(a)**

Biden has the right to intervene to assert his privacy interests in preventing the Department's production of the Zwonitzer materials to the plaintiffs.  *See* Fed. R. Civ. P. 24(a)(2).

First, Biden has a legally protected interest in his privacy.  "[T]o determine if a legally protected interest will be 'impaired,' courts 'look to the "practical consequences" of denying intervention.'"  *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 7 (D.D.C. 2018) (citation modified) (quoting *Fund for Animals*, 322 F.3d at 735).  In the commercial context, "preventing the disclosure of commercially-sensitive and confidential information is a well-established interest sufficient to justify intervention under Rule 24(a)."  *100Reporters LLC v. DOJ*, 307 F.R.D. 269, 275 (D.D.C. 2014).

The same logic applies to the personal information contained in the Zwonitzer materials, for which FOIA enumerates at least two relevant exemptions.  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and Exemption 7(C) protects "records or information compiled for law enforcement purposes," the production of which "could reasonably

7

be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7).  Biden possesses privacy interests under these exemptions even though he was the subject of a criminal investigation and is a public figure.  *Jud. Watch v. Nat'l Archives & Records Admin.*, 876 F.3d 346, 349–50 (D.C. Cir. 2017); *id.* at 349 ("Where individuals have been investigated but not charged with a crime, disclosure of material properly exempt under Exemption 7(C) represents a severe intrusion on the privacy interests of the individual in question." (citation modified)).

Second, the Department's production of the Zwonitzer materials would impair Biden's legal interests in this action.  The sensitive nature of the Zwonitzer materials means that Biden's privacy interests are likely substantial.  Because the audio tapes and transcripts, if disseminated, "would result in a substantial change in the status quo with respect to those [privacy] interests, such that the task of reestablishing the status quo" would be impossible, *Waterkeeper All., Inc.*, 330 F.R.D. at 7 (citation modified), Biden's legally protected interests will be impaired if the Court were to deny intervention here.

Third, it is clear that "no party to the action can adequately represent the potential intervenor's interest." *Crossroads Grassroots*, 788 F.3d at 320.  This requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972).  Here, the Department has abandoned its earlier position that "releasing the records would result in unwarranted harm to privacy interests that an individual maintains in preventing the dissemination of . . . private recordings that were collected in the course of an investigation that yielded no criminal charges," Mem. Def.'s Summ. J. 23, and now intends to comply with the plaintiffs' request within a month, Joint Status Report 1.  In light of that apparent alignment among the plaintiffs and the Department, it is obvious that none of the parties is

adequately representing Biden's legal interests. *See 100Reporters LLC*, 307 F.R.D. at 279–80 ("The divergence of interests, moreover, is especially evident in FOIA litigation, where this Court has recognized that the plaintiff's interest lies in disclosure, the government entity's interest lies in responding appropriately to the plaintiff's request, and the intervenor's interest lies in protecting its . . . confidential information." (citation modified)).

Finally, Biden's motion to intervene is timely. "[T]imeliness is to be determined from all the circumstances, and the point to which a suit has progressed is not solely dispositive." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279 (2022) (citation modified); *see Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (same). The plaintiffs are correct that more than two years have passed since the filing of this suit. Pls.' Opp'n 1. But "[h]ere, the most important circumstance relating to timeliness is that [Biden] sought to intervene as soon as it became clear that [his] interests would no longer be protected by the [Department]." *Cameron*, 595 U.S. at 279–80 (citation modified). According to the declaration submitted by Biden's attorney, the Department first notified Biden of its planned disclosure on February 25, 2026, and was engaged in negotiations about redactions and limited dissemination until the Department's May 5, 2026 final decision to disclose the recordings and transcripts, with redactions, to the Committee and the plaintiffs. *See* Jeffress Decl. ¶¶ 11–30, Dkt. 51-2. The motion to intervene, along with supporting exhibits, was filed one week later. In consideration of these circumstances, Biden's motion to intervene is not dilatory.

The plaintiffs' arguments in opposition are unavailing. They press that "Biden's lawyers sat on their hands for at least two-plus months knowing their ultra-thin privacy claims to cloak disclosure of for-profit book disclosure were in danger and could be affected by the outcome of this FOIA litigation." Pls.' Opp'n 8 (errors in original). In the plaintiffs' view, Biden should have

9

intervened (1) the minute that President Donald J. Trump returned to office on January 20, 2026; (2) when the Department released other Special Counsel materials[1] in other cases; (3) when the Department indicated that it was "reviewing [its] withholdings" in September 2025; (4) when the Department informed Biden's counsel of its plan to release the Zwonitzer materials in February 2026; or, at the latest, (5) when the Department informed Biden's counsel of its new position in March 2026. *Id.* 8–13. These arguments ignore the Supreme Court's instruction that intervenor timeliness be evaluated from the point at which it was "clear that [the movant's] interests would no longer be protected by the parties." *Cameron*, 595 U.S. at 280 (citation modified). Leading up to the Department's February 25, 2026 notification to Biden's attorney, nothing in the Department's status reports made clear that it would abandon its position that "disclosure would constitute a severe invasion of privacy with little to no meaningful or cognizable counterbalancing public interest," as reflected in its still-pending motion for summary judgment. *See* Mem. Def.'s Mot. Summ. J. 1.

Any delay between the Department's February 25, 2026 notification and Biden's motion is attributable to negotiations that, if fruitful, could have obviated the need for intervention. *See* Jeffress Decl. ¶ 15 ("Over the next two months, in the hope of resolving this matter without resort to litigation, I engaged with the Department's attorneys to seek redactions necessary to prevent the invasion of President Biden's and others' privacy."). The plaintiffs counter that, "[b]y operation of the English language, if one is in negotiations to resolve a matter without litigation, then it ineluctably follows that one has already reached a state of divergent interests, even if the

---

[1] The Court will deny the plaintiffs' request for an evidentiary hearing as to when Biden may have learned of the Department's disclosure of other materials from the Hur investigation, *see* Pls.' Opp'n 15; Dkt. 61, because, as explained *infra*, those disclosures—regardless of Biden's notice—did not make clear that the Department would abandon the legal position reflected in its still-pending motion for summary judgment.

divergence of interest has not yet been finalized by adverse action." Pls.' Opp'n 12 (emphases omitted). But the plaintiffs ignore the fact that—until the Department's May 5, 2026 final decision—Biden was engaged in productive discussions that yielded some of the privacy-based redactions that he sought. *See, e.g.*, Jeffress Decl. ¶ 25. In short, it was not "clear" that the Department would wholly abandon Biden's privacy interests until negotiations gave way to a final decision.

Finally, "even where a would-be intervenor could have intervened sooner, in assessing timeliness a court must weigh whether any delay in seeking intervention unfairly disadvantaged the original parties." *Roane*, 741 F.3d at 151 (citation modified). The plaintiffs insist that their settlement efforts "will be for naught if intervention is permitted" and that they "and the Government will be prejudiced because production will—yet again—be delayed." Pls.' Opp'n 14. But Biden's intervention does not vitiate the plaintiffs' potential settlement with the Department because that settlement can be entered as soon as the Court resolves Biden's asserted privacy interests. Nor will Biden's intervention necessarily lead to a considerable delay in resolving this case: "Biden is prepared to participate in renewed summary judgment briefing on an expedited basis." Mem. Intervenor Mot. 16. And the Department, which the plaintiffs claim will also be prejudiced, does not oppose intervention. *See* Joint Status Report 1. In all, a short delay for Biden's expedited briefing would not "unfairly disadvantage the original parties" in this case, *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977), in light of the parties' sudden alignment after years of disagreement.

Accordingly, the Court will permit Biden to intervene in this case as to the plaintiffs' FOIA claims.

### C.    Cross-Claims

Although Biden has the right to intervene to oppose production of the Zwonitzer materials to the plaintiffs, he may not bring cross-claims regarding the Department's production of such materials to the House Judiciary Committee because "it is well settled in this circuit that 'an intervening party may join issue only on a matter that has been brought before the court by another party.'"  *Seminole Nation of Oklahoma v. Norton*, 206 F.R.D. 1, 7 (D.D.C. 2001) (citation modified) (quoting *Ill. Bell Tel. Co. v. FCC,* 911 F.2d 776, 786 (D.C. Cir. 1990)).

This case turns on the Department's withholding of certain materials from the plaintiffs under FOIA Exemptions 5, 6, and 7(C).  *See* Def.'s Mem. Mot. Summ. J.; Pls.' Mem. Mot. Summ. J, Dkt. 34-1.  Counts IV and V of Biden's proposed answer, by contrast, assert that disclosure to Congress would violate the Privacy Act and the APA, *see* Proposed Answer ¶¶ 98–109, and he seeks additional equitable relief on the ground that "the Committee's request exceeds the bounds of Congress's investigative authority pursuant to Article I of the United States Constitution," *id.* at 31.  Such "[c]ongressional [requests] for the President's personal information implicate weighty concerns regarding the separation of powers," *Trump v. Mazars USA, LLP*, 591 U.S. 848, 869 (2020), the adjudication of which requires careful analysis of Congress's and a former President's interests, *see Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of Treasury*, 45 F.4th 324, 333–40 (D.C. Cir. 2022) (applying tests from *Mazars* and *Nixon v. GSA*, 433 U.S. 425, 443 (1977), to congressional request for former President's personal records).  Neither the plaintiffs nor the Department has brought those issues before this Court.

Because "an intervenor is admitted to the proceeding as it stands, . . . but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding," *Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944), Biden cannot inject his APA claims into the plaintiffs'

12

FOIA action through intervention. Accordingly, the Court will deny Biden's motion to intervene as to the cross-claims asserted in Counts IV and V of his proposed answer.

## CONCLUSION

For the foregoing reasons, Joseph R. Biden, Jr.'s motion to intervene, Dkt. 51, is granted as to the plaintiffs' FOIA claims and denied as to the cross-claims asserted in Counts IV and V of his proposed answer. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

May 21, 2026