**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **HERITAGE FOUNDATION,**<br>**MIKE HOWELL,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE,**<br><br>*Defendant,*<br><br>and<br><br>**JOSEPH R. BIDEN, JR.,**<br><br>*Defendant- Intervenor.* | Case No. 1:24-cv-00645 (DLF) |

**DECLARATION OF PETER A. WINN**

I, PETER A. WINN, declare the following to be true and correct:

1.  I am the Director of the Office of Privacy and Civil Liberties ("OPCL") at the United States Department of Justice ("Department" or "DOJ"), and a member of the Senior Executive Service. I have been the Acting Chief Privacy and Civil Liberties Officer ("CPCLO") of the Department since January 20, 2017. The CPCLO is responsible for ensuring the Department's compliance with the laws, regulations and established policies designed to protect the privacy of individuals, as well as ensuring that concerns about privacy and civil liberties are appropriately considered in the development and implementation of laws, regulations and policies related to the Department's mission.

2. Among my responsibilities as the CPCLO and head of OPCL is to provide authoritative legal advice and guidance to the Department's leadership and DOJ components on questions about

1

the Privacy Act of 1974, including questions regarding the lawfulness of proposed disclosures under the Privacy Act and under the Department's privacy policy.  To this end, I advise the Offices of Special Counsel on the releasability of information contained in Special Counsel reports. In this connection, at the request of Special Counsel Hur, I assisted his office in preparing his Final Report, as required by 28 C.F.R. § 600.8(c), in a form consistent with the law and DOJ policy that would permit public dissemination to the maximum extent possible.[1]

3. The statements in this declaration are based on my personal knowledge, as well as information obtained and reviewed in the course of my official duties.

4.  This declaration is respectfully submitted to set forth the relevant factual background concerning and memorialize the Department's determination to release materials related to the Biden-Zwonitzer conversations in 2016 and 2017 to Plaintiffs in this FOIA action.

**The Zwonitzer Materials**

5.  In 2016 and 2017, President Biden met with a writing assistant (or "ghostwriter"), Mr. Mark Zwonitzer, at the Naval Observatory and in McLean, Virginia in connection with President Biden's preparation of his memoir, *Promise Me, Dad*, which was published in 2017.  In connection with this book-writing project, Mr. Zwonitzer had conversations with President Biden, which were recorded by Mr. Zwonitzer.  The Department, per the Hur Report, obtained "dozens of hours of recorded conversations with the ghostwriter." *See* Hur Report, at 5. Mr. Hur then selected smaller portions of that audio and had them transcribed.

---

[1] U.S. Dep't of Just., *Report on the Investigation Into Unauthorized Removal, Retention, & Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph R. Biden, Jr. (Feb. 5, 2024) ("Hur Report")* https://www.justice.gov/storage/report-from-special-counsel-robert-k-hur-february-2024.pdf. *See also* Hur Report, Dkt. 6-1, 6-2.

6.  These materials consist of approximately 2 ½ hours of audio recordings and 117 pages of transcripts of these recordings.  As I will discuss later in this Declaration, in consultation with President Biden's counsel, and under my supervision, the transcripts and recordings later were extensively redacted. Information concerning President Biden's family and any family health issues has been fully redacted.  Information concerning third parties who are not public figures has been redacted. National security information has been redacted as well as related information covered by the presidential communications privilege.  The redacted transcripts and recordings at issue are defined herein as the "Zwonitzer Materials."

**The Investigation of President Biden By Robert K. Hur**

7.  On January 12, 2023, Attorney General Merrick B. Garland appointed Robert K. Hur as Special Counsel to investigate and prosecute federal crimes arising from the "possible unauthorized removal and retention of classified documents or other records discovered at locations associated with President Biden. *See* U.S. Dep't of Just., *Appointment of Robert K. Hur as Special Counsel*, Att'y Gen. Order No. 5588-2023 (Jan. 12, 2023).[2] The Special Counsel's Office was authorized to investigate the possible unauthorized removal and retention of classified documents at various locations associated with President Biden. *Id.*

8. At the conclusion of the investigation, Mr. Hur issued his findings and submitted a report to Attorney General Garland pursuant to Department regulations.  *See* 28 C.F.R. § 600.8(c). The Hur Report stated that Mr. Hur "conclude[d] that no criminal charges are warranted," Hur Report, at 1, and provided an extensive discussion of the investigation and the decisions he reached. *See generally* Hur Report. In consultation with my office, the Hur Report was prepared in a manner

---

[2] Att'y Gen. Order No. 5588-2023 (Jan. 12, 2023), https://www.justice.gov/archives/media/1268121/dl.

allowing it to be produced to Congress and published on the Department's public-facing website without any redactions, consistent with the transparency provisions of the Special Counsel Regulations. 28 C.F.R. § 600.9(c).

9. The Hur Report disclosed contents of the Zwonitzer Materials when it extensively quoted, referenced and relied upon the Zwonitzer Materials. *See*, *e.g.*, Hur Report, at 3 ("In a recorded conversation with his ghostwriter in February 2017, about a month after he left office, Mr. Biden said, while referencing his 2009 Thanksgiving memo, that he had 'just found all the classified stuff downstairs.'"); *id.* at 64 ("Referring to his 'Foreign Policy' notebook, Mr. Biden added, '[t]hey didn't even know I have this.'"). Relying in part on the Zwonitzer Materials, the Hur Report explained the Special Counsel's assessment of President Biden's memory. *See*, *e.g.*, *id.* at 207 ("Mr. Biden's memory also appeared to have significant limitations—both at the time he spoke to Mr. Zwonitzer in 2017, as evidenced by their recorded conversations, and today, as evidenced by his recorded interview with our office. Mr. Biden's recorded conversations with Mr. Zwonitzer from 2017 are often painfully slow, with Mr. Biden struggling to remember events and straining at times to read and relay his own notebook entries.").

#### DOJ's Decision to Release the Zwonitzer Materials to Plaintiffs Under FOIA

10. In March 2024, Plaintiffs filed their FOIA action seeking production of Zwonitzer Materials: "all records relied upon by Special Counsel Hur to write particular passages of the Report" which made findings concerning President Biden's recollection. Compl. ¶ 1, Dkt. 1; Am. Compl. ¶ 1, Dkt. 6. Plaintiffs' demands have since been clarified to cover the "written transcript and audio recording." Joint Status Report, Dkt. 47 (March 6, 2026).

11. The Biden Administration determined to withhold substantially all the transcripts and audio recordings and briefed the issues accordingly in 2024 before this Court, relying in large part

on the work-product doctrine and the privacy interests of President Biden.  In or about February 2026, the Department reassessed its prior decision and decided to waive the work-product doctrine in light of the public interest in the materials.  In connection with that process, it provided notice to President Biden's counsel of its preliminary view that the Zwonitzer Materials should be disclosed to Plaintiffs under FOIA. This notice engendered extensive consultation between Department officials and President Biden's counsel.  Specifically, on March 6, 2026, Department officials met with President Biden's lead counsel, Amy Jeffress, Esq., and allowed her to spend the morning reviewing the Zwonitzer Materials.  On March 9, 2026, Ms. Jeffress returned with two of President Biden's political advisors, who over the course of the morning, reviewed the Zwonitzer Materials, and made extensive proposed redactions and comments.  These materials were retained, but they were treated as Ms. Jeffress' confidential attorney work-product and were not reviewed by the Department.  On March 20, 2026, I, and another Department official, met with Ms. Jeffress and one of her associates and discussed President Biden's concerns, and Ms. Jeffress authorized us to review her comments and proposed redactions.  After carefully reviewing Ms. Jeffress' extensive comments and additional proposed redactions, I directed that substantial additional redactions be made.  On April 20, 2026, two of Ms. Jeffress' colleagues spent the better part of one day in my office reviewing the audio files and the corresponding transcripts. Thereafter, we did not receive any additional proposed redactions or comments on the Zwonitzer Materials themselves, although email exchanges did take place with Ms. Jeffress about the Department's general approach to this matter. Based on those considerations, additional redactions were made, which are currently reflected in the Zwonitzer Materials.  To my knowledge, no party has objected to redactions based on national security considerations or the presidential communications privilege.

12. On or about May 5, 2026, the Department made a final decision to release the Zwonitzer Materials to Plaintiffs under FOIA.  This decision was publicly announced on May 8, 2026, in the Joint Status Report. Dkt. 50.

13.  On May 5, 2026, the Department notified President Biden's counsel of this decision.  On a phone call with President Biden's counsel that I attended on behalf of the Department with Associate Deputy Attorney General Paul R. Perkins, the Department informed President Biden's counsel that the Department had made the final decision to produce the materials to the Heritage Plaintiffs and to the Committee on the Judiciary of the U.S. House of Representatives on June 15, 2026, absent a court order barring release.  We further stated that, if President Biden wished to prevent disclosure, he must file a motion to intervene by May 12, 2026.  We did not state that the Department's decision constituted final agency action for the purposes of the Administrative Procedure Act.

14.  As discussed in greater detail below, the Department's May 2026 decision was reached after internal consultation within the Justice Department, consultation with President Biden's counsel, and the Department's weighing and balancing of several factors, including as follows.

15.  The Department determined that President Biden's privacy interests in the Zwonitzer Materials were greatly reduced for a number of reasons.

(a) The Hur Report relied on the Zwonitzer Materials, including by citing to them and quoting them in connection with the decision not to bring charges.  The Zwonitzer Materials were also quoted and referenced at the House Judiciary Committee's public hearing on March 12, 2024.[3]

---

[3] *See*, *e.g.*, Committee on the Judiciary, U.S. House of Representatives, 118th Cong. 2nd Sess., Hearing on the Report of Special Counsel Robert K. Hur (March 12, 2024), at 7, 8, 15, 16, 39, 43, 92, 93.  https://www.congress.gov/118/chrg/CHRG-118hhrg55150/CHRG-118hhrg55150.pdf.

(b) As described above, the Department provided notice and opportunity to President Biden to ensure that it had appropriately addressed his privacy interests. As discussed below, the Zwonitzer Materials, as now redacted, do not include information about President Biden's family's matters, including his and his family's reactions to and opinions regarding his family's health.

(c) The unredacted remainder of Zwonitzer Materials consists of information substantially in the public domain, including in his memoir. *See* Biden, Joseph R. Jr., *Promise Me, Dad: A Year of Hope, Hardship, and Purpose,* Flatiron Books (1st ed. Nov. 2017).

(d)    President Biden voluntarily addressed the Hur Report, including the Zwonitzer Materials, in a press briefing at the White House on February 8, 2024.[4]  President Biden's counsel, acting for President Biden, also publicly quoted the Zwonitzer Materials (*see*, *e.g.*, Hur Report, Addendum, at 3 ¶ 3; *id.* at 4 ¶ 6).

(e) Any privacy interest in President Biden's voice – as would be disclosed through the Biden-Zwonitzer audio recordings – would be insubstantial.  There have already been disclosures about President Biden's "tone" and "sound" in the Zwonitzer Materials. For example, the Hur Report states:

> In the recorded conversation when Mr. Biden told Zwonitzer he had "just found all the classified stuff downstairs," *Mr. Biden's tone was remarkably casual*. His sole reference to this discovery of classified documents was this brief aside. *Mr. Biden did not sound surprised or concerned by the documents he referenced*. While reasonable jurors could draw different conclusions from Mr. Biden's *seeming nonchalance*, one conclusion is that if Mr. Biden discovered classified documents, it simply was not significant to him and was something he could have quickly forgotten.

---

[4] Administration of Joseph R. Biden, Jr., 2024, *Remarks on Department of Justice Special Counsel Robert K. Hur's Report on the President's Handling of Classified Documents From His Tenure as Vice President and Senator and an Exchange With Reporters* (February 8, 2024), https://www.govinfo.gov/content/pkg/DCPD-202400099/html/DCPD-202400099.htm.

Hur Report, at 206-07 (emphasis added). *See also id. at* 3 ("When Mr. Biden told his ghostwriter about finding 'all the classified stuff downstairs,' his tone was matter-of-fact"); *id.* at 110 ("Mid-sentence during this narrative, Mr. Biden said, in a matter-of-fact tone, that he had 'just found all the classified stuff downstairs.'").

(f)  President Biden has also publicly disclosed details relating to his decision to run for President in 2016. The Zwonitzer Materials were generated as part of a book-writing project leading to President Biden's 2017 memoir, *Promise Me, Dad*.  I have reviewed Chapter 11 of *Promise Me, Dad* – entitled "*Run, Joe, Run*." That Chapter details President Biden's decision-making process and provides commentary about advice and advisors. *See* Biden, Joseph R. Jr., *Promise Me, Dad: A Year of Hope, Hardship, and Purpose,* Flatiron Books (1st ed. Nov. 2017), at 245-47 (President Obama); *id. at* 235, 241 (Bill Bradley); *id. at* 222-24, 228, 234, 238, 243, 245-46 (Mike Donilon); *id. at* 222-24, 234, 238, 241, 242, 243, 246 (Steve Ricchetti); *id. at* 224, 243 (Ted Kaufman).

(g) The Department had already determined that portions of the Zwonitzer Materials could be released on a discretionary basis because the public Hur Report quoted the transcript. When the Department exercised its discretion to waive FOIA Exemption 5, which had been initially invoked by the Department to withhold the Zwonitzer transcripts and audio without the need to engage in a segregability analysis, it then became incumbent upon the Department to determine if other portions of the materials could be released without constituting an unwarranted invasion of privacy.

16.  The Department determined that President Biden's reduced privacy interests were outweighed by the significant public interest in the disclosure of the redacted Zwonitzer Materials.

(a) Information about the Hur investigation into the alleged mishandling of classified material by a high-ranking public official sheds light on how the Department of Justice and its Special Counsel have performed their statutory duties. *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.,* 746 F.3d 1082, 1096 (D.C. Cir. 2014).

(b) There is a heightened public interest in whether the DOJ and Special Counsel performed their statutory duties, particularly in a case where a sitting President of the United States was the target of the investigation and there was substantial controversy over the Special Counsel's decision not to indict, specifically relying on the Zwonitzer Materials. In addition, President Biden has challenged the fairness, scope and propriety of the Hur Report and Mr. Hur's handling of Zwonitzer Materials.

(c) There is a heightened public interest in the audio of the Zwonitzer materials, beyond the transcripts. The Department distinguished the audio here from other audio recordings withheld in the past, where in those prior cases the additional information in the audio implicated significant privacy interests, and provided no additional information of legitimate public concern. Here, the additional information in the audio recording implicates a legitimate public interest not otherwise captured in the associated transcript. Mr. Hur relied upon this additional information in making his declination decision. Hur Report, at 206-07.  As noted at ¶ 15(e) above, in making his decision to decline prosecution, Mr. Hur relied on matters of "tone" that could only be evaluated by reviewing the audio.

(d) The Department also determined that a heightened public interest in the audio was evidenced by the fact that House Committees have questioned the Hur investigation. *See, e.g.,*

Letter of House Committees to Attorney General Merrick Garland (February 12, 2024).[5] *Id.* at 3 ("Despite clear evidence the President willfully retained and transmitted classified materials willfully, Mr. Hur recommended 'that no criminal charges are warranted in this matter.'") (citing Hur Report, at 1). House Committees also addressed the Zwonitzer Materials. *Id.* at 2 ("In response to a question regarding sharing classified information with his ghostwriter, Mark Zwonitzer—a fact documented in Mr. Hur's report—the President claimed, 'I did not share classified information, I did not share it.' This assertion appears to be false.").

(e) Individual members of Congress have addressed the Hur Report and its handling of the Zwonitzer Materials. *See*, *e.g.*, Hearing on the Report of Special Counsel Robert K. Hur, House Judiciary Committee, March 12, 2024, at 93 (Rep. Ken Buck: "So, how do you overcome that recording where he says ''I've got classified documents?'' He is 30 years in the Senate or whatever it is. He obviously knows how he has to treat classified documents. I have got classified documents in the basement. What is the defense to that, that it was a made-up recording, that it wasn't his voice, that everyone was wrong?").[6]

(f) Most recently, the House Judiciary Committee has challenged the fairness of the work of the Justice Department in connection with the Hur investigation. The Committee's March 23, 2026 letter accuses the "Biden-Garland Department of Justice" of "politicization" and the Committee's "oversight" of the Hur investigation is a valid legislative act. *See* Dkt. 51-6.

---

[5] Letter of House Committees to Attorney General Merrick Garland (February 12, 2024), https://oversight.house.gov/wp-content/uploads/2024/02/DOJ-Transcript-video-letter-02122024.FINAL_.pdf.

[6] Committee on the Judiciary, U.S. House of Representatives, 118th Cong. 2nd Sess., Hearing on the Report of Special Counsel Robert K. Hur (March 12, 2024). https://www.congress.gov/118/chrg/CHRG-118hhrg55150/CHRG-118hhrg55150.pdf.

(g)  The public interest in disclosure is especially strong here because, as noted by Special Counsel Hur in his testimony before the House Judiciary Committee, transparency was important in circumstances where "the Attorney General had appointed [him] to investigate the actions of the Attorney General's boss, the sitting President of the United States." Hur House Comm. Hrg. Rept. at 7-8.

17.  Against this backdrop, the Department determined that President Biden's reduced privacy interests are outweighed by the significant public interest in the disclosure of the redacted Zwonitzer Materials. Accordingly, FOIA Exemptions 6 and 7(C) do not apply, the redacted Zwonitzer Materials are required to be provided to the FOIA requesters, and the non-disclosure provisions of the Privacy Act therefore do not apply.  *See* 5 U.S.C. § 552a(b)(2).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of June, 2026.

/s/ Peter A. Winn_
PETER A. WINN

11